Fee Paid

FILED
CLERK, U.S. DISTRICT COURT

8/18/21

CENTRAL DISTRICT OF CALIFORNIA
BY: CS          DEPUTY

C. DENNIS LOOMIS (SBN: 082359)
    E-Mail: CDLoomis@Buchalter.com
THOMAS J. SPEISS, III (SBN: 200949)
    E-Mail: TSpeiss@Buchalter.com
BUCHALTER, A PROFESSIONAL CORPORATION
1000 Wilshire Boulevard, Suite 1500
Los Angeles, California 90017-2457
Tel.: (310) 490-3373
Fax: (213) 896-0400

Attorneys for Plaintiffs,
MICHAEL ANDREW ROBINSON,
an Individual resident of Florida,
and GRABBA LEAF, LLC,
a Florida limited liability company

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| MICHAEL ANDREW ROBINSON, an individual; GRABBA LEAF, LLC, a Florida limited liability company,<br><br>    Plaintiffs,<br><br>    vs.<br><br>BEST PRICE DISTRIBUTORS, LLC, a California limited liability company, doing business as WESTERN WHOLESALE and as QUICK TOBACCO WHOLESALE; KHALED M. AHMED, an individual; SANDRA S. CERVANTES, aka SANDRA AHMED, an individual; and DOES 1-10;<br><br>    Defendants. | CV21-6689-RGK(JCx)<br>CASE NO.<br><br>**FILED UNDER SEAL PURSUANT TO 15 U.S.C. § 1116(d)(8)**<br><br>**COMPLAINT FOR:**<br><br>**1. TRADEMARK COUNTERFEITING AND INFRINGEMENT UNDER 15 U.S.C. § 1114;**<br><br>**2. TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(a);**<br><br>**3. COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION; AND,**<br><br>**4. VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200**<br><br>**JURY TRIAL DEMANDED** |

1    Plaintiffs Michael Andrew Robinson, an individual ("Robinson"), and

2    Grabba Leaf, LLC, a Florida limited liability company (collectively, "Grabba Leaf")

3    hereby state their complaint against defendants Best Price Distributors, LLC, a

4    California limited liability company, doing business as Western Wholesale and as

5    Quick Tobacco Wholesale (hereinafter, "Western Wholesale"), Khaled M. Ahmed,

6    an individual ("Ahmed"), Sandra S. Cervantes, aka Sandra Ahmed, an individual

7    ("Cervantes"), and Does 1 through 10, as follows:

8    **INTRODUCTION**

9    1.    Grabba Leaf is the leading seller in the United States of top quality

10   natural cigar wraps and whole leaf tobacco, under the well-known brand name

11   GRABBA LEAF.  Western Wholesale, Ahmed and Cervantes are selling and

12   offering for sale counterfeit, inferior quality, chemically contaminated cigar wraps

13   and whole leaf tobacco products in styles and packaging that duplicates and

14   infringes upon Grabba Leaf's registered U.S. trademarks.  Accordingly, in this

15   action, Grabba Leaf seeks an *ex parte* emergency temporary restraining and seizure

16   order, as well as preliminary and permanent injunctive relief and money damages

17   (including, but not limited to, statutory damages), attorneys' fees, interest, and costs.

18   **JURISDICTION AND VENUE**

19   2.    This is an action for statutory trademark counterfeiting, trademark

20   infringement, false designation of origin, and unfair competition in violation of the

21   Lanham Act, 15 U.S.C. § 1051, *et seq.;* common law trademark infringement and

22   unfair competition; and violation of California Business and Professions Code

23   Section 17200.

24   3.    This Court has subject matter jurisdiction over this action pursuant to

25   15 U.S.C. §§ 1119 and 1121, and pursuant to 28 U.S.C. §§ 1331, 1338, and 1367,

26   because this action presents questions arising under the trademark laws of the

27   United States to which Congress has granted concurrent or exclusive subject matter

28

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 46346118v6

1  jurisdiction to the federal courts. This Court has supplemental jurisdiction under

2  28 U.S.C. § 1367 over Grabba Leaf's related claims under state law.

3      4.    On information and belief, this Court has personal jurisdiction over

4  Defendants Western Wholesale, Ahmed and Cervantes based upon their infringing

5  acts of supplying the Counterfeit Products for sale in Los Angeles County,

6  California.

7      5.    Venue is proper in this judicial district pursuant to

8  28 U.S.C. §§ 1391(b), (c), (d), and 1400(b) because Western Wholesale, Ahmed

9  and Cervantes do business in and have committed acts of infringement in California

10  and in this judicial district.

11  **THE PARTIES**

12      6.    Mr. Robinson is an individual residing in the state of Florida, and is

13  the managing member of Grabba Leaf.

14      7.    Grabba Leaf is a Florida limited liability company having a principal

15  place of business at 2987 Center Point Circle, Suite 3, Pompano Beach, Florida

16  33064.

17      8.    Upon information and belief, Western Wholesale is a limited liability

18  company organized under the laws of the state of California, engaged in the

19  business of wholesale distribution of tobacco and tobacco related products with a

20  principal place of business located at 8856 S. Western Ave, Los Angeles, California

21  90047.

22      9.    Upon information and belief, Ahmed is an individual residing and

23  doing business in Los Angeles, California, is an owner and/or managing member of

24  Western Wholesale, and has directed, authorized, participated in and/or knowingly

25  benefitted from the acts of infringement, unfair competition, unfair business

26  practices and other wrongful and unlawful acts alleged herein.

27      10.    Upon information and belief, Cervantes is an individual residing and

28  doing business in Los Angeles, California, is an owner and/or managing member

of Western Wholesale, and has directed, authorized, participated in and/or knowingly benefitted from the acts of infringement, unfair competition, unfair business practices and other wrongful and unlawful acts alleged herein. (Defendants Western Wholesale, Ahmed and Cervantes will sometimes be referred to collectively hereinafter as the "Western Defendants.")

11.    Grabba Leaf is unaware of the true names and capacities, whether individual, corporate, associate, or otherwise, of defendants Does 1 through 10, inclusive, or any of them, and therefore sues those defendants, and each of them, by fictitious names. Grabba Leaf will seek leave of court to amend this complaint to allege the true names and capacities of the defendants identified herein as Does 1 through 10 when the identities and status of those defendants are ascertained.

12.    Upon information and belief, at all times relevant herein, the Western Defendants and each of the Doe defendants were the agents of each other and, in doing the things alleged herein, each defendant was acting within the course and scope of his, her, or its agency and was subject to and under the supervision of each of his, her, or its co-defendants.

### GENERAL ALLEGATIONS

13.    Since at least as early as 2006, Grabba Leaf has been using GRABBA LEAF as a trademark in connection with marketing and sale of Grabba Leaf's tobacco and tobacco related products. Since at least as early as 2009, Grabba Leaf has been using the word mark GRABBA LEAF and associated graphic stylized tobacco leaf designs as a trademark in connection with marketing and sale of Grabba Leaf's tobacco and tobacco related products in commerce as defined by 15 U.S.C. §1051, et seq.

14.    Grabba Leaf is the registered owner of the following trademark registrations:

A.    On June 19, 2012, the U.S. Patent and Trademark Office ("USPTO") issued to Mr. Robinson Trademark Reg. No. 4,160,203 for the

word mark GRABBA LEAF and associated Design for use with cigar wraps. (*See* **Ex. 1** for a true and correct copy of the Certificate of Registration for the mark.)

  B. On Jan. 7, 2014, the USPTO issued to Mr. Robinson Trademark Reg. No. 4,461,093 for the word mark GRABBA LEAF and another associated Design for use with cigar wraps. (*See* **Ex. 2** for a true and correct copy of the Certificate of Registration for the mark.)

  C. On Feb. 25, 2014, the USPTO issued to Mr. Robinson Trademark Reg. No. 4,487,117 for the word mark GRABBA LEAF for use with cigar wraps. (*See* **Ex. 3** for a true and correct copy of the Certificate of Registration for the mark; these associated Registrations will be referred to collectively hereinafter as the "GRABBA Marks.")

  15. Each of the GRABBA Marks registrations is in full force and effect and each has become incontestable.

  16. Grabba Leaf has invested extensive effort, creativity and expense to develop, design, advertise, market and sell distinctive, superior quality tobacco products marketed and sold under the GRABBA Marks, particularly including whole leaf tobacco labeled and sold as "GRABBA LEAF Whole Leaf" (hereinafter, "Grabba Green") and "GRABBA LEAF Cigar Wrap" (hereinafter "Grabba Brown") products. The Grabba Green and Grabba Brown products are packaged for sale to consumers in attractive, readily identifiable packaging displaying the GRABBA Marks. Through these efforts, Grabba Leaf's products have become the gold standard in the "Roll Your Own" and "Make Your Own" tobacco products industry.

  17. Grabba Leaf's products sold under the GRABBA Marks are 100 percent natural and do not have any additives, chemicals, or preservatives. Grabba Leaf rigorously inspects and selects tobacco for its GRABBA Leaf products from the finest tobacco available, ensuring a smooth smoke from beginning to end.

18.     Through these efforts, Grabba Leaf's products, uniquely identified and associated with the GRABBA Marks and the associated distinctive packaging, have come to be recognized as the leading and preferred products in their categories.  As a result, the GRABBA Marks have acquired and possess widespread, extremely valuable good will among consumers as the source identifier for Grabba Leaf's industry leading products and as an assurance of reliably pure, fresh, wholesome products.

19.     In or about August 2020, Grabba Leaf learned from the owner of a neighborhood market in Los Angeles that she had received numerous complaints from customers who had purchased Grabba Green and Grabba Brown products from her store that the products were of markedly inferior quality and appeared not to be genuine.  The market had purchased these products from Western Wholesale.

20.     Grabba Leaf invited the store owner to send her remaining inventory of Grabba Green and Grabba Brown products purchased from Western Wholesale to Grabba Leaf to be examined.  Grabba Leaf confirmed that each of these products was counterfeit by examining the packaging, which closely duplicated the genuine Grabba Leaf product packaging and were calculated to deceive consumers to believe that they were genuine Grabba Leaf products, but which had minor but visible discrepancies which enabled Grabba Leaf to positively determine that they were counterfeit.

21.     From February 2021 through June 2021, Grabba Leaf commissioned private investigators to purchase dozens of Grabba Green and Grabba Brown products from Western Wholesale, on multiple occasions.  Each of the purchases were delivered to Grabba Leaf and every one of them was confirmed to be counterfeit.

22.     Scientific testing of multiple samples of the tobacco contained in the counterfeit Grabba Green and Grabba Brown packages purchased from Western Wholesale has determined that the tobacco in the counterfeit packaging contain

1  measurable, dangerous levels of pesticides and heavy metals, including arsenic and

2  cadmium, exposing any consumer who smokes or otherwise consumes this tobacco

3  to significant risk to his or her health.

4       23.    Upon information and belief, the Western Defendants are actively and

5  contemporaneously engaged in the widespread sale of counterfeit products that

6  unlawfully duplicate and infringe the trademarks and other exclusive legal rights of

7  multiple other manufacturers and distributors of tobacco related products, including

8  "Bang" vape pen products, "Zig Zag" and "Raw" rolling papers, and "Glow Tray"

9  rolling trays.

10       24.    Upon information and belief, the Western Defendants have a

11  substantial volume of counterfeit Grabba Leaf products in the Western Wholesale

12  warehouse.  These products, if allowed to enter the stream of commerce and be

13  distributed to consumers, present a significant risk to the health and well-being of

14  such consumers.

15       25.    Upon information and belief, Ahmed and Cervantes have been

16  criminally charged and Ahmed has been convicted of crimes including Medicare

17  fraud, and each uses multiple aliases.  If the Western Defendants are given advance

18  notice that a court order authorizing the seizure and impoundment of its inventory

19  of counterfeit Grabba Leaf products has been issued, there is a real and present risk

20  that its personnel will remove, conceal, destroy or otherwise dispose of their

21  inventory of counterfeit products before they can be seized and impounded, which

22  dangerous, unhealthful products could then potentially reach consumers.

23  **FIRST CAUSE OF ACTION**

24  **(TRADEMARK COUNTERFEITING AND INFRINGEMENT UNDER 15**

25  **U.S.C. § 1114 AGAINST ALL DEFENDANTS)**

26       26.    Grabba Leaf hereby incorporates by reference and realleges each and

27  every allegation of Paragraph Nos. 1-25, above.

28

27.    The GRABBA Marks are used in commerce and are valid, protectable trademarks under the Lanham Act.

28.    With actual or constructive notice of Grabba Leaf's federal registration rights under 15 U.S.C. § 1072, and long after Grabba Leaf commenced use of the GRABBA Marks, the Western Defendants made unauthorized commercial uses in commerce of the GRABBA Marks.

29.    The Western Defendants' counterfeit use of the GRABBA Marks is likely to cause confusion in the minds of the public, falsely leading the public to believe that counterfeit Grabba Green and Grabba Brown products supplied by the Western Defendants emanate or originate from or are affiliated with, Grabba Leaf and/or that Grabba Leaf has approved, sponsored or otherwise associated itself with the products sold by the Western Defendants. The Western Defendants' actions in this regard have at all times been without Grabba Leaf's authorization or consent.

30.    The Western Defendants' conduct is intended to exploit the goodwill and reputation associated with Grabba Leaf's registered trademarks and to take a competitive advantage without expenditure of resources, by a strategy of willful infringement.

31.    Grabba Leaf has no control over the nature and quality of the goods or services offered by the Western Defendants under the GRABBA Marks, and Grabba Leaf's reputation and goodwill will be damaged and the value of the GRABBA Marks reduced by The Western Defendants' continued use of the GRABBA Marks. In particular, but without limitation, the counterfeit products being sold and distributed by the Western Defendants under false designations of the GRABBA Marks are contaminated with pesticides and heavy metals that present significant health risks to purchasers of those products. Because the Western Defendants' counterfeit use of the GRABBA Marks is likely to cause confusion in the minds of the public, any negative health issues encountered or other defects, objections, or faults found with the Western Defendants' products or

services marketed under the GRABBA Marks will negatively reflect upon and injure the reputation that Grabba Leaf has established for the products and services it offers in connection with the registered GRABBA Marks.

32.     Grabba Leaf has been and will continue to be irreparably harmed by the actions of the Western Defendants unless the Western Defendants are enjoined from continuing to manufacture, supply, sell, offer or deliver counterfeit Grabba Leaf products. Unless enjoined by this Court, the Western Defendants will continue to use the infringing marks, causing irreparable injury to Grabba Leaf's business, identity, goodwill and reputation. Grabba Leaf has no adequate remedy at law as monetary damages are inadequate to compensate Grabba Leaf for the injuries caused by the Western Defendants.

33.     As a result of the Western Defendants' infringement of the GRABBA Marks, Grabba Leaf has incurred damages in an amount to be proven at trial.

34.     The Western Defendants' infringement of the GRABBA Marks is deliberate, willful, fraudulent, and without any extenuating circumstances, and constitutes a knowing use of the GRABBA Marks and an exceptional case within the meaning of Lanham Act section 35, 15 U.S.C. § 1117. Grabba Leaf is therefore entitled to recover three times the amount of its actual damages and the attorneys' fees and costs incurred in this action, and prejudgment interest.

## SECOND CAUSE OF ACTION

## (TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(a) AGAINST ALL DEFENDANTS)

35.     Grabba Leaf hereby incorporates by reference and realleges each and every allegation of Paragraph Nos. 1-25, and 27-31 above.

36.     The GRABBA Marks are used commercially in commerce and are entitled to full protection under the Lanham Act.

37. By using the GRABBA Marks in connection with counterfeit Grabba Leaf products, the Western Defendants' conduct constitutes a use in commerce in connection with the Western Defendants' goods of symbols and devices and constitutes false designations of origin and false or misleading descriptions and representations in violation of 15 U.S.C. § 1125(a).

38. The Western Defendants' counterfeit use of the GRABBA Marks is likely to cause confusion in the minds of the public, falsely leading the public to believe that counterfeit Grabba Leaf products supplied by the Western Defendants emanate or originate from, or are affiliated with, Grabba Leaf and/or that Grabba Leaf has approved, sponsored or otherwise associated itself with the products sold by the Western Defendants. The Western Defendants' actions in this regard have at all times been without Grabba Leaf's authorization or consent.

39. Grabba Leaf has been, and will continue to be, irreparably harmed by the actions of the Western Defendants unless the Western Defendants are enjoined from continuing to manufacture, supply, distribute, offer, sell and deliver counterfeit Grabba Leaf products. Unless enjoined by this Court, the Western Defendants will continue to use the infringing marks, causing irreparable injury to Grabba Leaf's business, identity, goodwill and reputation. Grabba Leaf has no adequate remedy at law as monetary damages are inadequate to compensate Grabba Leaf for the injuries caused by the Western Defendants. Grabba Leaf is entitled to injunctive relief pursuant to 15 U.S.C. § 1116 to enjoin and restrain the Western Defendants from further violation of 15 U.S.C. § 1125(a).

40. As a result of the Western Defendants' infringement of the GRABBA Marks, Grabba Leaf has incurred damages in an amount to be proven at trial.

41. The Western Defendants' infringement of the GRABBA Marks is deliberate, willful, fraudulent, and without any extenuating circumstances, and constitutes a knowing use of the GRABBA Marks and an exceptional case within

the meaning of Lanham Act section 35, 15 U.S.C. § 1117. Grabba Leaf is therefore entitled to recover three times the amount of its actual damages and the attorneys' fees and costs incurred in this action, and prejudgment interest.

### THIRD CAUSE OF ACTION

### (COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION AGAINST ALL DEFENDANTS)

42.    Grabba Leaf hereby incorporates by reference and realleges each and every allegation of Paragraph Nos. 1-25, 27-31 and 36-37 above.

43.    Grabba Leaf has established through prior use in commerce a valid and protectable interest in the GRABBA Marks, and has built and created valuable goodwill in the GRABBA Marks.

44.    With full knowledge of the GRABBA Marks, and each of them, the Western Defendants have subsequently and without authorization of any kind from Grabba Leaf used the same and/or similar marks in connection with counterfeit Grabba Leaf products and in connection with the advertising, promotion, and sale of such counterfeit products.

45.    With full knowledge of the GRABBA Marks, the Western Defendants have traded, and continues to trade, on the goodwill associated with the GRABBA Marks, and each of them, and to cause confusion or mistake or to deceive consumers and therefore infringe Grabba Leaf's rights in the GRABBA Marks in violation of common law.

46.    The Western Defendants' acts have resulted in the "passing off" of the Western Defendants' products as those of Grabba Leaf's, or as somehow related or associated with, or sponsored or endorsed by Grabba Leaf. The Western Defendants' conduct, as alleged here, constitutes trademark infringement and unfair competition under California common law.

47.    Grabba Leaf has no adequate remedy at law and as such is entitled to an injunction restraining the Western Defendants and their agents, employees,

officers, alter egos, and all persons acting in concert with them, from engaging in any further such acts in violation of the common law of the State of California.

48.     The Western Defendants' acts entitle Grabba Leaf to general and special damages for all of the Western Defendants' profits derived from their past unlawful conduct to the full extent provided for by the common law of the State of California.

49.     The Western Defendants' wrongful use of the GRABBA Marks is deliberate, willful, and in reckless disregard of Grabba Leaf's trademark rights, entitling Grabba Leaf to the recovery of punitive damages.

## FOURTH CAUSE OF ACTION

### (VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200 AGAINST ALL DEFENDANTS)

50.     Grabba Leaf hereby incorporates by reference and realleges each and every allegation of Paragraph Nos. 1-25, 27-31, 36-37, and 43-49 above.

51.     The Western Defendants' acts as described above constitute unlawful and unfair business practices that have injured Grabba Leaf in its business and property in violation of California Business & Professions Code §§ 17200, *et seq.*

52.     The Western Defendants' wrongful acts were and are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of the counterfeit Grabba Leaf products sold by the Western Defendants with Grabba Leaf, or as to the origin, sponsorship or approval of the Western Defendants' infringing and counterfeit products by Grabba Leaf.

53.     Grabba Leaf has suffered injury in fact and has lost money or property as a result of the Western Defendants' acts of unfair competition.

54.     Grabba Leaf has no adequate remedy at law and as such is entitled to an injunction restraining the Western Defendants and their agents, employees, officers, alter egos, and all persons acting in concert with them, from engaging in any further such unfair business practices in violation of Cal. Bus. & Prof. Code §17200.

55.     As a direct and proximate result of the Western Defendants' conduct, Grabba Leaf is entitled to all remedies set forth in Cal. Business & Prof. Code § 17203, as applicable, including but not limited to restitution of money or property and disgorgement of any profits gained by the Western Defendants as a result of its acts of unfair competition.

## PRAYER FOR RELIEF

**WHEREFORE,** Grabba Leaf respectfully prays for:

A.     Judgment that each Defendant has: (i) willfully engaged in trademark counterfeiting in violation of 15 U.S.C. § 1114; (ii) willfully infringed the GRABBA Marks in violation of 15 U.S.C. § 1114; (iii) willfully used false designations of origin and/or engaged in unfair competition in violation of 15 U.S.C. § 1125(a); and (iv) willfully violated Grabba Leaf's common law rights in the GRABBA Marks.

B.     A temporary, preliminary, and permanent injunction against further counterfeiting, infringement, false designation of origin, and unfair competition directed against the GRABBA Marks, by each Defendant, its officers, agents, servants employees, attorneys, and all others in active concert or participation with any of them;

C.     An order, pursuant to 15 U.S.C. § 1116(d) and the Court's inherent authority, directing the seizure of all evidence of each Defendant's unlawful conduct;

D.     A finding that this is an exceptional case within the meaning of 15 § U.S.C. 1117(a);

E.     An award of damages adequate to compensate Grabba Leaf for the trademark infringements that have occurred pursuant to 15 U.S.C. § 1117(a), which amount shall include each Defendant's profits, Grabba Leaf's damages, and the costs of the action.

F.     At Grabba Leaf's election, either: (1) an award of damages adequate to compensate Grabba Leaf for the intentional acts of trademark counterfeiting that have occurred, pursuant to 15 U.S.C. § 1117(b), which amount shall include three times each Defendant's profits or Grabba Leaf's damages (whichever is greater), together with reasonable attorneys' fees; or (2) statutory damages in the amount of: (i) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or service sold, offered for sale, or distributed, as the Court considers just; or (ii) if the Court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the Court considers just.

G.     An award of restitution of money or property and the disgorgement of any profits acquired by each Defendant as a result of their unfair competition;

H.     For increased and punitive damages as allowed by law, including but not limited to those increased damages authorized by 15 U.S.C. § 1117;

I.     An assessment of costs, including reasonable attorneys' fees and expenses, as well as prejudgment interest at the highest legal rate allowable under law; and,

J.     Such other and further relief as this Court deems just and proper.


Dated: August 17, 2021                BUCHALTER A Professional Corporation

                                      By: _____

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all issues for which a trial by jury may be had, as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Dated: August 17, 2021                    BUCHALTER A Professional Corporation

By: _____

# EXHIBIT 1

# United States of America

## United States Patent and Trademark Office



**Reg. No. 4,160,203**

**Registered June 19, 2012**

**Int. Cl.: 34**

**TRADEMARK**

**PRINCIPAL REGISTER**

MICHAEL ANDREW ROBINSON (UNITED STATES INDIVIDUAL)
APARTMENT 207
8020 NORTH NOB HILL ROAD
TAMARAC, FL 33321

FOR: CIGAR WRAPS, IN CLASS 34 (U.S. CLS. 2, 8, 9 AND 17).

FIRST USE 11-1-2006; IN COMMERCE 11-1-2006.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "LEAF", APART FROM THE MARK AS SHOWN.

THE COLOR(S) LIGHT BROWN, DARK BROWN, BLACK, DARK GREEN, AND MARIGOLD YELLOW IS/ARE CLAIMED AS A FEATURE OF THE MARK.

THE MARK CONSISTS OF AN OVATE SHAPED LEAF WITH A TAPERED POINT HAVING MULTIPLE VEINS OCCURRING ALONG A SINGLE MAIN VEIN SHADED WITH A LIGHT BROWN HUE TOWARDS THE APEX OF THE LEAF AND DARK BROWN AT THE LOWER END. THE OVATE LEAF ALSO CONSISTS OF A BLACK STEM WHICH RADIATES UP THROUGH THE LEAF. THE WORDS "GRABBA LEAF" ARE POSITIONED INSIDE THE CENTER PORTION OF THE LEAF WITH THE WORD "GRABBA" ABOVE THE WORD "LEAF". THE WORDING HAS A DARK GREEN OUTLINE AND A MARIGOLD YELLOW FILL. THE LIGHT BROWN BACKGROUND AROUND THE LEAF IS NOT CLAIMED AS PART OF THE MARK.

SER. NO. 85-351,277, FILED 6-21-2011.

ESTHER BELENKER, EXAMINING ATTORNEY



*David J. Kappos*

Director of the United States Patent and Trademark Office

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL
TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE
DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years***
**What and When to File:**

> *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. *See* 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

> *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between the 9th and 10th years after the registration date.*
> *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

---

**The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or
reminder of these filing requirements.**

---

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the USPTO. The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. *See* 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. *See* 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

# EXHIBIT 2

# United States of America

## United States Patent and Trademark Office



**Reg. No. 4,461,093**

**Registered Jan. 7, 2014**

**Int. Cl.: 34**

**TRADEMARK**

**PRINCIPAL REGISTER**

MICHAEL ANDREW ROBINSON (UNITED STATES INDIVIDUAL)
APARTMENT 207
8020 NOB HILL ROAD
TAMARAC, FL 33321

FOR: CIGAR WRAPS, IN CLASS 34 (U.S. CLS. 2, 8, 9 AND 17).

FIRST USE 11-1-2006; IN COMMERCE 7-10-2009.

OWNER OF U.S. REG. NOS. 4,160,203 AND 4,186,520.

THE COLOR(S) DARK GREEN, MARIGOLD YELLOW, RUSSET BROWN, COPPER BROWN, AND BLACK IS/ARE CLAIMED AS A FEATURE OF THE MARK.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "LEAF", APART FROM THE MARK AS SHOWN.

THE MARK CONSISTS OF AN OVATE SHAPED LEAF WITH A TAPERED POINT HAVING MULTIPLE VEINS OCCURRING ALONG A SINGLE MAIN VEIN SHADED WITH A COPPER BROWN HUE TOWARDS THE APEX OF THE LEAF AND A RUSSET BROWN AT THE LOWER END. THE OVATE LEAF ALSO CONSISTS OF A BLACK STEM WHICH RADIATES UP THROUGH THE LEAF. THE WORDS "GRABBA LEAF" ARE POSITIONED ON THE CENTER AND RIGHT SIDE OF THE LEAF WITH THE WORD "GRABBA" ABOVE AND SLIGHTLY TO THE LEFT OF THE WORD "LEAF". THE "G" IN "GRABBA" IS CENTERED ON THE LEAF. THE WORDING HAS A DARK GREEN OUTLINE AND A MARIGOLD YELLOW FILL.

SER. NO. 85-772,332, FILED 11-6-2012.

CIMMERIAN COLEMAN, EXAMINING ATTORNEY

Deborah S. Cohn
Commissioner for Trademarks of the
United States Patent and Trademark Office

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL
TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE
DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years***
**What and When to File:**

*First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. *See* 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

*Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between the 9th and 10th years after the registration date.* *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

---

**The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or
reminder of these filing requirements.**

---

***ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the USPTO. The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. *See* 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. *See* 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE:** Fees and requirements for maintaining registrations are subject to change. **Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

# EXHIBIT 3

# United States of America

## United States Patent and Trademark Office

# Grabba Leaf

**Reg. No. 4,487,117**

**Registered Feb. 25, 2014**

**Int. Cl.: 34**

**TRADEMARK**

**PRINCIPAL REGISTER**

MICHAEL ANDREW ROBINSON (UNITED STATES INDIVIDUAL)
APARTMENT 207
8020 NORTH NOB HILL ROAD
TAMARAC, FL 33321

FOR: CIGAR WRAPS, IN CLASS 34 (U.S. CLS. 2, 8, 9 AND 17).

FIRST USE 11-1-2006; IN COMMERCE 7-10-2009.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PAR-
TICULAR FONT, STYLE, SIZE, OR COLOR.

OWNER OF U.S. REG. NOS. 4,160,203 AND 4,186,520.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "LEAF", APART FROM THE
MARK AS SHOWN.

SER. NO. 85-772,297, FILED 11-6-2012.

CIMMERIAN COLEMAN, EXAMINING ATTORNEY



Deputy Director of the United States
Patent and Trademark Office

---

### REQUIREMENTS TO MAINTAIN YOUR FEDERAL
### TRADEMARK REGISTRATION

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE
DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years\***
**What and When to File:**

> ***First Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) between the
> 5th and 6th years after the registration date. *See* 15 U.S.C. §§1058, 1141k. If the declaration is
> accepted, the registration will continue in force for the remainder of the ten-year period, calculated
> from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a
> federal court.

> ***Second Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) **and** an
> Application for Renewal between the 9th and 10th years after the registration date.\*
> *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between
> every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above
with the payment of an additional fee.

---

**The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or
reminder of these filing requirements.**

---

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with
an extension of protection to the United States under the Madrid Protocol must timely file the Declarations
of Use (or Excusable Nonuse) referenced above directly with the USPTO. The time periods for filing are
based on the U.S. registration date (not the international registration date). The deadlines and grace periods
for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.
*See* 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications
at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the
International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol,
before the expiration of each ten-year term of protection, calculated from the date of the international
registration. *See* 15 U.S.C. §1141j. For more information and renewal forms for the international registration,
see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the
USPTO website for further information. With the exception of renewal applications for registered
extensions of protection, you can file the registration maintenance documents referenced above online
at** http://www.uspto.gov.