C. DENNIS LOOMIS (SBN: 082359)
    E-Mail: CDLoomis@Buchalter.com
THOMAS J. SPEISS, III (SBN: 200949)
    E-Mail: TSpeiss@Buchalter.com
BUCHALTER, A PROFESSIONAL CORPORATION
1000 Wilshire Boulevard, Suite 1500
Los Angeles, California 90017-2457
Tel.: (310) 490-3373
Fax: (213) 896-0400

Attorneys for Plaintiffs, MICHAEL ANDREW ROBINSON,
an Individual resident of Florida,
and GRABBA LEAF, LLC,
a Florida limited liability company

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| MICHAEL ANDREW ROBINSON, an individual; GRABBA LEAF, LLC, a Florida limited liability company,<br><br>       Plaintiffs,<br><br>   vs.<br><br>BEST PRICE DISTRIBUTORS, LLC, a California limited liability company, doing business as WESTERN WHOLESALE and as QUICK TOBACCO WHOLESALE; KHALED M. AHMED, an individual; SANDRA S. CERVANTES, aka SANDRA AHMED, an individual; and DOES 1-10;<br><br>       Defendants.<br><hr>ALL GRABBA LEAF, LLC d/b/a WESTERN WHOLESALE,<br><br>       Counterclaimant,<br><br>   vs.<br><br>GRABBA LEAF, LLC, and ROES 1-10, inclusive,<br><br>       Counter-Defendants. | Case No. 2:21-cv-06689-RGK-JC<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF LIABILITY**<br><br>Hon. Gary R. Klausner<br><br>Hearing Date:  August 22, 2022<br>Time:  9:00 a.m.<br>Courtroom:  Roybal Federal Building and U.S. Courthouse, Courtroom 850, 8th Floor |

**TO THE HONORABLE COURT, TO ALL PARTIES, AND TO THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT, on <u>August 22, 2022</u>, at 9:00 a.m., or as soon thereafter as the matter may be heard in the Courtroom of the Honorable R. Gary Klausner, located at the Roybal Federal Building and United States Courthouse, 255 East Temple Street, Los Angeles, California 90012, Courtroom 850, 8th Floor, plaintiffs Grabba Leaf, LLC and Michael A. Robinson (collectively, "Grabba Leaf"), will, and do hereby, move for partial summary judgment (the "MSJ") on Grabba Leaf's First Amended Complaint (the "Complaint") against defendants Best Price Distributors, LLC, doing business as Western Wholesale and as Quick Tobacco Wholesale; Khaled M. Ahmed, an individual; and Sandra S. Cervantes, aka Sandra Ahmed (collectively, "Defendants"), adjudging, holding and ordering:

     A.    That each Defendant, jointly and severally, is liable to Grabba Leaf for:  (1) trademark counterfeiting and infringement under 15 U.S.C. §1114; (2) trademark infringement and unfair competition under 15 U.S.C. §1125(a); and, (3) copyright infringement under 17 U.S.C. §101 *et seq.*; and,

     B.    Making permanent the Preliminary Injunction entered by the Court on <u>June 14, 2022</u> [**DE 76**] enjoining Defendants, their officers, agents, servants, employees, and attorneys, specifically including Maria Sotelo, from selling any counterfeit Grabba Leaf product through the Smoke Shop located at 5800 West Boulevard in Los Angeles, California.

This MSJ is made following the conference of counsel pursuant to Local Rule 7-3, which took place on <u>July 13, 2022</u>.

This MSJ is based on:  (1) the accompanying Memorandum of Points and Authorities; (2) the Declarations of Michael A. Robinson and Thomas J. Speiss, III filed concurrently herewith; (3) the declaration evidence previously filed in this

action and specifically cited and discussed in the accompanying Memorandum of Points and Authorities; (4) the Statement of Uncontroverted Facts and Conclusions of Law submitted concurrently herewith; (5) the [Proposed] Order filed concurrently herewith; and, (6) such further evidence and argument as the Court may permit to be adduced.

Dated: July 25, 2022

THOMAS J. SPEISS, III
Attorneys for Plaintiffs,
MICHAEL ANDREW ROBINSON and
GRABBA LEAF, LLC

# TABLE OF CONTENTS

**PAGE(S)**

I.     INTRODUCTION AND SUMMARY ...........................................................1

II.    FACTUAL ANALYSIS. ..........................................................................2

    A.     Plaintiffs are the Owners of Federally Registered Trademarks and Copyrights and Additional Intellectual Property. ................................2

    B.     The Purchase of Counterfeit GRABBA LEAF Products from Western between February 11, 2021 and June 18, 2021 .....................4

    C.     Plaintiffs' Counterfeiting Complaint and Defendants' Continuing Sale of Counterfeit Grabba Leaf ...........................................................7

III.   ARGUMENT...........................................................................................9

    A.     The Summary Judgment Standard Supports Granting Plaintiffs' MSJ............................................................................................9

    B.     There Is No Genuine Dispute of Material Fact Concerning Defendants' Culpable, Repeated Sale of Counterfeit Grabba Leaf Products, Entitling Plaintiffs to Judgment As A Matter Of Law For Both Counterfeiting And For Trademark Infringement ...................11

        1.     Strength of the Mark ................................................................14

        2.     Proximity of the Goods ...........................................................15

        3.     Similarity of the Marks ...........................................................15

        4.     Evidence of Actual Confusion ................................................16

        5.     Marketing Channels Used .......................................................16

        6.     Degree of Care.........................................................................17

        7.     Intent ........................................................................................17

    C.     There is No Genuine Dispute of Material Fact that the Packaging of the Counterfeit Grabba Leaf Unlawfully Copies Plaintiffs' Copyrighted Package Artwork, Supporting Judgment As A Matter Of Law For Copyright Infringement. ..............................................18

    D.     Summary Judgment For Counterfeiting Supports Making the Preliminary Injunction *Permanent*. ............................................19

IV.    CONCLUSION ....................................................................................20

# TABLE OF AUTHORITIES

**PAGE(S)**

**Federal Cases**

*Addisu v. Fred Meyer*,
198 F.3d 1130 (9th Cir. 2000)..........................................................................10

*Adobe Sys. v. Dafang United States*,
LLC, No. 2:18-cv-08504-VAP-AGRx 2019 U.S. Dist. LEXIS
226717 (C.D. Cal. 2019)...................................................................................16

*AMF Inc. v. Sleekcraft Boats*,
599 F.2d 341 (9th Cir. 1979)...............................................................14, 16, 17

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986).........................................................................................10

*Bangkok Broad. & T.V. Co. v. IPTV Corp.*,
742 F. Supp. 2d 1101 (C.D. Cal. 2010)............................................................10

*Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*,
174 F.3d 1036 (9th Cir. 2007)......................................................12, 14, 15, 17

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986).........................................................................................10

*City of Carlsbad v. Shah*,
850 F. Supp. 2d 1087 (S.D. Cal. 2012)............................................................19

*Davis v. United States*,
854 F.3d 594 (9th Cir. 2017)............................................................................10

*Dep't of Parks & Recreation v. Harper*,
No. CV 05-2008 DSF, 2006 WL 8434676 (C.D. Cal. 2006)..............................2

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*,
618 F.3d 1025 (9th Cir. 2010)..........................................................................14

*Kyjen Co. v. Vo-Toys, Inc.*,
223 F. Supp. 2d 1065 (C.D. Cal. 2002)............................................................19

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON LIABILITY**

*Lanard Toys v. Anker Play Prods.*,
   No. CV 19-4350-RSWL-AFMx, 2020 U.S. Dist. LEXIS 221783
   (C.D. Cal. 2020)..................................................................................2

*Lindy Pen Co. v. Bic Pen Corp.*,
   796 F.2d 254 (9th Cir. 1986)............................................................12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986)..........................................................................10

*Monster Energy Co. v. Integrated Supply Network, LLC*,
   821 Fed.Appx. 730, 2020 U.S. App. LEXIS 22874 (9th Cir. 2020) ................15

*Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.*,
   701 F.2d 95 (9th Cir. 1983)..............................................................11

*Network Auto., Inc. v. Advanced Sys. Concepts, Inc.*,
   638 F.3d 1137 (9th Cir. 2011)..........................................................14

*Pasillas v. McDonald's Corp.*,
   927 F.2d 440 (9th Cir. 1991)............................................................18

*Phillip Morris USA, Inc. v. Shalabi*,
   352 F. Supp. 2d 1067 (C.D. Cal. 2004) ......................................12, 14

*S. Cal. Darts Ass'n v. Zaffina*,
   762 F.3d 921 (9th Cir. 2014)............................................................11

*Stone Creek, Inc. v. Omnia Italian Design, Inc.*,
   875 F.3d 426 (9th Cir. 2017)............................................................15

*Thornhill Publ'g Co. v. GTE Corp.*,
   594 F.2d 730 (9th Cir. 1979)............................................................10

*U.S. v. 10,510 Packaged Computer Towers, More or Less*,
   152 F. Supp. 2d 1189 (N.D. Cal. 2001)..........................................12

*Warren v. Fox Family Worldwide, Inc.*,
   171 F. Supp. 2d 1057 (C.D. Cal. 2001) ............................................2

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

iii

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON LIABILITY**

BN 71276157v7

**Federal Statutes**

15 U.S.C. § 1114...................................................................................2, 9, 17, 20

15 U.S.C. § 1114(a) ............................................................................................11

15 U.S.C. § 1115.................................................................................................11

15 U.S.C. § 1125(a) ..........................................................................................2, 9

15 U.S.C. § 1127....................................................................................11, 12, 13

17 U.S.C. § 101 *et seq.*................................................................................2, 9, 20

**Rules**

Fed. R. Civ. P. 56(a) ......................................................................................9, 10

Fed. R. Evid. 201 .................................................................................................2

Fed. R. Evid. 201(b)(2) ........................................................................................2

**Other Authorities**

MCCARTHY, *McCarthy on Trademarks and Unfair Competition*, §
    25:10 (5th ed. 2022) .......................................................................................12

1  **MEMORANDUM OF POINTS AND AUTHORITIES**
2  **I.    INTRODUCTION AND SUMMARY**
3      Plaintiffs move for <u>partial</u> summary judgment on the straightforward issue of
4  <u>liability</u> for trademark and copyright infringement.  Since at least as early as
5  <u>February 11, 2021</u>, Defendants and their agents have marketed and sold *counterfeit*
6  GRABBA LEAF products.  There is no genuine issue of material fact concerning
7  Defendants' sale of counterfeit GRABBA LEAF products.  Plaintiffs — through their
8  use of private investigators and then based on the written testimony of
9  Michael A. Robinson, their CEO and founder, as well as others — have documented
10  Defendants' marketing and sale of counterfeit GRABBA LEAF products on nine (9)
11  separate occasions, between <u>February 11, 2021</u> and <u>March 2, 2022</u>.  Based on this
12  evidence, this Court has entered its preliminary injunction against further counterfeit
13  sales.  [**DE 76**]
14      Plaintiffs reserve for further prosecution and adjudication all other issues and
15  claims presented by their First Amended Complaint, (the "FAC") [**DE 72**],
16  particularly including determination of Grabba Leaf's actual damages, disgorgement
17  of Defendants' unjust profits, for treble damages, in the alternative for statutory
18  damages, and for further equitable relief.
19  **Summary Adjudication on Liability and Request for Permanent Injunction**
20      As discussed above, Plaintiffs Grabba Leaf, LLC and Michael A. Robinson
21  (collectively, "Plaintiffs" or "Grabba Leaf") have documented the sale of *counterfeit*
22  GRABBA LEAF products on nine (9) occasions by defendants Best Price
23  Distributors, LLC, doing business as Western Wholesale and as Quick Tobacco
24  Wholesale (hereinafter, "Western"), Khaled M. Ahmed and Sandra S. Cervantes,
25  also known as Sandra Ahmed (collectively, "Defendants") and their agents.
26      Plaintiffs now move for *partial* summary judgment (the "MSJ") against all
27  Defendants on the issues of Defendants' <u>liability</u> for trademark counterfeiting,
28  trademark infringement and copyright infringement.  The MSJ also moves the Court

1  to now make the preliminary injunction [**DE 76**] permanent, and permanently enjoin

2  any further sale of *counterfeit* Grabba Leaf products by Defendants or their agents,

3  including Maria Sotelo.

4      The evidence on record in this action, reinforced and extended by the second

5  Declaration of Mr. Robinson submitted concurrently herewith, prove without any

6  genuine factual dispute that Defendants have sold *counterfeit* Grabba Leaf products.

7  The authorities presented in this Memorandum establish, as a matter of law, that

8  based on this evidence, Grabba Leaf is entitled to summary judgment against

9  Defendants for counterfeit sales in violation of 15 U.S.C. §1114, and, as a

10  necessary concomitant, for trademark infringement and unfair competition in

11  violation of 15 U.S.C. §1125(a).

12      The same evidence proves without dispute that the counterfeit Grabba Leaf

13  products distributed by Defendants unlawfully copy the graphic designs displayed

14  on the genuine Grabba Leaf packaging covered by Grabba Leaf's registered

15  copyrights in those designs, supporting entry of summary judgment for copyright

16  infringement in violation of 17 U.S.C. §101, *et seq.*

17  **II.   FACTUAL ANALYSIS.**

18      **A.   Plaintiffs are the Owners of Federally Registered Trademarks and**

19          **Copyrights and Additional Intellectual Property.**

20      As alleged in the FAC, and as the Court may judicially notice,[1] Mr. Robinson

21  is the registrant and owner of three (3) U.S. Federal trademark registrations

---

[1]    The Court may take judicial notice of those facts that are not subject to
reasonable dispute and are "capable of accurate and ready determination" by
reference to sources whose accuracy cannot reasonably be questioned, which
includes federal copyright and trademark registrations.  Fed. R. Evid. 201;
*Lanard Toys v. Anker Play Prods.*, No. CV 19-4350-RSWL-AFMx,
2020 U.S. Dist. LEXIS 221783, at * 28-29 (C.D. Cal. 2020); *Warren v. Fox Family
Worldwide, Inc.*, 171 F. Supp. 2d 1057, 1062 (C.D. Cal. 2001) ("Copyright
certificates are the type of documents that the court may judicially notice under
Rule 201(b)(2)."); and, *see*, *Dep't of Parks & Recreation v. Harper*,
No. CV 05-2008 DSF (JWJx), 2006 WL 8434676, at *3 (C.D. Cal. 2006) (*quoting
Vitek Sys., Inc. v. Abbott Labs.*, 675 F.2d 190, 192 n.3 (8th Cir. 1982)) ("[T]he
'court may take judicial notice of Patent and Trademark Office documents.'")

covering the brand name GRABBA LEAF, as well as additional associated graphical designs for use with cigar wraps, and one U.S. copyright registration for the graphical artwork that appears on one of the Grabba Leaf products involved in this action.  FAC, ¶¶ 13-17 [**DE 72**].

The Federal trademark registrations are Reg. No. 4,160,203, for the stylized word mark "GRABBA LEAF" and tobacco leaf design, issued on <u>June 19, 2012</u> (the "'203 TM Reg.") (*see* **Ex. 1** attached to the accompanying Declaration of Thomas J. Speiss, III in support of Plaintiffs' MSJ ("Speiss Decl."); Reg. No. 4,461,093, for the stylized word mark "GRABBA LEAF" and a second tobacco leaf design, issued on <u>January 7, 2014</u> (the "'093 TM Reg.") (*see* **Ex. 2**, Speiss Decl.); and, Reg. No. 4,487,117, for the standard character word mark "GRABBA LEAF," issued on <u>February 25, 2014</u> (the "'117 TM Reg.") (*see* **Ex. 3**, Speiss Decl.) (collectively, the "Grabba TM Registrations").  (*See* the accompanying Statement of Undisputed Facts and Conclusions of Law ("<u>UMF</u>"), Fact <u>No. 1</u>.)

The Federal copyright registration is Reg. No. VA2-152-331, for the 2-dimensional artwork in the Grabba Leaf logo that is displayed on all Grabba Whole-leaf foil packs, issued on <u>February 4, 2019</u> (the "Copyrighted Work") (*see* **Ex. 4**, Speiss Decl., for the copyright registration; *see* **Ex. 5**, Speiss Decl., for an authenticated copy of the copyright deposit materials).  (*See* <u>UMF No. 2</u>.)

The Grabba Leaf products are packaged for sale in distinctive and readily identifiable packaging that displays the brand name and the graphical designs covered by the Grabba TM Registrations and Copyrighted Work.  Two particular products are involved in this action:  "Grabba Whole-leaf" and "Grabba Cigar Wraps."  The front of the genuine "Grabba Whole-leaf" foil pack displays the graphical designs covered by the '093 TM Reg., and also the Copyrighted Work, and is shown on the first page of Ex. 5 to the Declaration of Michael A. Robinson dated <u>August 16, 2021</u> (the "Robinson 2021 Decl."), [**DE 12**].  (<u>UMF No. 3</u>.)  The front of the genuine "Grabba Cigar Wrap" foil pack displays the graphical designs

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES
BN 71276157v7

covered by the '203 TM Reg., and is shown on the third page of Ex. 5 to the
Robinson 2021 Decl.  (UMF No. 4.)

**B.**      **The Purchase of Counterfeit GRABBA LEAF Products from**
            **Western between February 11, 2021 and June 18, 2021**

Defendants Khaled Ahmed and Sandra Cervantes, by their own admission,
are the owners, operators, and/or managing members of defendant Western, a
wholesale vendor of tobacco products located at 8856 South Western Ave.,
Los Angeles, California, that has sold Grabba Leaf "Whole-leaf" and "Cigar Wrap"
products for several years.  (UMF No. 5; *see* Counterclaim of All Grabba Leaf,
LLC, ¶¶ 3, 10) [**DE 30**].)  As Defendants have admitted, this business is operated
on a "*cash and carry*" basis only.  (UMF No. 6; *see* **Ex. 6**, Speiss Decl., for a copy
of Defendants' discovery responses.)

In the fall of 2020, Grabba Leaf was alerted by a retail store owner in
Los Angeles, California, Will's Jr. Market, that she had received complaints from
her customers about the quality of the Grabba Leaf she had purchased from Western
and sold to these customers.  She therefore suspected that Western had sold her
counterfeit Grabba Leaf products.  (*See* the Second Declaration of Michael A.
Robinson filed concurrently herewith ("Robinson 2022 Decl."), ¶ 8; *see also*,
Robinson 2021 Decl., ¶¶ 6-9 [**DE 12**].)

At the request of Mr. Robinson, she sent her remaining inventory of
Grabba Leaf products purchased from Western to Grabba Leaf to be examined.
(Robinson 2021 Decl., ¶ 9.)  Mr. Robinson did examine these products, and
conclusively determined ― based upon his examination of the products themselves
(*see* Robinson 2021 Decl. [**DE 12**], at ¶ 9(b) and Ex. 7 thereto), as well as the
product packaging for the products (*see id*. at ¶ 9(a), (c)-(j) and Exs. 5, 8-15) ― that
all of them were unauthorized, inferior quality counterfeit copies of genuine Grabba
"Whole-leaf" and "Cigar Wrap" products.  (*See id.*)

Upon this discovery, Grabba Leaf engaged a private investigation agency, LSS Investigations, to investigate Western's sales of counterfeit Grabba Leaf products.  (UMF No. 7; *id,* ¶ 11.)  LSS has particular expertise in investigations of suspected counterfeit product sales.  (Declaration of John M. Hood, III (the "Hood 2021 Decl."), ¶¶ 3, 4) [**DE 10**]).  From February 11, 2021 through June 18, 2021, LSS investigators, on six (6) separate visits to Western, made multiple wholesale purchases of Grabba Whole-leaf and Grabba Cigar Wrap products.  (UMF No. 8.)  Specifically:

- LSS investigator Chris Ghandour purchased Grabba Leaf Products at Western on February 11, 2021; February 23, 2021; and, March 19, 2021.  (UMF No. 8; *see* Declaration of Chris Ghandour (the "Ghandour Decl."), ¶¶ 5-9, and Exs. 18-20) [**DE 9**].)

- LSS investigator Mohammad Najar purchased Grabba Leaf Products at Western on April 30, 2021; May 5, 2021 and June 18, 2021. (UMF No 8; *see* Declaration of Mohammad Najar (the "Najar 2021 Decl."), ¶¶ 8-10, and Exs. 21-23) [**DE 8**].)

All of these multiple purchases of Grabba Whole-leaf and Grabba Cigar Wrap products from Western were forwarded by LSS to Mr. Robinson for inspection.  (UMF No. 9; *see* Hood 2021 Decl., ¶ 8 [**DE 10**], and Robinson 2021 Decl., ¶ 12 [**DE 12**].)  Mr. Robinson determined ─ as he had detailed in regard to the products received from Will's Jr. Market ─ that each and every one of the Grabba Leaf purchases from Western over this 4-month period in 2021 was counterfeit.  (UMF No. 10; *see, e.g.,* Robinson 2021 Decl., ¶¶ 9(a)-(j), 13.) Specifically, Mr. Robinson's determination that the GRABBA LEAF products sold be Western were counterfeit was based on the following,

- Products:  Concerning the products themselves, Mr. Robinson declared, "The genuine GRABBA LEAF product is fresh and supple, much lighter and arid, and has a traditional cigar leaf smell. The counterfeit

GRABBA LEAF products are of a harder more condensed leaf, are thinner in appearance ─ allowing for the ability to be more tightly packed ─ and have a rancid product smell (rather than a fresh smell)…" (*See* Robinson 2021 Decl., at ¶¶ 9(b) and 13); and,

▪ <u>Product Packaging</u>:  Concerning the product packaging, Mr. Robinson declared that there are at least six (6) differences between the product packaging for the authentic GRABBA LEAF products and the counterfeit GRABBA LEAF product packaging, as follows:

[1] <u>Lower Film Stock</u>:  "The product packaging for the *counterfeit* GRABBA LEAF is of a lower film stock, and appears shiny, where the packaging for the authentic GRABBA LEAF product is of a higher film stock and does not appear 'shiny….'" [2] <u>Packaging Seal</u>:  "The product packaging seal for the *genuine* GRABBA LEAF is thinner and easier to open…." [3] <u>Packaging Logo</u>:  "The product packaging for the *counterfeit* GRABBA LEAF products contains an improperly sized logo…."

[4] <u>Product Warning Labels</u>:  "The genuine GRABBA LEAF products contain a product warning label that states, 'This product contains nicotine.' This warning text is enclosed within a heavy black border frame, and the company address is in a smaller font at the bottom of the image. The counterfeit products contain the same phrase, but with a thin border frame, with a larger company address at the bottom of the image."

[5] <u>Barcodes</u>:  "The barcode on the genuine GRABBA LEAF products and the counterfeit GRABBA LEAF products is in a different location, and further is not a barcode sequence sued on the authentic GRABBA LEAF products."  And, last, [6] <u>Product Origin</u>:  "The only designation of location of product source that Grabba Leaf has ever instructed or authorized … is 'Produced in Dominican Republic.' … In comparison, the counterfeit GRABBA LEAF products state, 'Packed in D.R.,' [or 'Packed in Dominican

Republic'] and is written in a lighter font." (*See* Robinson 2021 Decl., at ¶¶ 9(a), (c)-(j), and 13; *and see*, Robinson 2022 Decl., ¶¶ 14-17).

**C.**     **Plaintiffs' Counterfeiting Complaint and Defendants' Continuing Sale of Counterfeit Grabba Leaf**

In <u>November 2021</u>, Grabba Leaf' original complaint was served on the Defendants.  **[DE 1]**  Defendants then filed an Answer and Counterclaim alleging that they had completely ceased selling *any* Grabba Leaf products, counterfeit or otherwise.  (<u>UMF No. 11</u>; *see*, *also* Counterclaim, ¶ 7, 10 **[DE 30]**.)  This allegation, made in a formal pleading presented by Defendants to this Court, is false.

In <u>January 2022</u>, suspecting that Defendants had not in fact ceased selling counterfeit Grabba Leaf products, but only shifted that unlawful activity to other retail tobacco sales shops owned or controlled by Defendants, Grabba Leaf tasked LSS Investigations to make purchases of Grabba Leaf products from these other locations.  (<u>UMF No. 12</u>; *see*, *also*, *e.g.*, the Declaration of John M. Hood, III (the "Hood 2022 Decl."), ¶¶ 5-9 **[DE 52-3]**)

The investigators made such purchases of Grabba Leaf products from <u>January 15, 2022</u> through <u>March 2, 2022</u> from an operation owned and controlled by defendants Ahmed and Cervantes known as the "Smoke Shop," located at 5800 West Boulevard in Los Angeles.  (<u>UMF No. 13</u>; *see* the Hood 2022 Decl.") **[DE 52-3]**, ¶¶ 5-9; *see*, *also*, the Declaration of Mohammed Najar (the "Najar 2022 Decl.") **[DE 60-2]**, ¶¶ 3-5; and, *see*, the Declaration of Gabriel Sedillo (the "Sedillo Decl.") **[DE 60-3]**, ¶¶ 3-6.)

All of these purchases were delivered to C. Dennis Loomis, counsel for Grabba Leaf, for inspection.  Relying on one consistent indicia of counterfeit status identified in the Robinson 2021 Decl., specifically, designation of the country of origin of the product stated as "Packed in D.R." or "Packed in Dominican Republic," as distinguished from the uniform designation on all genuine Grabba Leaf products "Produced in Dominican Republic," Mr. Loomis determined that

several of the Grabba Whole-leaf and Grabba Cigar Wrap products purchased at the Smoke Shop were counterfeit.  (<u>UMF No. 14</u>; *see* Declaration of C. Dennis Loomis (the "Loomis 2022 Decl.") [**DE 52-2**], ¶¶ 5, 6, and Exs. 19 and 20.)

Mr. Robinson reviewed the conclusion of counterfeit status expressed in the Loomis 2022 Decl. (<u>UMF No. 15</u>; Robinson 2022 Decl., ¶¶ 11-13.)  He unequivocally affirms that, based on his own examination of the photos of the Whole-leaf and the Cigar Wrap foil packs purchased by the investigators in <u>January</u>, <u>February</u> and <u>March 2022</u> at the Smoke Shop, (*see*, *e.g.*, the Loomis 2022 Decl. [**DE 52-2**], Exs. 19 and 20), the products identified by Mr. Loomis as counterfeit, are in fact counterfeit.  (<u>UMF No. 15</u>; *see* Robinson 2022 Decl., ¶¶ 8, 11-13.)

The Robinson 2022 Declaration also establishes that:

▪   <u>Source of Supply ─ Product Packaging Materials</u>:  Grabba Leaf obtains all of its Whole-leaf and Cigar Wrap foil packaging materials from a single source printer headquartered in Miami, Florida, which produces those packages in strict conformity to Grabba Leaf's designated artwork, literal content and legal notices.  (<u>UMF No. 16</u>; *see* Robinson 2022 Decl., ¶¶ 5);

▪   <u>Product Assembly</u>:  The Grabba Leaf tobacco products then are packaged into the foil packs in the Dominican Republic.  (<u>UMF No. 17</u>; *see* Robinson 2022 Decl., ¶¶ 3.);

▪   <u>Product Inspection</u>:  Grabba Leaf personnel then inspect the packaged products received from the Dominican Republic before shipping the products to authorized resellers in the U.S.  (<u>UMF No. 18</u>; *see* Robinson 2022 Decl., ¶ 4.)

▪   <u>Product Packaging Materials</u>:  Mr. Robinson further testifies that: (1) Grabba Leaf has never used either the designation "Packed in D.R." or "Packed in Dominican Republic" on genuine Grabba Leaf foil packs; (2) genuine Grabba Leaf products always and only say "Produced in Dominican Republic" on the foil packs; (3) in the history of Grabba Leaf,

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

1   Mr. Robinson never discovered any Grabba Leaf products coming from the
2   Dominican Republic with either of the "Packed in" designations; and,
3   therefore, (4) Mr. Robinson can and does state without exception or
4   qualification that every one of the Grabba Leaf products identified as
5   counterfeit in his Robinson 2021 Declaration and in the Loomis 2022
6   Declaration are in fact counterfeit, and that none of those products emanated
7   from or were placed in the stream of commerce by Grabba Leaf.
8   (UMF No. 19; Robinson 2022 Decl., ¶¶ 15-17.)

9        Regarding the sale of counterfeit Grabba Leaf products at the Smoke Shop,
10  the Court has determined that defendants Ahmed and Cervantes, together with their
11  agent Maria Sotelo, have responsibility for and control over such sales, and that the
12  risk of further counterfeit sales exposes Grabba Leaf to irreparable harm to its
13  reputation and good will in the Grabba Leaf brand. *See* Preliminary Injunction
14  Order. [**DE 76**]

15       This motion is for summary adjudication of a singular, straightforward issue:
16  liability. There is no genuine dispute of fact that Defendants have persistently,
17  flagrantly and repeatedly engaged in the sale of counterfeit, inferior quality
18  *counterfeit* Grabba Leaf products. This activity indisputably violates
19  15 U.S.C. §1114, as well as 15 U.S.C. §1125(a). The display of exact copies of
20  Grabba Leaf's copyrighted artwork on the counterfeit Grabba Whole-leaf packages
21  also violates 17 U.S.C. §101 *et seq.* With liability for these violations established as
22  a matter of law, summary judgment assessing that liability against Defendants
23  should be entered.

24  **III.   ARGUMENT**

25       **A.   The Summary Judgment Standard Supports Granting**
26            **Plaintiffs' MSJ.**

27       Federal Rule of Civil Procedure 56(a) provides that summary judgment may
28  be granted only if, "there is no genuine issue as to any material fact and the movant

1  is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  If this showing is

2  made, the court may grant summary judgment on all or part of the claim.  *See*, *id.*

3  A fact is "material" only if a dispute about it may affect the outcome of the case

4  under applicable substantive law.  *Anderson v. Liberty Lobby, Inc.*,

5  477 U.S. 242, 248 (1986); *see*, *also*, *Bangkok Broad. & T.V. Co. v. IPTV Corp.*,

6  742 F. Supp. 2d 1101, 1009 (C.D. Cal. 2010).

7      A "genuine" dispute about a material fact arises if the evidence is such that a

8  reasonable jury could return a verdict for the non-movant.  *Anderson*, *supra*,

9  477 U.S. at 248; *see*, *also*, *Bangkok Broad. & T.V. Co.*, 742 F. Supp. 2d at 1009.  A

10  summary judgment movant bears the initial burden of showing there is no genuine

11  issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986); and,

12  *see*, *Davis v. United States*, 854 F.3d 594, 598 (9th Cir. 2017).  This burden is

13  satisfied by showing "an absence of evidence to support the non-moving party's

14  case."  *Celotex Corp.*, *supra*, 477 U.S. at 323–24; *Davis*, *supra*, 854 F.3d at 598.

15      Once the moving party has met its burden, the non-moving party cannot

16  merely rely on its pleadings or on conclusory statements and must "do more than

17  simply show that there is some metaphysical doubt as to the material facts."

18  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); and,

19  *see*, *Celotex Corp.*, 477 U.S. at 324.  Rather, the non-moving party must go beyond

20  the pleadings and present specific admissible evidence and identify specific facts

21  that show a genuine issue.  *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; and, *see*,

22  *Celotex Corp.*, 477 U.S. at 324.

23      A genuine issue of material fact must be more than a scintilla of evidence, or

24  evidence that is merely colorable or not significantly probative.  *Addisu v. Fred*

25  *Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000).  Conclusory or speculative testimony

26  in declarations is insufficient to raise a genuine issue of fact and defeat summary

27  judgment.  *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

28  A non-moving party cannot merely attack or discredit the moving party's evidence

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES
BN 71276157v7

1   to create a triable issue.  *Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.*,

2   701 F.2d 95, 97 (9th Cir. 1983).

3       As discussed below, there is no genuine issue of material fact concerning

4   Defendants' culpable, repeated sale of *counterfeit* Grabba Leaf products, which

5   entitles Plaintiffs to judgment as a matter of law for both trademark counterfeiting,

6   trademark infringement and copyright infringement.

7   **B.**   **There Is No Genuine Dispute of Material Fact Concerning**

8            **Defendants' Culpable, Repeated Sale of Counterfeit Grabba Leaf**

9            **Products, Entitling Plaintiffs to Judgment As A Matter Of Law**

10           **For Both Counterfeiting And For Trademark Infringement**

11      The intent of the Lanham Act is "to prevent fraud and deception … in

12   commerce by the use of reproductions, copies, counterfeits, or colorable imitations

13   of registered marks."  15 U.S.C. §1127.  Accordingly, the Lanham Act expressly

14   proscribes "use in commerce of any reproduction, counterfeit, copy, or colorable

15   imitation of a registered mark in connection with the sale, offering for sale,

16   distribution, or advertising of any goods … on which such use is likely to cause

17   confusion, or to cause mistake."  15 U.S.C. §1114(a).  To establish trademark

18   infringement and a counterfeiting claim, Plaintiff must establish that (1) "it has a

19   valid, protectable mark" and (2) that Defendants' "use of the mark is likely to cause

20   consumer confusion."  *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 929

21   (9th Cir. 2014) (affirming district court's entry of summary judgment on plaintiff-

22   appellee's motion for summary judgment) (*quoting Applied Info. Scis. Corp. v.*

23   *eBay, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007)).

24      *First*, the Grabba TM Registrations and associated trademarks are valid,

25   protectable and in good standing.  A trademark registration on the principle register

26   constitutes *prima facie* evidence of the validity of the mark.  *See* 15 U.S.C. § 1115.

27   The Grabba TM Registrations are on the principal register and, as such, are

28   presumed valid.  (UMF No. 1; *see* Speiss Decl., **Exs. 1-3**.)  This fact cannot be the

subject of a genuine dispute.  As such, the first requirement for trademark infringement is met.

*Second*, for the second requirement, likelihood of confusion, courts presume a likelihood of confusion in cases involving spurious marks and counterfeit goods. *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1056 (9th Cir. 2007) ("In light of the virtual identity of marks, if they were used with identical products or services likelihood of confusion would follow as a matter of course."); *see*, *Lindy Pen Co. v. Bic Pen Corp.*, 796 F.2d 254, 256-57 (9th Cir. 1986) (reversing district court's finding of no likelihood of confusion given "the overwhelming likelihood of confusion resulting from the direct competition of [the same product] with virtually identical marks"); and, *see*, *Phillip Morris USA, Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1073 (C.D. Cal. 2004) (counterfeit marks by their nature are inherently confusing).

Section 45 of the Lanham Act defines a "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. §1127.  "[T]he inquiry into whether a mark is 'counterfeit' must be conducted 'from the standpoint of an average purchaser.'"  *See U.S. v. 10,510 Packaged Computer Towers, More or Less*, 152 F. Supp. 2d 1189, 1193 (N.D. Cal. 2001) (*citing Montres Rolex, S.A. v. Snyder*, 718 F.2d 524, 530-32 (2nd Cir. 1983)).  Counterfeiting is considered the "hard core" or "first degree" of trademark infringement since the counterfeiter attempts to "trick the consumer into believing he or she is getting the genuine article, rather than a 'colorable imitation.'"  *See* J. MCCARTHY, *McCarthy on Trademarks and Unfair Competition*, § 25:10 (5th ed. 2022).

Here, to the average consumer, the packaging of the *counterfeit* Grabba Leaf products that were purchased from Defendants at Western and at the Smoke Shop is substantially indistinguishable from the genuine Grabba Leaf products.  At the same time, the counterfeits consistently display minor discrepancies that a

consumer would overlook but that Mr. Robinson has positively identified as proof of counterfeit status — based upon his examination of the products themselves (*see* Robinson 2021 Decl. [**DE 12**], at ¶ 9(b) and Ex. 7 thereto), as well as the product packaging for the products (*see id*. at ¶ 9(a), (c)-(j) and Exs. 5, 8-14).  (*See*, *also*, UMF Nos. 9-10, 14-15, and 19; *see*, *also*; Robinson 2022 Decl., ¶ 8; and, *see*, Loomis 2022 Decl., ¶ 6, and Exs. 19, 20 [**DE 52-2**].)

Further, it is significant that Mr. Robinson's inspection of the *counterfeit* Grabba Leaf products revealed that the tobacco contained in the counterfeit packaging, based on its texture and aroma, was markedly inferior to genuine Grabba Leaf tobacco (UMF No. 9-10; *see* Robinson 2021 Decl., ¶ 9(b) and Ex. 7; and, *see*, Robinson 2022 Decl., ¶ 18.).

The foregoing facts are not subject to any genuine factual dispute. Defendants have, on multiple occasions, first at Western and then later, when Western's counterfeit sales were discovered and challenged in this lawsuit, at the Smoke Shop, sold Grabba Leaf Whole-leaf and Cigar Wrap products that have conclusively been identified by Grabba Leaf owner Mr. Robinson as counterfeit.

Focusing on just one of the many incriminating discrepancies identified by Mr. Robinson, every one of the purchases from Defendants that are claimed to be counterfeit is in a foil pack that says "Packed in D.R." or "Packed in Dominican Republic," in the place that all genuine Grabba Leaf products invariably state "Produced in Dominican Republic."  Grabba Leaf has never sold, authorized for sale or otherwise put into the stream of commerce, any Grabba Leaf Whole-leaf or Cigar Wrap products that say "Packed in D.R." or "Packed in Dominican Republic."  (UMF Nos. 14 and 19; *see*, *also*, Robinson 2022 Decl., ¶¶ 15-17.)

Defendants' protracted and extensive peddling of undeniably counterfeit, inferior quality Grabba Leaf products is proven beyond any factual dispute, and is the type of purposeful, injurious fraud and consumer deception that the Lanham Act exists to restrain.  Because counterfeit marks by their nature are inherently

confusing, *see, e.g.*, *Phillip Morris USA, Inc. v. Shalabi, supra,* 352 F.Supp.2d at 1073, the record establishes as a matter of law that Defendants are liable to Grabba Leaf for counterfeiting, and as an "included offense," for trademark infringement.

In addition, to avoid any doubt on the issue of likely confusion, Plaintiffs hereby will demonstrate that Defendants' sale of counterfeit Grabba Leaf products creates a likelihood of consumer confusion in trademark under the conventional infringement analysis.

To determine the likelihood of confusion, courts apply the following factors: (1) strength of plaintiff's mark; (2) relatedness of the goods; (3) similarity of marks; (4) actual confusion; (5) marketing channels used; (6) degree of purchaser care; (7) defendant's intent in selecting the mark; and, (8) likelihood of product line expansion. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979) (the "*Sleekcraft*" factors). The *Sleekcraft* factors are helpful guideposts and serve as a proxy for consumer confusion. *Network Auto., Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1145 (9th Cir. 2011); *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1030 (9th Cir. 2010). The Court has already made a determination that the *Sleekcraft* factors weigh in Grabba Leaf's favor, and therefore that Grabba Leaf has a likelihood to prevail on the merits. (*See* Preliminary Injunction Order [**DE 76**], pp. 3-4.). For the sake of thoroughness, the *Sleekcraft* factors are discussed below:

**1.** **Strength of the Mark**: The stronger mark, the more protection it receives from the trademark laws. *Brookfield*, *supra*, 174 F.3d at 1058. Grabba Leaf has held federal trademark registrations for its "Grabba Leaf" brand for more than ten years. (UMF No. 1; Speiss Decl., **Exs. 1-3**.) Moreover, Defendants have not disputed the commercial strength of the Grabba Leaf marks. On the contrary, Defendants affirm that they sold Grabba Leaf successfully for years. Indeed, they assert in their Counterclaim that their "*cash and carry*" business has been damaged by their "forced

decision" to stop selling Grabba Leaf because customers who cannot purchase Grabba Leaf from Western will simply not patronize Western at all. (UMF Nos. 5-6, 11; *see, also*, Defendants' Counterclaims [**DE 30**], ¶¶ 3, 7, 10.)  This factor weighs in Grabba Leaf's favor.

2. **Proximity of the Goods**:  If marks are "used with identical products or services likelihood of confusion would follow as a matter of course."  *See Brookfield*, *supra*, 174 F.3d at 1055; and, *see*, *Stone Creek, Inc. v. Omnia Italian Design, Inc*., 875 F.3d 426, 432 (9th Cir. 2017) (indicating "identical marks paired with identical goods can be case-dispositive" in a case involving an "exact replica" of a competitor's logo on the same sofa) (abrogated on other grounds by *Monster Energy Co. v. Integrated Supply Network, LLC*, 821 Fed.Appx. 730, 2020 U.S. App. LEXIS 22874 (9th Cir. 2020)).  Here, Defendants are using packaging with the Grabba Marks to sell tobacco products that are palmed off as genuine Grabba Leaf Products.  (UMF Nos. 9-10, 14-15, and 19; *see* Robinson 2022 Decl., at ¶¶ 3, 6-17; *see also,* Robinson 2021 Decl. [**DE 12**], at ¶¶ 4, 5, 8, 9, and Exs. 5, 8-15.)  This factor thus weighs in Grabba Leaf's favor.

3. **Similarity of the Marks**:  The "more similar the marks in terms of appearance, sound, and meaning, the greater the likelihood of confusion."  *Brookfield*, 174 F.3d at 1054.  Here, it is undisputed that Defendants are using packaging with Grabba Leaf's trademarks and virtually identical trade dress of the genuine Grabba Leaf Products to sell counterfeit products.  (UMF Nos. 9-10, 14-15, and 19; *see* Robinson 2022 Decl., at ¶¶ 6, 7, 11-17; *see also* Robinson 2021 Decl. [**DE 12**], ¶ 9, and Exs. 5, 8-15; and, *see*, Loomis 2022 Decl. [**DE 52-2**], at ¶ 6, and Exs. 19, 20.)  In particular, the counterfeit Grabba Leaf products' packaging features nearly identical reproductions of Grabba Leaf's trademarks, particularly the graphical design covered by the '093 Registration shown on the first page of Ex. 5 to the

Robinson 2021 Declaration, and the graphical design mark covered by the '203 Registration shown on the third page of Ex. 5 to the Robinson 2021 Declaration.  (UMF Nos. 1, 10, and 14; *see* Robinson 2021 Decl. [**DE 12**], at ¶ 9(a), and Ex. 5; *see also* Loomis 2022 Decl. [**DE 52-2**], at ¶ 6, and Exs. 19, 20.)  The evidence shows that the Grabba Leaf products sold by Defendants that bear these discrepancies were never sold by, did not originate or emanate from, nor were placed into the stream of commerce by, Grabba Leaf.  (UMF No. 10, 14-15, 19 *see* Robinson 2022 Decl., at ¶¶ 13, 17).  This means there is no genuine dispute of fact that Grabba Leaf was not the source of the counterfeit Grabba Leaf products.  This factor also weighs in Grabba Leaf's favor.

    **4.**   **Evidence of Actual Confusion**:  Consumer confusion is inevitable because of the virtually exact imitation of the Grabba Leaf packaging.  Even a retail market owner purchased Grabba Leaf products from Western for resale at her market, believing it was genuine, only to have customers complain that those products were poor quality, which led to her delivery of those products to Grabba Leaf, which revealed that what she thought had been genuine was in fact counterfeit.  (*See* Robinson 2021 Decl. [**DE 12**], ¶¶ 8; Robinson 2022 Decl., ¶ 8.)  Further, Grabba Leaf need not show proof of actual confusion as the other *Sleekcraft* factors weigh in its favor.  *See*, *Adobe Sys. v. Dafang United States*, LLC, No. 2:18-cv-08504-VAP-AGRx 2019 U.S. Dist. LEXIS 226717, at * 10 (C.D. Cal. 2019).  Nonetheless, this factor weighs in Grabba Leaf's favor given the similarity of the counterfeit Grabba Leaf products.

    **5.**   **Marketing Channels Used**:  "Convergent marketing channels increase the likelihood of confusion."  *See, Sleekcraft*, *supra*, 599 F.2d at 353.  There is no dispute that both the genuine and counterfeit Grabba Leaf products are sold in stores, and in particular, tobacco product stores.

(UMF Nos. 5, 10-11, 13; *see* Robinson 2022 Decl., at ¶ 8; *see also* Robinson 2021 Decl. [**DE 12**], at ¶¶ 6-9.)  This factor also weighs in Grabba Leaf's favor.

**6.      Degree of Care**:  Consumers dealing with less expensive products "are likely to exercise less care, thus making confusion more likely."  *See Brookfield*, *supra*, 174 F.2d at 1060.  It is undisputed that Grabba Leaf products are relatively inexpensive.  And it is highly unlikely that an average consumer would detect the relatively minor packaging discrepancies that conclusively reveal counterfeit status to Mr. Robinson. This factor therefore favors Grabba Leaf.

**7.      Intent**:  This factor seeks to determine whether the junior user adopted its mark to capitalize on the senior user's reputation and goodwill. *See*, *Sleekcraft*, *supra*, 599 F.2d at 354.  For purposes of this MSJ, Grabba Leaf seeks only an order that Defendants sold counterfeit Grabba Leaf products, reserving the issue of Defendants' intent for adjudication in later proceedings addressing the appropriate remedies for these violations.  For purposes of this MSJ, therefore, the "intent" factor is neutral.

On the whole, the *Sleekcraft* factors strongly weigh in favor of finding a likelihood of consumer confusion from Defendants' use of the counterfeit packaging that feature nearly identical replications of Grabba Leaf's trademarks. Moreover, there are no genuine disputes of material fact on any of the *Sleekcraft* factors that require further inquiry or that inhibit or contradict entry of summary adjudication of the issue that, as a matter of law, Defendants have sold counterfeits that infringe Grabba Leaf's trademarks and therefore are liable to Grabba Leaf under 15 U.S.C. §§ 1114 and 1125(a).

/ / /

/ / /

**C.**    **There is No Genuine Dispute of Material Fact that the Packaging of the Counterfeit Grabba Leaf Unlawfully Copies Plaintiffs' Copyrighted Package Artwork, Supporting Judgment As A Matter Of Law For Copyright Infringement.**

"To prove copyright infringement, a plaintiff must demonstrate (1) ownership of the allegedly infringed work and (2) copying of the protected elements of the work by the defendant." *Pasillas v. McDonald's Corp.*, 927 F.2d 440, 442 (9th Cir. 1991). It is appropriate to "grant summary judgment [on a copyright infringement claim] if, considering the evidence and drawing all inferences from it in the light most favorable to the nonmoving party, no reasonable jury could find that the works are [not] substantially similar in idea and expression." *Id.*

Here, Grabba Leaf owns copyright in, and has registered with the Copyright Office, the distinctive logo design artwork that it features on its genuine Grabba Whole-leaf products. That artwork is shown in the official Copyright Office Deposit Copy for Copyright Registration No. VA2-152-331. (UMF No. 4; *see* **Exs. 4** and **5** attached to the Speiss Decl.[2])

Thus, the only remaining question for this Court is whether the graphical design appearing on Defendants' counterfeit Grabba Whole-leaf foil packs is substantially similar to the Copyrighted Work. The documentary evidence in the record, particularly including the photographs of the counterfeit Grabba Whole-leaf products purchased by Grabba Leaf's investigators from Western, compared side-by side with the genuine Grabba Whole-leaf packs, show beyond doubt that these counterfeit packages *exactly* copy the Copyrighted Work. (UMF Nos. 2-4; *see* Robinson 2021 Decl., ¶ 9(a), (c) and (f), and the first page of Exs. 5, 8 and 11.)

---

[2]    *See* authorities cited at n.1 above supporting taking judicial notice of this copyright registration.

In *City of Carlsbad v. Shah*, the Court determined after a bench trial that the defendant infringed the City's logo on his business cards when the logos were "identical in all respects except for the replacement of the word "Carlsbad" with the word "Marbrisa."  *City of Carlsbad v. Shah*, 850 F. Supp. 2d 1087, 1100–01 (S.D. Cal. 2012).  Further, Defendant copied the "the most creative portions of the City's copyright registered Logo are the wave pattern and the arched design of the words.…  Both those creative elements (in addition to the type font used) [were] identical in the City's copyright registered Logo and in [the defendant's logo]."  *Id*.

Similarly here, Defendants copied Grabba's design of the words — the bold, graphical bubble letters — as well as the font type, and the stylized "tobacco leaf" design.  However, the infringement here is more egregious than in *City of Carlsbad* because Defendants utilized the same "Grabba Leaf" name.  Thus, no reasonable jury could conclude that the works are not similar in idea and expression.  *See Kyjen Co. v. Vo-Toys, Inc.,* 223 F. Supp. 2d 1065, 1070 (C.D. Cal. 2002) (granting the plaintiff's motion for summary judgment because plaintiff's copyrights in toys were infringed by competitor's nearly identical products).

Therefore, Grabba Leaf is entitled to summary adjudication on its copyright claim because it owns the infringed work and Defendants copied the protected elements of the work.

### D.    Summary Judgment For Counterfeiting Supports Making the Preliminary Injunction *Permanent.*

In entering its Preliminary Injunction [**DE 76**], this Court found that defendants Ahmed, Cervantes, and their agent Maria Sotelo, "participated in the Smoke Shop's infringing activities" involving sale of counterfeit Grabba Leaf products from that location.  (*Id*. at p. 6.)  The Court further found that Grabba Leaf is "entitled to a presumption of irreparable harm with respect to sales through the Smoke Shop" (*Id.*), and that "the balance of equities favors issuing a preliminary injunction." (*Id.* at p. 7.)  Based on these findings, the Court ordered as follows:

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

1   "The Court hereby **ENJOINS** Defendants (including their officers,

2   agents, servants, employees, and attorneys) and Maria Sotelo from

3   selling any counterfeit Grabba Leaf product, including any product

4   that bears counterfeiting Grabba Marks, through the Smoke Shop at

5   5800 West Boulevard in Los Angeles…." (*Id.*; emphasis in original.)

6   If the Court grants summary judgment against Defendants for sale of

7   counterfeit Grabba Leaf products, all the reasons set forth in the Injunction Order in

8   support of that interlocutory order, apply even more clearly and with substantially

9   greater force in support of Grabba Leaf's motion that the same prohibitory

10  injunctive relief now be made permanent.

11  **IV.   CONCLUSION**

12  The evidence is clear and without any material dispute:  Defendants have

13  engaged in repeated sales of indisputably counterfeit Grabba Leaf products, on

14  multiple occasions and in different locations, for over a full year.  These counterfeit

15  products violate 15 U.S.C. §§1114 and 1125(a), and also infringe Grabba Leaf's

16  copyrighted logo design artwork, violating 17 U.S.C. §101 *et seq.*  Summary

17  judgment finding each Defendant liable to Grabba Leaf for these violations should

18  be entered without delay.

19  BUCHALTER, A PROFESSIONAL CORPORATION

20

21

22  Dated: July 25, 2022   _____

23  THOMAS J. SPEISS, III
    Attorneys for Plaintiffs,

24  MICHAEL ANDREW ROBINSON and
    GRABBA LEAF, LLC

25

26

27

28