1  Victor Sherman (State Bar No. 38483)
2  Diana Spielberger (State Bar No. 109967)
   Jay Statman (State Bar No. 94470)
   LAW OFFICE OF VICTOR SHERMAN
3  Telephone: (310) 392-9029
   Robert G. Klein, Esq., State Bar No. 128550
4  LAW OFFICE OF ROBERT G. KLEIN
   8383 Wilshire Blvd., Suite 935
5  Beverly Hills, California  90211
   Telephone:  (833) 997-5529
6  email: robert@kleinlitigation.com
7  Attorneys for Defendants Best Price Distributors et. al.

8              **UNITED STATES DISTRICT COURT**

9         **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

10                    **WESTERN DIVISION**

11 | MICHAEL ANDREW ROBINSON, an | ) | CASE NO. **21-cv-6689-RGK-(JCx)** |

individual; GRABBA LEAF, LLC, a
12 Florida limited liability company,       )  Hon. Richard Klausner/Courtroom 850

13                                          )  Action Filed:   August 18, 2021
                          Plaintiffs,      )
14                                         )  **OPPOSITION TO PLAINTIFFS'**
                                           )  **MOTION IN LIMINE 1: PRECLUDE**
15         vs.                             )  **TESTIMONY AND EVIDENCE**
                                           )  **CONCERNING TRADEMARK**
16 BEST PRICE DISTRIBUTORS, LLC,           )  **TRIAL AND APPEAL BOARD**
   a California limited liability company   )  **CANCELLATION NO. 92060394**
17 doing business as WESTERN               )
   WHOLESALE and as QUICK                  )  Date:            November 8, 2022
18 TOBACCO WHOLESALE; KHALED               )  Time:            9:00 a.m.
   M. AHMED, an individual; SANDRA         )  Courtroom:       850
19 S. CERVANTES aka SANDRA                 )
   AHMED, an individual, and               )  Discovery Cutoff: August 11, 2022
20 DOES1-10;                               )  Motion Cutoff:    August 25, 2022
                                           )  Trial Date:      November 8, 2022
21                       Defendants.       )
                                           )
22 _____ )

23      Plaintiffs Grabba Leaf, LLC and Michael Andrew Robinson (collectively

24 "Robinson") seek to exclude evidence of the Trademark Trial and Appeal Boards'

25 ("TTAB") September 2018 decision finding Robinson's trademark "Grabba Leaf" was

26 descriptive and subject to cancellation. Robinson argues it appealed the TTAB's

27 decision to the District Court and the decision was subsequently vacated and should

28

                                    1

LAW OFFICE OF ROBERT G. KLEIN
8383 WILSHIRE BLVD., SUITE 510
BEVERLY HILLS, CALIFORNIA 90211
TELEPHONE (323) 653-3900

1  not be introduced at trial.

2  The final judgment was pursuant to a stipulation between Robinson and Hot

3  Grabba to "co-exist" so neither Robinson nor Hot Grabba would challenge each other's

4  trademark registration.  It was not based upon a hearing on the merits and is not

5  binding on any other party that was not part of that appeal or who seeks to challenge

6  that Robinson's trademark "Grabba Leaf" as descriptive without prove of secondary

7  meaning.

8  Robinson's motion should be denied on the grounds that:

9  (1) Robinson has the burden to prove its trademark is valid.  Defendants assert

10  Robinson's trademark is not valid because it is merely descriptive without secondary

11  meaning. Defendants have the right to challenge whether Robinson's trademark is

12  defective or subject to a defense. [15 U.S.C. § 1115(b); Manual of Model Civil Jury

13  Instructions 15.8]

14  (2) The TTAB decision has collateral estoppel effect.  It is the only case decided

15  on the merits where the issue of whether Robinson's mark was merely descriptive and

16  subject to cancellation.  The Stipulated judgment was not based upon a hearing on the

17  merits and was limited to the dispute between Robinson and Hot Grabba.

18  (3) The TTAB decision will be used to impeach Robinson.  The credibility of

19  a witness is also a relevant issue at trial.  At his deposition, Robinson argued he came

20  up with the name "Grabba" when he was 15 years old and went to flea markets to buy

21  tobacco leaves. He claims "Grabba" meant "grab a leaf".  The TTAB decision shows

22  Robinson was provided the definition of "Grabba" from the Urban Dictionary showing

23  "Grabba" was another name for "tobacco" in the Carribean culture.  The TTAB

24  provides all the evidence that Robinson's trademark "Grabba" is in fact descriptive and

25  not a valid trademark.

26  (4) After the TTAB decision declared Robinson's trademark "Grabba" was

27  descriptive and subject to cancellation, Robinson filed this lawsuit against the

28

2

LAW OFFICE OF ROBERT G. KLEIN
8383 WILSHIRE BLVD., SUITE 510
BEVERLY HILLS, CALIFORNIA 90211
TELEPHONE (323) 653-3900

1   defendants and also filed a lawsuit against Kais Chaabani of Worldwide Tobacco Leaf,

2   Inc.  The TTAB decision will need to be shown to the jury to show his conduct of

3   filing false claims. This decision will be admissible under Fed. Rule Evid. Rule

4   404(b)(2).

5       **A**     **The Trademark Trial and Appeal Board Made Specific Findings that**

6               **Plaintiffs' Trademark "Grabba Leaf" is Descriptive and Subject to**

7               **Cancellation**

8       On September 20, 2018 the Trademark Trial and Appeal Board rendered its final

9   decision after a full trial on the merits finding that Robinson's trademark "Grabba" was

10  merely descriptive and subject to cancellation.  A copy of that decision is attached as

11  Exhibit 1.

12      The salient portions of that decision are the following:

13      At page 3-4 of the decision states: "Respondent further filed a counterclaim to

14  cancel both of Petitioner's pleaded registrations on the ground that they are merely

15  descriptive without having acquired distinctiveness in that "[t]he term 'grabba' is

16  commonly used in the tobacco industry as a synonym for fronto leaf tobacco and fanta

17  leaf tobacco" and that these terms are "used interchangeably as the common name of

18  and/or to describe products containing the same."  Respondent further alleges that

19  "[w]hen the terms 'grabba' and 'leaf' are combined into 'grabba leaf,' the term merely

20  describes the main ingredient used in Petitioner's products, namely a grabba leaf."

21      Page 13 states: "The party challenging a registration's validity bears the burden

22  of proving that the mark is merely descriptive by a preponderance of the evidence.

23  DuoProSS Meditech Corp. v. Inviro Med. Devices, Ltd., 695 F.3d 1247, 103 USPQ2d

24  1753, 1756 (Fed. Cir. 2012). A term is deemed to be merely descriptive of goods or

25  services, within the meaning of Section 2(e)(1), if it forthwith conveys an immediate

26  idea of an ingredient, quality, characteristic, feature, function, purpose or use of the

27  goods or services. See In re Chamber of Commerce of the U.S., 675 F.3d 1297"

28

LAW OFFICE OF ROBERT G. KLEIN
8383 WILSHIRE BLVD., SUITE 510
BEVERLY HILLS, CALIFORNIA 90211
TELEPHONE (323) 653-3900

Page 15-16 states: "In particular, Respondent points to third-party descriptive references to the terms "grabba" and "grabba leaf" in news articles; song lyrics that refer to "grabba"; a definition from the Urban Dictionary; and statements by Petitioner himself, regarding the widespread use of the terms. Various third-party websites submitted by Defendant show the terms "grabba" and "grabba leaf" used in connection with tobacco products, including cigar wraps. Examples in the record include the following..."

At page 17: "We find these third-party references to be probative evidence that the relevant public perceives the terms "grabba" and "grabba leaf" to, at a minimum, immediately convey information about an ingredient or characteristic of tobacco, or tobacco products, including cigar wraps."

"Respondent further submitted evidence of a definition from the Urban Dictionary for "grabba" as: A Jamaican term used to describe something mixed with marijuana when smoked, so as to keep the sent [sic] down and to get rid of the bad aftertaste. The entry is dated March 5, 2008. A definition from the Urban Dictionary may be probative where appropriately considered in context. See In re Brunetti, 877 F.3d 1330"

Page 20 states: "Overall, considering all of the evidence of record, we find that the term "GRABBA LEAF," when viewed in relation to Petitioner's "cigar wraps," immediately conveys information about them, namely that they may be used as a leaf to wrap grabba tobacco, or that grabba leaf tobacco is an ingredient in the cigar wraps.32 Thus, we find that Respondent has shown by a preponderance of the evidence that Petitioner's standard character mark GRABBA LEAF, considered as a whole, is merely descriptive of cigar wraps.

Page 22 states: "Respondent's counterclaim for cancellation is granted as to both of Petitioner's pleaded registrations on the ground that they are merely descriptive.36

Moreover, we find that since Petitioner has not pleaded or argued that his marks

4

LAW OFFICE OF ROBERT G. KLEIN
8383 WILSHIRE BLVD., SUITE 510
BEVERLY HILLS, CALIFORNIA 90211
TELEPHONE (323) 653-3900

1  have acquired distinctiveness, he cannot establish the existence of prior rights at
2  common law for purposes of his claim of likelihood of confusion, and thus he cannot
3  prevail on his sole ground for cancellation of Respondent's mark under Section 2(d)
4  of the Trademark Act. Giersch v.Scripps Networks Inc.,

5  The Decision on page 23 states: "Respondent's petition for cancellation on its
6  counterclaim is granted as to both Registration Nos. 4487117 and 4461093, on the
7  ground that the marks therein are merely descriptive. The registrations will be
8  cancelled in due course.

9  **B.**   **After the TTAB Decision Robinson Files an Appeal Based upon a**
10  **Stipulation**

11  On April 25, 2022 the United States District court entered a "Stipulated Final
12  Judgment. A copy of that stipulation is attached as Exhibit 2. The salient portions of
13  that stipulation are as follows:

14  Page 1 states: 2. "This case was filed as an appeal from a Trademark Trial and
15  Appeal Board decision. The Court granted Plaintiff relief by default. [DE 2, 25]. The
16  Default Final Judgment was set aside. [DE 35]. The case is currently stayed by Court
17  Order. [DE 37]. The Parties seek entry of a Final Judgment that resolves all matters and
18  permits both Plaintiff's GRABBA LEAF trademarks and Defendant's HOT GRABBA
19  NATURAL TOBACCO LEAF trademark to be registered.

20  3. The Parties have entered into a Co-Existence Agreement, whereby the
21  respective marks are not likely to cause confusion in the marketplace, as Plaintiff's
22  GRABBA LEAF marks and Defendant's HOT GRABBA NATURAL TOBACCO
23  LEAF mark denote separate and distinct commercial impressions".

24  **C.**   **Defendants Are Entitled to Present Evidence Robinson's Trademark**
25  **"Grabba" is Defective and Not A Valid Trademark Despite Being on**
26  **the Principal Register**

27  15 U.S.C. § 1115(b) states when a trademark has been registered, the defendant

28

LAW OFFICE OF ROBERT G. KLEIN
8383 WILSHIRE BLVD., SUITE 510
BEVERLY HILLS, CALIFORNIA 90211
TELEPHONE (323) 653-3900

LAW OFFICE OF ROBERT G. KLEIN
8383 WILSHIRE BLVD., SUITE 510
BEVERLY HILLS, CALIFORNIA 90211
TELEPHONE (323) 653-3900

1  has the burden of proving that its registration is defective or subject to a defense.  The

2  defendant must show such defect or defense by a preponderance of the evidence.  See

3  Sengoku Work Ltd. v. RMC Intern., Ltd., 96 F.3d 1217, 1219-20 (9th Cir. 1996)

4  (noting that registrant is granted presumption of ownership under the Lanham Act and

5  "challenger must overcome this presumption by a preponderance of the evidence");

6  Vuitton et Fils S.A. v. J. Young Enterprises, Inc., 644 F.2d 769, 775-76 (9th Cir. 1981)

7  (noting that presumption of validity of registered mark must be overcome by

8  preponderance of the evidence); Tie Tech, Inc. v. Kinedyne Corp., 296 F.3d 778, 783

9  (9th Cir. 2002) ("Validity…is a threshold issue).

10         On this point, the plaintiff in an infringement action with a registered mark is

11  given the prima facie or presumptive advantage on the issue of validity, thus shifting

12  the burden of production to the defendant to prove otherwise … Or, to put it as we did

13  in Vuitton, the defendant then bears the burden with respect to invalidity.  Once the

14  presumption of validity is overcome, however, the mark's registration is merely

15  evidence 'of registration,' nothing more.  This approach can be characterized as

16  rebutting the prima facie case or 'piercing the presumption.'") (summary judgment

17  case).  See also Social Technologies v. Apple, 4 F.4th 811, 821-22 (9th Cir. 2021)

18  (discussing petition to cancel registration).

19     **D.     The Decision by the Trademark Trial and Appeal Board Has**

20             **Collateral Estoppel Effect**

21         Collateral estoppel prevents the same parties from relitigating issues that have

22  previously been litigated and determined. Under California law, a prior determination

23  will be given collateral estoppel effect when (1) the issue is identical to that decided

24  in a former proceeding; (2) the issue was actually litigated and (3) necessarily decided;

25  (4) the doctrine is asserted against a party to the former action or one who was in

26  privity with such a party; and (5) the former decision is final and was made on the

27  merits. California courts will give preclusive effect to prior stipulated judgments, as

28

1  long as the parties intend such an effect. This stipulated judgment between two
2  different parties and has no effect on the defendants who are challenging the validity
3  of Robinson's trademark.

4  **E.**    **The Decision by the Trademark Trial and Appeal Is Proper**
5         **Impeachment**

6         The decision by the Trademark Trial and Appeal board will be used to impeach
7  Robinson and his witnesses who attempt to offer evidence that Robinson created the
8  name "Grabba".  Robinson testified at his deposition that when he was a teenager in
9  Miami  buying tobacco at flea markets he came up with the phrase "Grabba Leaf" to
10 mean "grab a leaf". That testimony is contradicted by the Urban dictionary that was
11 shown to Robinson in the *Hot Grabba* case and other evidence in the *Hot Grabba* case
12 that confirmed Robinson's mark "Grabba" is not a valid trademark.  The evidence
13 presented during the Trademark Trial and Appeal board hearing will contradict
14 Robinson's trial testimony.

15 **F.**    **The Decision by the Trademark Trial and Appeal Is Proper To Show**
16         **Robinson Filed this Action At a Time He Knew His Trademark Was**
17         **Deemed Invalid**

18         Robinson filed this lawsuit against Defendants Western Wholesale, Khaled
19 Ahmed and Sandra Cervantes and a lawsuit against Kais Chaabani of Worldwide
20 Tobacco Leaf, Inc. making the identical claims of trademark infringement when
21 Robinson knew his trademark was already determined to be descriptive and subject to
22 cancellation by the decision of the Trademark Trial and Appeal Board.

23         One element of proof for Robinson in filing trademark infringement lawsuits is
24 that his trademark is valid. Robinson's acts of filing two lawsuits for infringing his
25 trademark "Grabba" at a time he knew his trademark was already found to be invalid
26 as descriptive and subject to cancellation shows his intent, preparation and a plan to
27 falsely assert claims in order to eliminate or harm his competition.  It also shows his
28

LAW OFFICE OF ROBERT G. KLEIN
8383 WILSHIRE BLVD., SUITE 510
BEVERLY HILLS, CALIFORNIA 90211
TELEPHONE (323) 653-3900

Opposition To Plaintiffs' Motion In Limine 1 Preclude Testimony And Evidence Concerning Trademark Trial
And Appeal Board Cancellation No. 92060394

lack of mistake since he did this twice. The Trademark Trial and Appeal Board decision is admissible under Fed. Rule Evid. Rule 404(b)(2).

Respectfully submitted.

Dated: September 24, 2022

LAW OFFICE OF ROBERT G. KLEIN

By:

Robert G. Klein
Attorneys for Defendants Best Price Distributors et. al.

Opposition To Plaintiffs' Motion In Limine 1 Preclude Testimony And Evidence Concerning Trademark Trial And Appeal Board Cancellation No. 92060394

LAW OFFICE OF **ROBERT G. KLEIN**
8383 WILSHIRE BLVD., SUITE 510
BEVERLY HILLS, CALIFORNIA 90211
TELEPHONE (323) 653-3900

1

## DECLARATION OF ROBERT G. KLEIN

2    I, Robert G. Klein declare:

3    1.    I have personal knowledge of all the facts hereafter alleged and if called

4    upon to testify could competently do so.

5    2.    I am an attorney duly licensed to practice law before all the courts in the

6    State of California and I am one of the attorneys representing the defendants in this

7    action.

8    3.    Attached as Exhibit 1 is a true and correct copy of the decision in the

9    Trademark Trial and Appeal Board in the matter of Robinson v. Hot Grabba Leaf.

10    4.    Attached as Exhibit 2 is a true and correct copy of the of the Stipulated

11    Final judgment from the United States District Court in the Southern District of Florida

12    in the case of Robinson v Hot Grabba Leaf, LLC.

13    I declare under penalty of perjury under the laws of the United States of America

14    the foregoing is true and correct.

15    Executed October 7, 2022 in Los Angeles, California.

16

17    Robert G. Klein

18

19

20

21

22

23

24

25

26

27

28

9

**EXHIBIT 1**

> THIS OPINION IS A
> PRECEDENT OF
> THE TTAB

Hearing: September 20, 2018                    Mailed: April 25, 2019

## UNITED STATES PATENT AND TRADEMARK OFFICE

### Trademark Trial and Appeal Board

*Robinson*
*v.*
*Hot Grabba Leaf, LLC*

Cancellation No. 92060394

Louis R. Gigliotti of Louis R. Gigliotti PA,
    for Michael A. Robinson.

Daniel A. Tesler of Law Offices of Daniel A. Tesler, LLC,
    for Hot Grabba Leaf, LLC.

Before Ritchie, Hightower, and Larkin, Administrative Trademark Judges.

Opinion by Ritchie, Administrative Trademark Judge:

Hot Grabba Leaf, LLC ("Respondent") owns Registration No. 4263417 on the Principal Register for HOT GRABBA NATURAL TOBACCO LEAF, in standard character format, for "leaf tobacco," in International Class 34,[1] disclaiming the exclusive right to use "GRABBA NATURAL TOBACCO

---

[1] Registration No. 4263417 issued from Serial No. 85464616, filed November 4, 2011, and claiming March 1, 2011 as date of first use and first use in commerce.

**Cancellation No.** 92060394

LEAF" apart from the mark as shown, which registration issued on December 25, 2012.

Michael A. Robinson ("Petitioner") has petitioned to cancel Respondent's registration. In his amended petition for cancellation, Petitioner asserts that "since at least as early as November 1, 2006, Petitioner has been using GRABBA LEAF as a trademark in connection with tobacco and tobacco related products and since at least as early as July 11, 2009, Petitioner has been using GRABBA LEAF as a trademark in connection with tobacco and tobacco related products in commerce . . . ."[2] Petitioner further alleges that he is the owner of Registration No. 4487117[3] for GRABBA LEAF for cigar wraps and of Registration No. 4461093[4] for GRABBA LEAF and design, also for cigar wraps, both in International Class 34, and both disclaiming the term "LEAF" apart from the mark as shown.[5] The latter mark is depicted as follows:



The description of the mark states:

---

[2] 20 TTABVUE 3.

[3] Issued February 25, 2014 from Application No. 85772297, filed November 6, 2012 and claiming dates of first use on November 1, 2006, and first use in commerce on July 10, 2009.

[4] Issued January 7, 2014 from Application No. 85772332, filed November 6, 2012 and claiming dates of first use on November 1, 2006, and first use in commerce on July 10, 2009.

Cancellation No. 92060394

> The mark consists of an ovate shaped leaf with a tapered point
> having multiple veins occurring along a single main vein shaded
> with a copper brown hue towards the apex of the leaf and a russet
> brown at the lower end. The ovate leaf also consists of a black stem
> which radiates up through the leaf. The words "Grabba Leaf" are
> positioned on the center and right side of the leaf with the word
> "Grabba" above and slightly to the left of the word "Leaf". The "G"
> in "Grabba" is centered on the leaf. The wording has a dark green
> outline and a marigold yellow fill.

Petitioner alleges priority of use and likelihood of confusion with his marks

under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d).[6]

The answer to the amended petition denies the salient allegations, except

as to the issuance by the Office of the parties' respective registrations.[7] The

answer to the amended petition also contains several affirmative defenses,

including that "[p]etitioner's claims are barred by the doctrine of laches,

estoppel, and/or acquiescence," and that the registrations asserted by

Petitioner "are invalid because the term 'Grabba Leaf' is merely descriptive

and lacks secondary meaning."[8]

Respondent further filed a counterclaim to cancel both of Petitioner's

pleaded registrations on the ground that they are merely descriptive without

having acquired distinctiveness in that "[t]he term 'grabba' is commonly used

---

[5] 20 TTABVUE 3.

[6] 20 TTABVUE 4. The amended petition also includes claims of abandonment
through non-use, fraud in the procurement of Respondent's registration, and that
Respondent's mark is merely descriptive. 20 TTABVUE 5, 6, 11. However, as
Petitioner did not pursue any of these claims with its brief, we deem them to be
waived. *Harry Winston, Inc. v. Bruce Winston Gem Corp.*, 111 USPQ2d 1419, 1422
(TTAB 2014). Specifically, as confirmed during the oral hearing, Petitioner's brief
pursues only his claim of likelihood of confusion, and his defense to Respondent's
counterclaim that Petitioner's marks are not merely descriptive.

[7] 21 TTABVUE 3.

Cancellation No. 92060394

in the tobacco industry as a synonym for fronto leaf tobacco and fanta leaf tobacco" and that these terms are "used interchangeably as the common name of and/or to describe products containing the same."[9] Respondent further alleges that "[w]hen the terms 'grabba' and 'leaf' are combined into 'grabba leaf,' the term merely describes the main ingredient used in Petitioner's products, namely a grabba leaf."[10] Respondent also asserts in its counterclaim that Petitioner's pleaded marks are generic.[11] Petitioner did not file an answer to Respondent's counterclaim filed with its answer to the amended complaint. Instead, Petitioner filed a motion for summary judgment,[12] which was denied.[13] Nevertheless, Petitioner did answer the original counterclaim filed with Respondent's answer to the petition, wherein Petitioner denied the salient allegations of the counterclaim; and the counterclaim filed with the answer to the amended complaint was unchanged.[14]

The case is fully briefed. On request from Petitioner, an oral hearing was held and presided over by this panel.

## I.     The Record and Evidentiary Issues

The record consists of the pleadings and the files of the involved registrations, including Respondent's registration and both registrations

---

[8] 21 TTABVUE 18-19.
[9] 21 TTABVUE 19.
[10] 21 TTABVUE 20.
[11] 21 TTABVUE 21.
[12] 23 TTABVUE.
[13] 30 TTABVUE.

4

Cancellation No. 92060394

asserted by Petitioner, which are subject to the counterclaim for cancellation. Trademark Rule 2.122(b)(1), 37 C.F.R. § 2.122(b)(1).

Additionally, the Board discussed the evidence of record, and ruled on Respondent's motion to strike, in an order dated April 14, 2017.[15] With the qualifications discussed herein, the following are of record:

By Petitioner:

1. Petitioner's First Notice of Reliance, stated to be on electronic copies of his registrations. 36 TTABVUE.[16]

2. Petitioner's Second Notice of Reliance, stated to be on electronic copies of his registrations but attaching only his declaration, dated May 31, 2013, from the file record of each of his pleaded registrations, titled "Declaration of Applicant in Support of Registration of Trademark Application." 37 TTABVUE.[17]

3. Petitioner's Third Notice of Reliance, on selected pages from the August 26, 2015 discovery deposition of Bryan Wilson, Respondent's owner and agent. 38 TTABVUE.

4. Petitioner's Fifth Notice of Reliance, on his declaration, dated June 24, 2016, with exhibits thereto. 40 TTABVUE. [18]

---

[14] 7 TTABVUE.

[15] 49 TTABVUE. The order granted the motion to strike Petitioner's Fourth Notice of Reliance, Petitioner's Seventh Notice of Reliance, and page 2 of Petitioner's Sixth Notice of Reliance.

[16] This was unnecessary as they are automatically of record under Trademark Rule 2.122(b), 37 C.F.R. § 2.122, because of Respondent's counterclaim.

[17] See discussion *infra*.

[18] See discussion *infra*.

**Cancellation No.** 92060394

5. Petitioner's Sixth Notice of Reliance (except p. 2, which was stricken), on web pages regarding the registration of domain names. 41 TTABVUE.

6. Petitioner's Eighth Notice of Reliance, on Respondent's written responses to Petitioner's first set of discovery requests. 43 TTABVUE.

7. Testimonial deposition (for cross-examination) of Bryan Wilson, dated August 25, 2017. 65 TTABVUE.

By Respondent:

1. Respondent's First Notice of Reliance, including Petitioner's responses to requests for admission. 52 TTABVUE.

2. Respondent's Second Notice of Reliance, including Petitioner's responses to interrogatories. 53 TTABVUE.

3. Respondent's Third Notice of Reliance, including portions of the discovery deposition of Bryan Wilson, to provide context for portions submitted by Petitioner. 54 TTABVUE.

4. Respondent's Fourth Notice of Reliance, including webpages with descriptive references to the term "grabba." 55 TTABVUE.

5. Respondent's Fifth Notice of Reliance, including web references about tobacco and its uses. 56 TTABVUE.

6. Respondent's Sixth Notice of Reliance, including web references to a song originating from a Jamaican artist. 57 TTABVUE.

7. Respondent's Seventh Notice of Reliance, including web references from Jamaican news media. 58 TTABVUE.

6

Cancellation No. 92060394

8. Respondent's Eighth Notice of Reliance, including USPTO records showing the cancelled status of Petitioner's prior, nonpleaded registration, and listing it as cancelled, and web references to the term "grabba." 59 TTABVUE.

9. Testimonial declaration of Bryan Wilson, dated June 29, 2017, with exhibits. 60 TTABVUE.

Regarding Petitioner's May 31, 2013 declaration (the "File Declaration") submitted with his Second Notice of Reliance, the File Declaration was originally included in the files of both of the applications that matured into Petitioner's two pleaded registrations. The parties dispute whether the File Declaration constitutes testimony for purposes of this proceeding. Respondent argues that it is properly construed as part of the application files, but that it is not admissible as "testimony" in this proceeding. In support of this argument, Respondent cites amended Trademark Rule 2.122(b)(2), 37 C.F.R. § 2.122(b)(2), which as revised in 2017 provides in relevant part that "[s]tatements made in an affidavit or declaration in the file of an application for registration, or in the file of a registration, are not testimony on behalf of the applicant or registrant."[19]

Petitioner counters that the File Declaration is indeed properly construed as "testimony" in this proceeding since he submitted it during his trial

---

[19] 70 TTABVUE 14-15.

7

**Cancellation No. 92060394**

period,[20] pursuant to Trademark Rule 2.123(a)(1), 37 C.F.R. § 2.123(a)(1),

which as revised in 2017 provides in relevant part:

> The testimony of witnesses in inter partes cases may be submitted in the form of an affidavit or a declaration pursuant to § 2.20 and in conformance with the Federal Rules of Evidence, filed during the proffering party's testimony period, subject to the right of any adverse party to elect to take and bear the expense of oral cross-examination of that witness . . . .

We note, however, that these two rules are not the only authority relevant

to the question of whether we can accept a file declaration as testimony in a

proceeding. In particular, Trademark Rule 2.121(a)(1), 37 C.F.R. § 2.121(a),

which applies to all evidence submitted in inter partes proceedings, provides

in relevant part as follows:

> The Trademark Trial and Appeal Board will issue a trial order setting a deadline for each party's required pretrial disclosures and assigning to each party its time for taking testimony and presenting evidence ("testimony period"). No testimony shall be taken or evidence presented except during the times assigned, unless by stipulation of the parties approved by the Board, or upon motion granted by the Board, or by order of the Board.

Under the revised rules, Trademark Rule 2.123(a)(1) allows parties to

submit "testimony" by "an affidavit or a declaration." Absent a stipulation or

Board order, a testimony affidavit or declaration must be taken—that is,

executed—during the assigned testimony period, as required by Rule

2.121(a).[21] Thus the File Declaration that Petitioner seeks to introduce as

---

[20] 71 TTABVUE 2-3.

[21] This is consistent with Trademark Rule 2.123(a)(2), which discusses "[t]estimony taken in a foreign country," and provides, as amended, that such testimony "shall be taken" in one of three ways, including "by affidavit or declaration." Similar language is included in Trademark Trial and Appeal Board Manual of Procedure ("TBMP") §

**Cancellation No.** 92060394

testimony under his Second Notice of Reliance is not appropriately considered as such since it was dated over three years prior to Petitioner's testimony period.

The requirement to take testimony during the testimony period is well-established. *See e.g., M-Tek Inc. v. CVP Sys. Inc.*, 17 USPQ2d 1070, 1072 (TTAB 1990). In that case, the Board considered a motion to strike witness testimony taken by the petitioner. The Board noted that it had reopened petitioner's testimony period for a limited purpose of noticing certain specific depositions. Petitioner, however, also took the deposition of a witness "whose deposition had not previously been noticed." Although the respondent did not object until after the deposition (via a motion to strike), the Board found that the motion to strike "is based not on insufficient notice but rather on the ground that the deposition in question was taken untimely." In this regard, the Board cited Trademark Rule 2.121(a), finding the deposition to be outside petitioner's assigned testimony period, and not by Board order or by stipulation of the parties. Thus, the deposition was stricken and "given no consideration." *See also Carefirst of Md. Inc. v. FirstHealth of the Carolinas Inc.*, 77 USPQ2d 1492, 1497 (TTAB 2005) (denying applicant leave to take testimony *after* the close of the testimony period.). *But see Of Counsel Inc. v.*

---

703.01(a) (2018), which states that "[t]estimony is taken out of the presence of the Board, by affidavit or declaration, or on oral examination or written questions, and the affidavits, declarations and written deposition transcripts, together with any exhibits thereto, are then submitted to the Board," and Section 703.01(b) explains that "[o]rdinarily, the testimony of a witness may be taken by affidavit, declaration or on oral examination . . . or by deposition on written questions . . . ."

**Cancellation No. 92060394**

*Strictly of Counsel Chartered*, 21 USPQ2d 1555, 1556 n.2 (TTAB 1991) (overruling objection to testimony taken two days *before* scheduled trial, finding that the error was made "in good faith" and objection to timeliness not seasonably raised is waived).

Petitioner also submitted the File Declaration with the reply in support of his motion for summary judgment. The declaration was included, however, in an exhibit as part of the registration file rather than being set forth as a discrete declaration in support of the motion for summary judgment. Furthermore, as the Board noted in denying Petitioner's motion for summary judgment:

> [T]he evidence submitted in connection with a motion for summary judgment or opposition thereto is of record only for consideration of that motion. Any such evidence to be considered at final hearing must be properly introduced in evidence during the appropriate trial period.[22]

The order cites *Levi Strauss & Co. v. R. Joseph Sportswear Inc.*, 28 USPQ2d 1464, 1465 n.2 (TTAB 1993) and *Pet Inc. v. Bassetti*, 219 USPQ 911, 913 n.4. (TTAB 1983). The findings in those cases are consistent with our finding here under the amended rules. Notably, in order to properly make an affidavit or declaration of record as trial testimony, absent a stipulation or Board order, the affidavit or declaration must be executed during the

---

[22] 30 TTABVUE 7.

10

**Cancellation No. 92060394**

assigned testimony period, unless submitted as an exhibit to other testimony and affirmed therein.[23]

In accordance with Trademark Rule 2.121(a)(1), therefore, we do not consider Petitioner's File Declaration as testimony in this proceeding. It is, nevertheless, in accordance with Trademark Rule 2.122(b), part of the record of the proceeding, subject to the Federal Rules of Evidence. The pertinence of the File Declaration as forming part of the record is discussed further herein, in our analysis of "Mere Descriptiveness."

## II.    Standing

Standing is a threshold issue that must be proven in every *inter partes* case. *Empresa Cubana Del Tabaco v. Gen. Cigar Co.*, 753 F.3d 1270, 111 USPQ2d 1058, 1062 (Fed. Cir. 2014). *See also Lipton Indus., Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 213 USPQ 185, 189 (CCPA 1982) ("The facts regarding standing . . . must be affirmatively proved. Accordingly, [plaintiff] is not entitled to standing solely because of the allegations in its [pleading].").
Our primary reviewing court, the U.S. Court of Appeals for the Federal

---

[23] We note that Petitioner's June 24, 2016 declaration, submitted with exhibits under Petitioner's Fifth Notice of Reliance, was also executed and submitted with Petitioner's reply to his motion for summary judgment. 27 TTABVUE 7-8. Thus, this declaration was executed several months before Petitioner's assigned trial period, and was not submitted via other testimony and affirmed therein in the manner discussed in *Levi Strauss*. Respondent objected to the submission of Petitioner's Fifth Notice of Reliance by motion to strike, and continued that objection in its brief. We find that the June 24, 2016 declaration was not stipulated into the record, and do not consider this declaration as trial testimony either. We further note, nevertheless, that our conclusion in this case would not be different if we had considered either the File Declaration or the June 24, 2016 declaration. Parties may submit such declarations under a timely taken affidavit or declaration attesting to the continued accuracy of the information residing therein.

Cancellation No. 92060394

Circuit, has enunciated a liberal threshold for determining standing, namely that a plaintiff must demonstrate that it possesses a "real interest" in a proceeding beyond that of a mere intermeddler, and a "reasonable basis for his belief of damage." *See Empresa Cubana Del Tabaco*, 111 USPQ2d at 1062 (citing *Ritchie v. Simpson*, 170 F.3d 1092, 50 USPQ2d 1023, 1025-26 (Fed. Cir. 1999)). A "real interest" is a "direct and personal stake" in the outcome. *Ritchie v. Simpson*, 50 USPQ2d at 1026.

As a result of Petitioner's submission of status and title copies of his two pleaded registrations, Petitioner has established his standing. *See Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 55 USPQ2d 1842, 1844 (Fed. Cir. 2000). Respondent has standing in the counterclaim by virtue of being the defendant in this cancellation proceeding. *See* Trademark Act Section 14, 15 U.S.C. § 1064; *see also Cunningham v. Laser Golf Corp.*, 55 USPQ2d at 1844; *Del. Quarries, Inc. v. PlayCore IP Sub, Inc.*, 108 USPQ2d 1331 (TTAB 2013).

## III.   Mere Descriptiveness

We thus turn to Respondent's counterclaim that the marks in both of Petitioner's asserted registrations are merely descriptive without having acquired distinctiveness, since the claim is potentially dispositive of the case.[24] If Respondent prevails in this claim, then Petitioner's asserted registrations will be cancelled and are unenforceable against Respondent.

---

[24] We note that Petitioner's registrations are not registered with a Section 2(f) claim of acquired distinctiveness and Petitioner has not pleaded or argued that his marks

12

**Cancellation No.** 92060394

The party challenging a registration's validity bears the burden of proving that the mark is merely descriptive by a preponderance of the evidence. *DuoProSS Meditech Corp. v. Inviro Med. Devices, Ltd.*, 695 F.3d 1247, 103 USPQ2d 1753, 1756 (Fed. Cir. 2012). A term is deemed to be merely descriptive of goods or services, within the meaning of Section 2(e)(1), if it forthwith conveys an immediate idea of an ingredient, quality, characteristic, feature, function, purpose or use of the goods or services. *See In re Chamber of Commerce of the U.S.*, 675 F.3d 1297, 102 USPQ2d 1217, 1219 (Fed. Cir. 2012) (citing *In re Gyulay*, 820 F.2d 1216, 3 USPQ2d 1009 (Fed. Cir. 1987)); *see also In re TriVita, Inc.*, 783 F.3d 872, 114 USPQ2d 1574, 1575 (Fed. Cir. 2015); *In re Abcor Dev. Corp.*, 588 F.2d 811, 200 USPQ 215, 217-18 (CCPA 1978). Whether a term is merely descriptive is determined not in the abstract, but in relation to the goods or services for which registration is sought, the context in which it is being used on or in connection with those goods or services, and the possible significance that the term would have to the average purchaser of the goods or services because of the manner of its use. *In re Mecca Grade Growers, LLC*, 125 USPQ2d 1950, 1952 (TTAB 2018) (citing *In re Chamber of Commerce*, 102 USPQ2d at 1219). That a term may have other meanings in different contexts is not controlling. *In re Canine*

---

have acquired distinctiveness. Rather, Petitioner only argues that his marks are inherently distinctive. In view thereof, the issue of acquired distinctiveness is not before us as to the counterclaims and there is no evidence or argument to support a finding of acquired distinctiveness to establish any possible prior proprietary rights in the context of Petitioner's claim of likelihood of confusion if these designations are merely descriptive.

**Cancellation No. 92060394**

*Caviar Pet Foods, Inc.*, 126 USPQ2d 1590, 1598 (TTAB 2018). Moreover, "[t]he question is not whether someone presented with only the mark could guess what the goods or services are. Rather, the question is whether someone who knows what the goods or services are will understand the mark to convey information about them." *DuoProSS*, 103 USPQ2d at 1757 (quoting *In re Tower Tech Inc.*, 64 USPQ2d 1314, 1316-17 (TTAB 2002)); *see also In re Patent & Trademark Servs. Inc.*, 49 USPQ2d 1537 (TTAB 1998); *In re Home Builders Ass'n of Greenville*, 18 USPQ2d 1313 (TTAB 1990); *In re Am. Greetings Corp.*, 226 USPQ 365 (TTAB 1985). On the other hand, if a mark requires imagination, thought and perception to ascertain the nature of the goods or services, then the mark is suggestive. *DuoProSS*, 103 USPQ2d at 1755 (citing *In re Abcor Dev. Corp.*, 200 USPQ at 218). The relevant public in this case consists of consumers of tobacco or tobacco products, including the "cigar wraps" identified by Petitioner in both registrations at issue.

Pursuant to a requirement by the Trademark Examining Attorney during the application process, Petitioner has disclaimed the exclusive right to use the term "LEAF" apart from the mark as shown for both registrations. Under such circumstances, the disclaimer may be considered an admission by Petitioner that the term "LEAF" is merely descriptive of its identified "cigar wraps." *See Bass Pro Trademarks LLC v. Sportsman's Warehouse Inc.*, 89 USPQ2d 1844, 1851 (TTAB 2008). In this regard, the Federal Circuit has stated that "[t]o determine whether a composite mark [such as the one at

14

Cancellation No. 92060394

issue] is merely descriptive, the Board was required to examine the meaning of each component individually, and then determine whether the mark as a whole is merely descriptive." *DuoProSS*, 103 USPQ2d at 1758 (citing *In re St. Paul Hydraulic Hoist Co.*, 177 F.2d 214, 83 USPQ 315 (CCPA 1949)); *see also In re Steelbuilding.com*, 415 F.3d 1293, 1297, 75 USPQ2d 1420, 1423 (Fed. Cir. 2005).

Respondent argues that Petitioner's marks GRABBA LEAF and



are merely descriptive because they describe a feature or characteristic of Petitioner's goods, namely that (1) grabba is understood by the relevant public as "a form of tobacco;"[25] (2) grabba leaf is commonly understood as a product that consists of a "grabba-type tobacco leaf;"[26] and



(3) the mark with the design element                 has the same merely descriptive meaning.

Respondent argues that the record supports a finding that its burden to rebut the presumption of validity has been met. In particular, Respondent points to third-party descriptive references to the terms "grabba" and "grabba leaf" in news articles; song lyrics that refer to "grabba"; a definition from the

---

[25] 70 TTABVUE 25.
[26] 70 TTABVUE 46.

**Cancellation No. 92060394**

Urban Dictionary; and statements by Petitioner himself, regarding the wide-

spread use of the terms.

Various third-party websites submitted by Defendant show the terms

"grabba" and "grabba leaf" used in connection with tobacco products,

including cigar wraps. Examples in the record include the following:[27]

> Fronto leaf is also popularly called 'grabba leaf', which is
> typically known for it's [sic] strong/bold smoke.
> wholeleaf.com; 55 TTABVUE 5.

> Okay, but how do I USE a Fronto Leaf? . .. For those using the
> leaf as Grabba, let the leaf dry out completely in the open are
> [sic] and crush as needed.
> LeafOnly.com; 55 TTABVUE 11.

> Looking for Fronto Leaf? You found your way here because you
> take your smoke seriously. You enjoy true quality whether you
> are 'rolling your own' or smoking your fronto leaf as 'grabba', or
> rolling a cigar.
> FrontoLeaf.com; 55 TTABVUE 21.

> Fronto tobacco leaf, sometimes known as grabba leaf, or fanta
> leaf, is a tobacco wrapper leaf sold by the individual leaf or by
> the pound to our customers in Houston.
> BuyLeaves.com; 55 TTABVUE 29.

> If you are of Caribbean decent [sic], then you are no stranger to
> grabba.. . . The gold packages contain lighter grabba leaves,
> which will result in a very faint taste. . . . If you're looking to try
> a new way of smoking, roll up your cannabis in an all natural

---

[27] Respondent also included news articles from media that are based in Jamaica. 58
TTABVUE 5-13. While these sources show that "grabba" and "grabba leaf" have an
understood meaning in Jamaica, we do not see in this record a basis to infer that
relevant U.S. consumers would have considered these foreign sources to inform their
own understanding of the meaning of "grabba" and "grabba leaf." We therefore have
not considered them in assessing the terms' meaning among relevant U.S.
consumers. *See Canine Caviar*, 126 USPQ2d at 1596 ("While evidence of foreign use
may in some cases be probative, in this case it does not serve to tell us the norms
specific to pet owners in the United States, who are the relevant consumers.") (citing
*In re Bayer Aktiengesellschaft*, 488 F.3d 960, 82 USPQ2d 1828, 1835 (Fed. Cir.
2007)).

**Cancellation No.** 92060394

> fronto leaf from Gold Leaf Inc. The lightest, smoothest and first
> grabba to be introduced to cannabis industry.
> Thehighercontent.com; 55 TTABVUE 33-34.

> Grabba Whole Tobacco Fronto Leaf: What is a Fronto Leaf?:
> "Fronto," "Grabba," and "Fanta" are all just alternative names
> for 100% Whole Leaf Tobacco.
> Stogywraps.com; 55 TTABVUE 36.

We find these third-party references to be probative evidence that the
relevant public perceives the terms "grabba" and "grabba leaf" to, at a
minimum, immediately convey information about an ingredient or
characteristic of tobacco, or tobacco products, including cigar wraps.

Respondent also submitted into the record the lyrics from a 2003 song
"Pon de River Pon de Bank," which he states was widely distributed,
including in the United States.[28] The relevant lyrics are:

> A'right, labba labba
> Seh him a get ole, an can badda we di music hit him,
> hi drop weed an grabba
> 60 TTABVUE 29.

We find the use of the term "grabba" in the song to be too vague to be
probative concerning its meaning to the relevant public.

Respondent further submitted evidence of a definition from the Urban
Dictionary for "grabba" as:

> A Jamaican term used to describe something mixed with
> marijuana when smoked, so as to keep the sent [sic] down and to
> get rid of the bad aftertaste.

The entry is dated March 5, 2008.[29] A definition from the Urban Dictionary
may be probative where appropriately considered in context. *See In re*

Cancellation No. 92060394

*Brunetti*, 877 F.3d 1330, 125 USPQ2d 1072, 1076 (Fed. Cir. 2017), *cert. granted sub nom. Iancu v. Brunetti*, 202 L. Ed. 2d 510 (U.S. Jan. 4, 2019); *In re Manwin/RK Collateral Trust*, 111 USPQ2d 1311, 1313 n.17 (TTAB 2014); *see also Bikram's Yoga Coll. of India, LP v. Evolation Yoga, LLC*, 803 F.3d 1032, 116 USPQ2d 1357, 1365 n.13 (9th Cir. 2015) (citing Urban Dictionary). Similarly, in this case, we find that the Urban Dictionary definition corroborates the other evidence of record which shows the terms "grabba" and "grabba leaf" as conveying information about an ingredient or characteristic of tobacco, or tobacco products, including cigar wraps.

Finally, we look at Petitioner's File Declaration, submitted on May 31, 2013, where Petitioner states:

> Paragraph 6: Since my use of the GRABBA LEAF trademarks, the term GRABBA has entered pop culture vernacular, through amongst other things, the use in songs in the Caribbean, namely Vybz Kartel featuring Popcaan – Hot Grabba, released June 2010.
>
> Paragraph 7: The entry of the term GRABBA into pop culture vernacular postdates my use of the GRABBA LEAF trademarks.

As discussed above, Petitioner's File Declaration is not testimony in this proceeding. It is, nevertheless, part of the record of the proceeding, in accordance with Trademark Rule 2.122(b), because the registration is the subject of Respondent's counterclaim. In this regard, we find that this statement made by Petitioner in this File Declaration bears on the probative

---

[28] 60 TTABVUE 8.
[29] 60 TTABVUE 8, 31.

Cancellation No. 92060394

value of his defense to the counterclaim of mere descriptiveness. In short, although Petitioner denies that his marks are merely descriptive, his statement in his File Declaration is inconsistent with that position and supports a contrary conclusion. *See also Juice Generation, Inc. v. GS Enters. LLC*, 794 F.3d 1334, 115 USPQ2d 1671, 1675 (Fed. Cir. 2015) (recognizing that comments made during prosecution "have significance as 'facts illuminative of shade and tone in the total picture confronting the decision maker'") (quoting *Interstate Brands Corp. v. Celestial Seasonings, Inc.*, 576 F.2d 926, 198 USPQ 151, 153 (CCPA 1978) and citing, *inter alia*, *Stone Lion Capital Partners, L.P. v. Lion Capital LLP*, 746 F.3d 1317, 110 USPQ2d 1157, 1161 (Fed. Cir. 2014)).

In his brief, Petitioner further admits that currently, the relevant public views the term "grabba" as merely descriptive, arguing, "[o]nly after Robinson, have second comers and junior users adopted the GRABBA term as part of a trademark, or worse, *to describe* a tobacco cigar wrap product."[30]

Petitioner repeatedly argues that to the extent "GRABBA LEAF" is merely descriptive, "[t]he entry of the term GRABBA into pop culture vernacular postdates my use of the GRABBA LEAF trademarks."[31] Whether Petitioner was the first user of the term is irrelevant since we evaluate the question of whether a term is merely descriptive as of the time of trial. *See Grote Indus., Inc. v. Truck-Lite Co.*, 126 USPQ2d 1197, 1211 (TTAB 2018),

---

[30] 69 TTABVUE 9 (emphasis added).
[31] 37 TTABVUE 5 (File Declaration at paragraph 7).

**Cancellation No. 92060394**

(citing *Neapco Inc. v. Dana Corp.,* 12 USPQ2d 1746, 1747 (TTAB 1989)), *civil action filed,* No. 1:18-cv-00599-LJV-MJR (W.D.N.Y. May 24, 2018); *see also Alcatraz Media Inc. v. Chesapeake Marine Tours Inc.,* 107 USPQ2d 1750, 1764 (TTAB 2013); *Kasco Corp. v. Southern Saw Serv. Inc.,* 27 USPQ2d 1501, 1506 n.7 (TTAB 1993) (finding that petitioner could prevail if record revealed respondent's registered mark lacked acquired distinctiveness either at time of registration "or as of the present time"). We view the combination of Petitioner's statements in his File Declaration, taken together with the statements in his brief, as admissions that the term "grabba" is currently viewed by the relevant public as, at a minimum, immediately conveying information about an ingredient or characteristic of tobacco, or tobacco products, including cigar wraps.

Overall, considering all of the evidence of record, we find that the term "GRABBA LEAF," when viewed in relation to Petitioner's "cigar wraps," immediately conveys information about them, namely that they may be used as a leaf to wrap grabba tobacco, or that grabba leaf tobacco is an ingredient in the cigar wraps.[32] Thus, we find that Respondent has shown by a preponderance of the evidence that Petitioner's standard character mark GRABBA LEAF, considered as a whole, is merely descriptive of cigar wraps.

---

[32] We note, in this regard, that Petitioner, himself, argues in his reply brief that "the Board must find that raw tobacco leaf and cigar wraps are nearly identical, and to even argue otherwise is not only unsubstantiated, but is nearly disingenuous." 71 TTABVUE 3.

**Cancellation No. 92060394**

Similarly, we find that the design mark , which contains the merely descriptive term GRABBA LEAF along with a design of what appears to be a tobacco leaf, when considered as a whole, gives the same commercial impression and is also merely descriptive of Petitioner's cigar wraps. *See DuoProSS,* 103 USPQ2d at 1756 (noting that "[w]hen determining whether a mark is merely descriptive, the Board must consider the commercial impression of a mark as a whole" and should have considered the design element as well as the literal elements, finding the mark thus to be merely descriptive); *Herbko Int'l Inc. v. Kappa Books Inc.*, 308 F.3d 1156, 64 USPQ2d 1375, 1380 (Fed. Cir. 2002) (noting that crossword puzzle design reinforces connotation created by wording CROSSWORD COMPANION); *In re Singer Mfg. Co.*, 255 F.2d 939, 118 USPQ 310, 311-12 (CCPA 1958) ("It is, of course, true that a design consisting merely or essentially of a pictorial representation of the goods on which it is used is descriptive, and is not a valid trademark.") (citation omitted).

Petitioner argues in his brief that his marks are at worst suggestive, stating that "[i]incongruity is a strong indication that a mark is suggestive rather than merely descriptive."[33] And Petitioner stated in his response to Respondent's First Set of Interrogatories, No. 13 that "GRABBA LEAF achieves a parody-like double entendre using GRABBA as both a verb and as

---

[33] 69 TTABVUE 11.

21

**Cancellation No.** 92060394

a noun at the same time."[34] However, Petitioner does not mention in his briefing the term "double entendre." Nonetheless we note that, as our precedent dictates, the meaning of the mark, in creating a double entendre, must be self-evident from the face of the mark. *See In re Calphalon Corp.*, 122 USPQ2d 1153 (TTAB 2017). As the Board stated therein:

> The multiple interpretations that mark an expression a 'double entendre' must be associations that the public would make fairly readily, and *must be readily apparent from the mark itself."*
> *Id.* at 1163 (citations omitted).

Petitioner cites no evidence that the relevant public would find that the double entendre alleged by Petitioner in his interrogatory response is "readily apparent" from the mark itself. Here, as in *Calphalon*, we find that Petitioner's marks are merely descriptive, and that there is no double entendre to render the marks not so.[35]

Respondent's counterclaim for cancellation is granted as to both of Petitioner's pleaded registrations on the ground that they are merely descriptive.[36]

Moreover, we find that since Petitioner has not pleaded or argued that his marks have acquired distinctiveness, he cannot establish the existence of prior rights at common law for purposes of his claim of likelihood of

---

[34] 53 TTABVUE 7.

[35] As discussed, *infra*, Petitioner does not argue that if we find his marks to be merely descriptive, that they have acquired distinctiveness, and we therefore do not consider that possibility.

[36] Since we have cancelled Petitioner's registrations on the ground that they are merely descriptive, we need not also consider Respondent's alternative ground that

**Cancellation No.** 92060394

confusion, and thus he cannot prevail on his sole ground for cancellation of Respondent's mark under Section 2(d) of the Trademark Act. *Giersch v. Scripps Networks Inc.*, 90 USPQ2d 1020, 1023 (TTAB 2009).

**Decision:** Petitioner's petition for cancellation is denied.

Respondent's petition for cancellation on its counterclaim is granted as to both Registration Nos. 4487117 and 4461093, on the ground that the marks therein are merely descriptive. The registrations will be cancelled in due course.

---

they are generic. *Multisorb Tech., Inc. v. Pactiv Corp.*, 109 USPQ2d 1170, 1171 (TTAB 2013).

# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Case No. 0:19-cv-61614-DPG

MICHAEL ANDREW ROBINSON,

      Plaintiff,

v.

HOT GRABBA LEAF, LLC,

      Defendant.

_____/

## STIPULATED FINAL JUDGMENT

THIS CAUSE is before the Court on the Parties', Plaintiff, MICHAEL ANDREW ROBINSON, and Defendant HOT GRABBA LEAF, LLC., stipulated [Proposed] Final Judgment. Based on the Parties' stipulation, it is ORDERED AND ADJUDGED as follows:

1.    Good Cause exists to enter Final Judgment.

2.    This case was filed as an appeal from a Trademark Trial and Appeal Board decision. The Court granted Plaintiff relief by default. [DE 2, 25]. The Default Final Judgment was set aside. [DE 35]. The case is currently stayed by Court Order. [DE 37]. The Parties seek entry of a Final Judgment that resolves all matters and permits both Plaintiff's GRABBA LEAF trademarks and Defendant's HOT GRABBA NATURAL TOBACCO LEAF trademark to be registered.

3.    The Parties have entered into a Co-Existence Agreement, whereby the respective marks are not likely to cause confusion in the marketplace, as Plaintiff's GRABBA LEAF marks and Defendant's HOT GRABBA NATURAL TOBACCO LEAF mark denote separate and distinct commercial impressions.

1

4.      Mr. Robinson is the owner of two incontestable registrations for GRABBA LEAF for use on cigar wraps, Registration Nos: 4487117 and 4461093. These marks had been ordered cancelled by the TTAB and Plaintiff has appealed to this Court. As a result of Defendant's default, which has since been vacated, the Court ordered the cancellation of the HOT GRABBA NATURAL LEAF trademark. The Court now vacates its order for the cancellation of the HOT GRABBA NATURAL LEAF trademark. The parties have agreed that all of these marks are entitled to registration.

5.      The court has statutory authority to restore the Hot Grabba Natural Leaf trademark to full registration status. Specifically, the Court has the statutory authority to regulate the registration of trademarks and to order the TTAB to act in furtherance of its decisions. In any action involving a registered mark the court may determine the right to registration, order the cancellation of registrations, *in whole or in part, restore cancelled registrations*, and otherwise rectify the register with respect to the registrations of any party to the action. Decrees and orders shall be certified by the court to the Director, who shall make appropriate entry upon the records of the Patent and Trademark Office and shall be controlled thereby. 15 U.S.C. §1119.

6.      The Parties have stipulated that the Plaintiff's GRABBA LEAF trademarks should remain registered and that Defendant's HOT GRABBA NATURAL LEAF trademark meets all statutory and legal requirements to maintain its mark as registered, and with full force and effect, to be restored on the Principal Register with the United States Trademark Office, with its original registration date of December 25, 2012.

7.      The Court finds that Plaintiff's GRABBA LEAF marks are inherently distinctive, have acquired secondary meaning in the marketplace, and should be permitted to remain registered.

2

**8.**     The Court finds that Defendant's HOT GRABBA NATURAL LEAF mark is also inherently distinctive, has acquired secondary meaning in the marketplace, and should be permitted to be re-registered.

9.     The Court vacates its Order vacating the TTAB Order entered on April 25, 2019. D.E. ___.

10.     The Court orders that the USPTO maintain as registered incontestable US Trademark Registration Nos: 4,487,117 and 4,461,093 for GRABBA LEAF for use on cigar wraps, remain registered.

11.     The Court orders that US Trademark Registration No.: 4,263,417 for HOT GRABBA NATURAL TOBACCO LEAF for leaf tobacco be restored to the Principal Register with its original effective dated of December 25, 2012.

12.     Counsel for Plaintiff has authorized counsel for Defendant to file this Final Judgment on its behalf.

DONE AND ORDERED IN CHAMBERS IN MIAMI, FLORIDA, THIS ___ DAY OF APRIL, 2022.

By: _____

              Darrin P. Gales
              United States District Judge

CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2022, I electronically filed the foregoing Stipulated

Proposed Final Judgment with the Clerk of the Court for the United States District Court of the

Southern District of Florida by using the CM/ECF system and that service will be accomplished

by the CM/ECF system on all counsel of record.

By: Victoria E. Brieant
Victoria E. Brieant (FBN 632961)
Law Office of Victoria E. Brieant, P.A.
4000 Ponce de Leon Boulevard, Suite 470
Coral Gables, FL 33146
Telephone: (305) 421-7200
Email: victoria@brieantlaw.com

Attorney for Defendant
Hot Grabba Leaf, LLC

4