BUCHALTER
A Professional Corporation
THOMAS J. SPEISS III (SBN: 200949)
tspeiss@buchalter.com
C. DANA HOBART (SBN: 125139)
dhobart@buchalter.com
MANCY PENDERGRASS (SBN: 252705)
mpendergrass@buchalter.com
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-1730
Telephone: 213.891.0700
Fax: 213.896.0400

Attorneys for Plaintiffs,
MICHAEL ANDREW ROBINSON
and GRABBA LEAF, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ANDREW ROBINSON, an individual, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>BEST PRICE DISTRIBUTORS, LLC, a California limited liability company, doing business as WESTERN WHOLESALE and as QUICK TOBACCO WHOLESALE, et al.,<br><br>Defendants. | Case No. 2:21-cv-06689-RGK-(JCx)<br><br>Action Commenced August 18, 2021<br><br>**MOTION IN LIMINE NO. 4 TO PRECLUDE EVIDENCE OR ARGUMENT OF THE CLAIM THAT GRABBA LEAF PRODUCTS ARE 100%NATURAL**<br><br>The Hon. R. Gary Klausner<br>Courtroom 850<br><br>Trial Date: November 8, 2022 |

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on November 8, 2022, at 8:30 a.m., or as soon thereafter as this matter may be heard, in the courtroom of the Honorable R. Gary Klausner, located at the Roybal Federal Building and U.S. Courthouse, 255 East Temple Street, Los Angeles, CA 90012, Courtroom 850, 8th Floor, Plaintiffs Michael Andrew Robinson and GRABBA LEAF, LLC will and hereby do move this Court to exclude the issue of (and evidence, arguments, or reference in opening statement thereto) that Plaintiffs have alleged or have otherwise claimed that "Grabba Leaf's products sold under the GRABBA LEAF Marks are 100 percent

natural and do not have any additives, chemicals, or preservatives" and that they are "reliably pure, fresh, wholesome products."

This Motion is made upon the grounds that any assertion made by Plaintiffs that Grabba Leaf's products are natural, pure, and do not contain any additives, chemicals, or preservatives are not relevant to any claim or defense in this case, and should therefore be excluded.  Fed. R. Evid. 402.  Likewise, such evidence should also be excluded under Federal Rule of 403 as its probative value is outweighed by its prejudicial and would waste time.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Declaration of Thomas J. Speiss, III filed concurrently herewith, all of the pleadings and other documents on file in this case, all other matters of which the Court may take judicial notice, and any further argument or evidence that may be received by the Court at the hearing.

This motion is made following a meet and confer letter sent to defense counsel on September 21, 2022 pursuant to L.R. 7-3.  The parties were unable to discuss telephonically or in person prior to the filing of this motion.  However, the parties have a scheduled this conference for September 27, 2022, at which time they will attempt to resolve the matter.  Should the parties reach such a resolution, Plaintiffs' counsel will timely inform the Court.

DATED:  September 23, 2022

BUCHALTER
A Professional Corporation

By: _____
THOMAS J. SPEISS III
C. DANA HOBART
MANCY PENDERGRASS
Attorneys for Plaintiffs,
MICHAEL ANDREW ROBINSON and
GRABBA LEAF, LLC

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Court should preclude Defendants, their counsel, and witnesses from offering evidence, argument, or mentioning in opening statement any reference to assertions or allegations made by Plaintiffs Grabba Leaf, LLC, and Michael Robinson that Grabba Leaf tobacco products are 100% natural, pure, fresh, and wholesome products that do not have any additives, chemicals, or preservatives (hereafter, collectively referred to as the "Product Attributes").

As the Product Attributes are not essential or necessary to prove claims of trademark and statutory infringement, Plaintiffs do not intend to present any argument or evidence at trial that Grabba Leaf is 100% natural, pure, fresh, wholesome, and free of any additives, chemicals, or preservatives. After all, this is not an FDA case that is litigating product safety. Nor do Plaintiffs intend to offer any evidence or argument that pesticides or heavy metals in tobacco leaf or wrap products present significant health risks to purchasers of those products. None of these Product Attributes are material to any elements of Plaintiffs' claims.

Defendants have no basis upon which to seek to admit the Product Attributes because their counterclaim for false advertising has been dismissed. Nevertheless, Defendants have indicated that they still intend to use claims about the Product Attributes in support of their unclean hands affirmative defense. As set forth below, however, the Product Attributes are not material to an unclean hands defense, either for trademark infringement or for copyright infringement.

Finally, even if the Product Attributes were relevant to any claim or defense (which they are not), such evidence is more prejudicial than probative and should be excluded under Rule 403. Such evidence would invite the jury to reach a verdict not based on whether Defendants used Plaintiffs' marks, but on whether Grabba Leaf's products are good or healthy, or whether statements about the Product Attributes are accurate. It would invite the jury to convert the infringement

claims into false advertising claims which the Court has already dismissed. And it would invite the jurors to reach a determination based on their views of tobacco, not on the trademark and copyright principles actually at issue in this action.

Accordingly, the Court should preclude Defendants from offering evidence, or argument, or making mention in opening statements, of the Product Attributes.

## II. FACTUAL STATEMENT

Plaintiffs allege claims for copyright and trademark infringement, all related to Defendants' copying of GRABBA LEAF marks and packaging from February, 2021 on.

The First Amended Complaint ("FAC") (ECF No. 72) contains the following background statements which are not necessary to state or prove the claims here, and which statements are not set forth on the product packaging for Grabba Leaf's products at issue:

> 1. "Grabba Leaf's products sold under the GRABBA Marks are 100 percent natural and do not have any additives, chemicals, or preservatives." (ECF No. 72, ¶18).
> 2. Grabba Leaf products have acquired good will among consumers "and as an assurance of reliably pure, fresh, wholesome products." (ECF No. 72, ¶19).

In connection with previous briefing in this action, Mr. Robinson submitted a declaration stating "Grabba Leaf is 100 percent natural and does not have any additives, chemicals, or preservatives." (ECF No. 12, ¶4).

During his deposition, Mr. Robinson was questioned about these claims and responded, explaining that what he meant was that Grabba Leaf, once it received the tobacco, uses only water in its processing:

> Q  So paragraph 4 of your declaration, you say
> Grabba Leaf is 100 percent natural and does not contain
> any chemicals. Now, are you sticking by that? It is

| | |
|---|---|
| 1 | your claim? |
| 2 |     A   We are.  So what that should say is that |
| 3 | Grabba Leaf is 100 percent natural.  There is no added |
| 4 | chemicals or preservatives.  Grabba Leaf rigorously |
| 5 | inspects and selects tobacco for Grabba Leaf from the |
| 6 | finest tobacco available, ensuring a smooth smoke from |
| 7 | beginning to end. |
| 8 |     Q   So you are just saying something that's not in |
| 9 | your declaration.  Okay?  So do you claim that Grabba |
| 10 | Leaf products have no chemicals? |
| 11 |     A   ***No, we put nothing on our product.  In our*** |
| 12 | ***process, we don't put anything***. |
| 13 |     Q   That's not the question.  Do you claim that |
| 14 | your product does not have any chemicals in it? |
| 15 |     A   So there's a warning on here about nicotine. |
| 16 |     Q   Please, sir, yes or no.  Other than |
| 17 | nicotine -- Correct, you are right about that, to point |
| 18 | that out.  Other than nicotine, does it have -- |
| 19 |     A   There are no added chemicals.  There are some |
| 20 | natural chemicals that are grown in tobacco.  You know |
| 21 | what I mean? |
| 22 |     Q   No.  No.  Wait.  Are pesticides natural |
| 23 | chemicals found in tobacco? |
| 24 |     A   No. |
| 25 |     Q   Okay. |
| 26 |     A   Yes. |
| 27 | (Speiss Decl., **Ex. 14** (Michael Robinson Depo. (Vol. 1), 51:4-52:7).) (Emphasis |
| 28 | added.) |

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 72897997

Accordingly, this motion is brought to preclude Defendants from mentioning or offering statements in the complaint or in the Robinson declaration that Grabba Leaf's products are "100% natural" and contain no additives, preservatives or chemicals, or have acquired secondary meaning as a result.[1]

### III. LEGAL ARGUMENT: THE PRODUCT ATTRIBUTES ARE IRRELEVANT TO ANY CLAIM OR DEFENSE IN THIS ACTION

Only relevant evidence is admissible. Fed. R. Evid. 402. "Evidence is relevant if: (a) if has any tendency to make a fact more or less probable than it would be without the evidence;" and "(b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

#### A. The Elements Of Trademark And Copyright Infringement Claims Do Not Depend On, And Do Not Require, Proof That Any Product At Issue Is Or Is Not Natural.

Plaintiffs assert claims for statutory copyright and trademark infringement pursuant to 17 U.S.C. §§ 101 et seq. and 15 U.S.C. §§ 1114 and 1125 et seq. based on registered copyright and trademark registrations, and related claims.

The elements for copyright infringement are (1) plaintiffs ownership of a valid copyright and (2) defendants copying original expression from the copyrighted work. Ninth Cir. Model Instr. No. 17.5.

The elements of a claim for trademark infringement are (1) a valid, protectable trademark; (2) plaintiff's ownership of the trademark; and (3) the defendants' use, without consent in a manner likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods.[2] (Ninth Cir. Model Instr. No. 15.6.)

---

[1] Even if secondary meaning were an issue here (and it is not because the marks are registered), secondary meaning has to do with identification of product with the producer, not with the inherent quality of the product. *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1015 (9th Cir. 1985).
[2] The complaint alternatively asserts a claim for common law trademark infringement. Such a claim arises if the plaintiff does not have a registered mark, and in addition to proving the above elements a plaintiff must prove that it has priority use of the mark. *Sebastian Brown Prods., LLC v. Muzooka, Inc.*, 143 F.

The FAC also asserts a claim for vicarious and/or contributory copyright infringement. One who, with knowledge of infringing activity, either induces, causes or contributes to the copyright infringement of another may be liable for contributory infringement. *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004) (collecting cases). One who enjoys a direct financial benefit from another's infringement, and had the right and ability to supervise such activity, may be liable for vicarious infringement. *Ibid*.

None of these claims require proof of secondary meaning, or proof of the attributes of a product. These claims are only concerned with whether there is a copyright or trademark, whether it is valid (and registrations, as here, carry a presumption of validity) and whether an allegedly infringing product looks or appears sufficiently similar to confuse customers.

The Product Attributes have nothing to do with whether Defendants counterfeited the trademarks or copyright registrations at issue.

### B. There Is No Claim Or Defense In This Action To Which The Product Attributes Have Any Relevance

Plaintiffs anticipate that the Defendants may assert that the Product Attributes are relevant to issues other than Plaintiffs' claims. Defendants brought a counterclaim for false advertising. (ECF No. 30, 9-15.) However, the Court granted Plaintiffs' motion for judgment on the pleadings and dismissed the counterclaim. (ECF No. 112.) Thus, there is no pending counterclaim for false advertising, so the statements cannot be relevant to the now dismissed claim.

---

Supp. 3d 1026, 1039 (N.D. Cal. 2015); *Kythera Biopharmaceuticals, Inc. v. Lithera, Inc.*, 998 F. Supp. 2d 890, 897 (C.D. Cal. 2014). The only remaining claim in the complaint, for unfair competition under California law, does not make the Product Attributes relevant either. The Ninth Circuit has "consistently held that state common law claims of unfair competition . . . are 'substantially congruent] to claims made under the Lanham Act." *Id*.

1   Plaintiffs further anticipate that the Defendants will claim that the Product
2   Attributes are relevant to an unclean hands affirmative defense.  That argument fails
3   as well.
4   While "unclean hands" is a defense to a Lanham Act infringement suit, a
5   defendant may not simply assert or offer evidence that the other party has acted
6   badly in some way.  *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.,* 826 F.2d 837,
7   847 (9th Cir. 1987).  Instead, a defendant must demonstrate by clear and convincing
8   evidence (1) that the plaintiff's conduct is inequitable; and (2) that the conduct
9   relates to the subject matter of the plaintiff's claims. *Ibid*.
10  In a trademark case, a defendant pursuing an unclean hands defense must
11  assert and prove that the allegedly wrongful conduct involved conduct obtaining the
12  trademark and use of the trademark with the intent to deceive consumers.  *Japan*
13  *Telecom, Inc. v. Japan Telecom America Inc*., 287 F.3d 866, 870 (9th Cir. 2002)
14  (citation omitted). "To make out an unclean hands defense, a trademark defendant
15  'must demonstrate that the plaintiff's conduct is inequitable and that the conduct
16  relates to the subject matter of its claims.'" *Ibid*. (citation omitted).  To show that a
17  trademark plaintiff's conduct is inequitable, "defendant must show that plaintiff
18  ***used the trademark*** to deceive customers." *Ibid*. (emphasis added.)
19  The Product Attributes do not qualify.  They are statements made in
20  pleadings and are not part of the marks or the artwork.  The Product Attributes also
21  are not necessary to prove the claims at issue and they are ***not*** directly related the
22  claims of infringement or to the use of the trademarks or the artwork for the
23  copyright.  (See Speiss Decl., **Exs. 3, 5, 7, 12** and **13**.) Moreover, as explained by
24  Mr. Robinson in his deposition testimony, the Product Attributes refer only to
25  Grabba Leaf's processing, using only water, so the statements cannot be said to be
26  intentional statements intended to deceive.  (*Id*. at **Ex. 14**, pp. 51:4-52:7.)
27  Proof in a copyright case is similar. A defendant must prove that the plaintiff
28  is guilty of conduct involving fraud or deceit, or bad faith directly related to the

claims, that the conduct injured the defendant, and affects the balance of the equities between the parties. *Purzel Video GmbH v. St. Pierre*, 10 F. Supp. 3d 1158, 1169 (D. Colo. 2014); *Tiffany Design, Inc. v. Reno-Tahoe Specialty, Inc.*, 55 F. Supp. 2d 1113, 1122-23 (D. Nev. 1999) (the defense is rarely recognized in a copyright infringement case). The defense applies only where it directly relates to the right asserted by Plaintiff. (*Ibid.*) Here, that is the right to be free from the unauthorized use of Plaintiffs' copyright. In *Tiffany*, the court rejected an unclean hands defense where the defendants claimed that the plaintiff had previously infringed defendant's mark in a prior copyright registration. The Court explained that even if one assumed this were true, it was unrelated to the issue of whether the plaintiffs could protect their copyright for images registered subsequently. (*Id.* at p. 1123.)

The same is true here. The Product Attributes have nothing to do with the validity of the trademarks or copyrights at issue. Thus, the existence of any affirmative defense of unclean hands cannot justify introduction of the Product Attributes.

### C. The Prejudicial Effect Of Grabba Leaf's Product Attributes Outweighs Any Probative Value Such Statements May Have.

Even if the Product Attributes had any relevance to the claims at issue (which they do not), the Court may exclude the Product Attributes if their "probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. District courts have "wide discretion" to determine admissibility under Rule 403. *Sprint/United Mgmt. Co. v. Mendelsohn* (2008) 552 U.S. 379, 384. "Once the probative value of a piece of evidence is found to be substantially outweighed by the danger of unfair prejudice, there is no other evidentiary rule that can operate to make that same evidence admissible." *United States v. Benavidez-Benavidez*, 217 F.3d 720, 725

(9th Cir. 2000).

Here, evidence of the Product Attributes is outweighed by unfair prejudice. It would invite the jury to reach a verdict not based on whether Defendants used Plaintiffs' marks, but on whether Grabba Leaf's products are good or healthy or whether Plaintiffs' alleged claims about its products are accurate (e.g., natural, pure). It would invite the jury to convert the infringement claims into false advertising claims which the Court has already dismissed. And it would invite the jurors to reach a determination based on their views of tobacco, not on the trademark and copyright principals at issue. Doing so would be impermissible under Rule 402 and would be unduly prejudicial under Rule 403.

## IV.   CONCLUSION

Based on the foregoing, the Court should issue the limine order as requested and exclude the issue of (and evidence, arguments, or reference in opening statement thereto) that Plaintiffs have alleged or have otherwise claimed that "Grabba Leaf's products sold under the GRABBA LEAF Marks are 100 percent natural and do not have any additives, chemicals, or preservatives" and that they are "reliably pure, fresh, wholesome products."

DATED:  September 23, 2022

BUCHALTER
A Professional Corporation

By: _____
THOMAS J. SPEISS III
C. DANA HOBART
MANCY PENDERGRASS
Attorneys for Plaintiffs,
MICHAEL ANDREW ROBINSON and
GRABBA LEAF, LLC