BUCHALTER
A Professional Corporation
THOMAS J. SPEISS III (SBN: 200949)
tspeiss@buchalter.com
C. DANA HOBART (SBN: 125139)
dhobart@buchalter.com
MANCY PENDERGRASS (SBN: 252705)
mpendergrass@buchalter.com
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-1730
Telephone: 213.891.0700
Fax: 213.896.0400

Attorneys for Plaintiffs,
MICHAEL ANDREW ROBINSON
and GRABBA LEAF, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ANDREW ROBINSON, an individual, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>BEST PRICE DISTRIBUTORS, LLC, a California limited liability company, doing business as WESTERN WHOLESALE and as QUICK TOBACCO WHOLESALE, et al.,<br><br>Defendants. | Case No. 2:21-cv-06689-RGK-(JCx)<br><br>Action Commenced August 18, 2021<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE FOLLOWING MOTIONS IN LIMINE BY DEFENDANTS:**<br><br>**NOS. 10 (EXCLUDING TESTIMONY OF J. MICHAEL MOORE) AND**<br><br>**NO. 11 (EXCLUDING TESTIMONY OF KEVIN M. READ)**<br><br>**[COMBINED DECLARATION AND EXHIBITS FILED CONCURRENTLY]**<br><br>The Hon. R. Gary Klausner<br>Courtroom 850<br><br>Trial Date: November 8, 2022 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

PAGE(S)

I. INTRODUCTION ...................................................................................5

II. FACTUAL STATEMENT.......................................................................5

    A. The Complaint And The Discovery In This Action Show That The Parties Have Directly Litigated The Tactile And Olfactory Characteristics Of The Genuine And Counterfeit Tobacco Leaves In This Litigation. ...................................................................5

    B. All Parties Have Had Access To Genuine And Counterfeit Leaves To Inspect, And To Test, And Discovery Shows That All Parties Have Used That Opportunity To Test The Leaves. ...........................7

    C. Plaintiffs Provided Reports, and Supplemented those Reports Timely ...........................................................................................7

        1. The Time Periods At Issue........................................................7

        2. The J. Michael Moore Report And His Rebuttal To The Fitsanakis Report. ....................................................................8

        3. Dr. Moore's Supplemental Report ..........................................10

        4. The Kevin M. Read Report and Supplemental Report.............10

    D. Defendants Do Not Claim that They Were Prejudiced, and They Have Not Been.........................................................................11

III. LEGAL ARGUMENT............................................................................12

    A. Rule 26 as it Applies to Experts. ..............................................12

    B. Defendants May Not Now Seek To Strike Dr. Moore's Initial Report On The Grounds That They Claim It Is Inadequate. .............13

    C. Dr. Moore's And Mr. Read's Supplemental Reports Provide Entirely Permissible Additional Detail And Thus Properly Supplement Their Initial Reports ......................................................16

    D. Defendants' Contention That the Subject Matter of Testimony In The Initial Reports Lacks Relevance Is Ill Taken.............................17

    E. Defendants Do Not Make Out a *Daubert* Challenge .......................17

    F. The Testimony Is Not Cumulative. ................................................18

IV. CONCLUSION ....................................................................................19

1
2

## TABLE OF AUTHORITIES

3                                                                      **Page(s)**

4  **Federal Cases**

5  *Beller ex rel Beller v. United States,*
6      221 F.R.D. 689 (D.N.M. 2003) ...................................................................16

7  *Cheese Sys. v. Tetra Pak Cheese & Powder Sys.,*
8      725 F.3d 1341 (Fed.Cir. 2013) .................................................................16

9  *Cohmia v. Ardent Health Services, LLC,*
       254 F.R.D. 426 (N.D. Okla. 2008) .........................................................16
10

11  *EmersonElec. Co. v. Suzhou ClevaElec. ApplianceCo.,*
       2015 WL 2176964 (E.D. Mo. May 8, 2015) ......................................15, 16
12

13  *Harvey v. District of Columbia,*
       949 F.Supp. 874 (D.D.C. 1996) .............................................................13
14

15  *Harvey v. THI of New Mexico at Albuquerque Care Ctr.,*
       LLC, 2015 WL 13667111 (D.N.M. Mar. 31, 2015) ...........................13
16

17  *Higley v. Cessna Aircraft Co.,*
       2011 WL 13124622 (C.D. Cal. Dec. 12, 2011) .............................12, 13

18  *InfoSpan, Inc. v. Emirates NBD Bank PJSC,*
19      2016 WL 8849699 (C.D. Cal. June 8, 2016) .....................................15

20  *Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.,*
       2018 WL 1569762 (N.D. Cal. Mar. 30, 2018).....................................15
21

22  *Kumho Tire Co. v. Carmichael,*
       526 U.S. 137 (1999)...............................................................................18
23

24  *Lazos v. City of Oxnard,*
       2009 WL 10699666 (C.D. Cal., July 30, 2009.)................................12
25

26  *Merancio v. Smith & Nephew, Inc.,*
       2017 WL 2257124 (E.D. Cal. May 23, 2017) ....................................13

27  *nCube Corp. v. SeaChange Int'l, Inc.,*
28      809 F.Supp.2d 337 (D. Del. 2011) .....................................................16

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

3

BN 73208896

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*United States v. Skillman*,
   922 F.2d 1370 (9th Cir. 1990) ..................................................................19

*Wertz v. Target Corp.*,
   2009 WL 635655 (E.D. Cal. 2009) ........................................................13

*Wolsey, Ltd. v. Foodmaker, Inc.*,
   1998 WL 2001059 (S.D.Cal. Dec. 3, 1998) .........................................13

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
   259 F.3d. 1101 (9th Cir. 2001) ..............................................................15

**Rules**

Fed.R.Civ.P. Rule 26 ...............................................................................12, 13

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 73208896

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION**

3              The Court should deny Defendants' MIL Nos. 10 and 11 for numerous

4    reasons.  First, the look and feel of the product packaging, including what is, and

5    isn't on the product packaging, as well as signs of counterfeiting, have always been

6    an issue in this case, as has the tactile and olfactory characteristics of the tobacco

7    leaf in the products.  Both parties had samples of the packaging and the leaf and

8    were free to test, to sample, and to send the products to consultants and experts (and

9    did).  Second, Plaintiffs timely provided initial, supplement and rebuttal reports

10   relating to the counterfeit nature of the Defendants' product, and differences

11   between products.  Third, as affirmatively shown below, Defendants have not

12   suffered prejudice from any alleged deficiencies in any report; additionally,

13   Defendants have not demonstrated any prejudice.

14             Perhaps recognizing that an order precluding J. Michael Moore and Kevin

15   Read from testifying is not appropriate, Defendants alternatively request a *Daubert*

16   hearing.  But Defendants do not identify any basis for a hearing; they appear simply

17   to want a court-supervised general depositions before trial starts.  Neither *Daubert*

18   nor its progeny contemplate that pre-trial hearings for all experts take place simply

19   because a party requests it.

20   **II.    FACTUAL STATEMENT**

21          **A.    The Complaint And The Discovery In This Action Show That The**

22                 **Parties Have Directly Litigated The Tactile And Olfactory**

23                 **Characteristics Of The Genuine And Counterfeit Tobacco Leaves**

24                 **In This Litigation.**

25             Plaintiffs' original complaint and the operative First Amended Complaint

26   ("FAC") both allege, among other things, claims for trademark and copyright

27   infringement and counterfeiting. ECF Nos. 1 and 72. They allege, among other

28   things, that Defendants "are selling and offering for sale counterfeit, inferior

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

5

1  quality" whole leaf tobacco products in packaging that duplicates and infringes

2  Plaintiffs' registered trademarks. ECF No. 1 and 72, ¶1; see also ECF No. 1 ¶ 19

3  and Dkt. 72, ¶20 (Plaintiffs learned of complaints that tobacco leaf in ostensible,

4  but counterfeit, packaging was "of markedly inferior quality"); Dkt. 1, ¶ 20-21;

5  Dkt. 72, ¶21-22 (providing some investigation into counterfeit products).

6      The FAC thus places in issue both (a) a comparison of the nature, quality and

7  characteristics of the packaging used for the genuine and counterfeit tobacco

8  products, and the use of the GRABBA LEAF registered trademarks and copyrights;

9  (b) the touch, feel, flexibility and smell of the actual tobacco leaf in the genuine

10 versus the counterfeit tobacco leaf; and (c) the nature of counterfeiting and how to

11 spot it.

12     After filing the complaint, Plaintiffs moved for and obtained a preliminary

13 injunction from this court. ECF Nos. 52, 76. Plaintiffs offered numerous

14 declarations and exhibits in support. ECF Nos. 52-1 through 52-4.

15     In deposition, Michael Robinson testified about the low quality of the cigar

16 wrap in the counterfeit product, responding to direct questions from defendants.

17 Defense counsel who acknowledged that the quality of the counterfeit issue was an

18 issue when he observed that Plaintiffs had consistently explained that the

19 "counterfeit Grabba Leaf Wholesale Leaf smells terrible, its terrible tobacco."

20 Robinson responded to questioning on the subject at length. (Ex. 1:Vol. 1,

21 Robinson Depo., p. 30:7-14, 30:24-31:2, 33;8-17; 34-35; Ex. 2:Vol. 2, Robinson

22 Depo., p. 135:1-6; 139:15-19, 269:1-270:2)

23     In his deposition, percipient defendant Ahmed contended that it was

24 "difficult" to know "with a hundred degree or with 100 percent certainty which one

25 is counterfeit an which one is genuine," presumably meaning that he did not see a

26 difference in the appearance or smell of the two products (genuine or

27 counterfeit).(Ex. 3:Ahmed Depo., p. 118:13-16.)

28

1    Of course, defendants were and are free to take the position that there is no

2    difference in contrapose to Plaintiffs' position that there are differences in the

3    visual appearance and fragrance between the genuine and counterfeit leaf. This just

4    shows that the issue was fully joined.

5    Further evidence that the issue was joined: In discovery, Defendants asked,

6    for writings that relate or refer to (a) whether genuine GRABBA LEAF was

7    selected from the finest tobacco leaves available (b) inspection and selection of

8    leaves for genuine GRABBA LEAF products, and (c) the manner of selection of

9    genuine GRABBA LEAF leaves. (Ex. 4: Defendants first set of document demands,

10   demand nos. 2-4.)  In all, Plaintiffs produced over 6,870 pages of documents in

11   discovery. (Speiss Decl. ¶4.)

12   **B.    All Parties Have Had Access To Genuine And Counterfeit Leaves**

13   **To Inspect, And To Test, And Discovery Shows That All Parties**

14   **Have Used That Opportunity To Test The Leaves.**

15   In discovery, numerous packages of both the genuine and the counterfeit

16   product were produced. (Speiss Decl., ¶4) Each side had access to the product and

17   the ability to test it, as well as to inspect it for tactile and olfactory differences, and

18   to hire experts to address these issues. Defendants were neither prevented nor

19   precluded from doing so and had the independent right to do so.

20   **C.    Plaintiffs Provided Reports, and Supplemented those Reports**

21   **Timely**

22   **1.    The Time Periods At Issue**

23   The Court's scheduling order set a fact discovery cut-off date for August 11,

24   2022.  It did not set a cut-off date for expert discovery. Dkt. 41.

25   The scheduling order set the pretrial conference for October 24, 2022.

26   The Court's civil trial order (last amended in 2010) addresses expert

27   witnesses and reports. It states:

28

BN 73208896

1  If expert witnesses are to be called at trial, the parties

2  shall exchange at the Final Pre-Trial Conference short

3  narrative statements of the qualifications of the expert and

4  the testimony expected to be elicited at trial. If reports of

5  experts to be called at trial have been prepared, they shall

6  be exchanged at the Final Pre-Trial Conference, but shall

7  not substitute for the narrative statements required.

8  Plaintiffs provided all their reports (initial, supplement, and rebuttal) before

9  the Pretrial Conference invited Defendants to propose dates upon which they would

10  like to take the depositions of all of Plaintiffs' experts before the Pretrial

11  Conference, in compliance with the Court's civil trial order.

12  **2.      The J. Michael Moore Report And His Rebuttal To The**

13  **Fitsanakis Report.**

14  The August 10, 2022 Report of J. Michael Moore stated, among other things,

15  that he would address tobacco farming, including tobacco leaf quality and the types

16  of leaves harvested domestically and internationally, and that he would testify that

17  genuine Grabba Leaf tobacco products are grown in the U.S. while lower quality

18  tobacco leaf is grown outside the U.S., for example in China. He also stated that he

19  would testify about the adoption of agricultural standards and practices used for

20  tobacco crops.

21  Defendants served a report by their expert witness, Vanessa Fitsanakis, PhD.,

22  demonstrating that Defendants' knew and understood that the comparative

23  characteristics of the genuine and counterfeit tobacco leaf were at issue as well as

24  the agricultural standards that applied. The Fitsanakis Report describes that there

25  are international guidelines for pesticides and heavy metals used by the Cooperation

26  Center for Scientific Research Relative to Tobacco (CORESTA), which guidelines

27  are used for tobacco.[1]

28  ───────────────

[1] As an aside: despite this recognition, Fitsanakis relied on laboratory testing that

1    In her report, Fitsanakis also stated that the source of tobacco leaf could not

2    be determined (again demonstrating that the Defendants knew and understood that

3    the sourcing of the competing tobacco leaf was an issue they were to address),

4    implying that only the levels of cadmium (which is naturally occurring in soils) can

5    determine this, and there is too much variation in cadmium levels to make that

6    determination. (Report, p. 16.)

7    Dr. Moore submitted a rebuttal to the Fitsanakis report. He agreed that

8    CORESTA guidelines address levels of chemicals, heavy metals, etc. in tobacco

9    leaf and agreed that heavy metals occur naturally in soil. Thus, the need for such

10    testimony (including testimony concerning CORESTA standards and their

11    application here) is not a surprise to Defendants nor is there any prejudice.

12    Dr. Moore also rebutted Fitsanakis "opinions" concerning whether Grabba

13    Leaf genuine product "failed" tests by the laboratory testing that she referenced in

14    her report because those tests did not use the applicable CORESTA standards that

15    even Fitsanakis agreed were the proper standards to use. Since both the Drs. Moore

16    and Fitsinakis have stated that CORESTA standards apply, there is no prejudice or

17    surprise in this testimony. Further, Defendants have served a subpoena for the

18    deposition of Dr. Moore and he will be made available for deposition.

19    Dr. Moore further rebutted Fitsanakis' opinion that the source of the products

20    could not be determined. He explained that the source could be determined in two

21    ways:  first, by the levels of MH in tobacco leaf (which was prevalent in tobacco

22    grown in the US to control sucker growth in tobacco after topping, and not

23    prevalent in tobacco out of the United States);[2]  second, he stated and explained his

24    sets different standards than those set by CORESTA – the latter of which she states
are the controlling standards.  For this reason, Plaintiffs have moved to exclude her
25    testimony based on her report that relies on inapplicable testing limits. Plaintiffs
will not repeat arguments made concerning the deficiencies in theFitsanakis Report.
26    Those were addressed in Plaintiffs' MIL No. 3. ECF No. 130.

[2] It appears that the Defendants, or their expert, elected not to test for MH when
27    they tested the genuine and counterfeit leaves.  But they were and remain free to do
so if they believe that the test results relied on by Mr. Moore are not accurate in
28    order to address and challenge his opinion.  Hence they have not been harmed or

BN 73208896

1   opinion that comparing the level of cadmium in the competing products (genuine

2   and counterfeit) including based on the very tests undertaken during discovery, the

3   levels of cadmium could indeed indicate source of the leaves, such that the levels of

4   the cadmium in the counterfeit samples show that the counterfeit leaf was grown

5   out of the country.

6                **3.    Dr. Moore's Supplemental Report**

7        On the same day that the Moore Rebuttal Report was submitted (September

8   16), Plaintiffs submitted a Moore Supplement Report providing additional detail on

9   Dr. Moore's opinions regarding the tobacco leaf quality of the genuine and

10  counterfeit tobacco leaves, comparing the scent and the tactile characteristics of

11  both.

12               **4.    The Kevin M. Read Report and Supplemental Report**

13       The August 10, 2022 report of expert witness Kevin Read addressed the

14  characteristics and factors one looks to do determine if goods are counterfeit,

15  including assessment of the packaging differences, the differences in tobacco

16  composition, and the inconsistencies in the packaging regarding genuine and the

17  counterfeit tobacco leaves at issue. He noted that the counterfeit nature of

18  packaging could be assessed by the price charged for goods, spelling and grammar

19  mistakes, quality of printing on the packaging such as blurring, flimsy packaging,

20  missing details (like codes, serial numbers, or model numbers) that generally appear

21  on the original packaging. He stated that his opinion regarding the genuine

22  GRABBA LEAF and the counterfeit focused, among other things, on packaging

23  differences, differences in tobacco composition, and inconsistencies in printing and

24  labeling, inconsistencies in the product seal, product logo differences, and

25  additional terms not used on the authentic product.

26       Mr. Read then supplemented his report to provide additional detail on how

27  these factors show which products are genuine and which are counterfeit

28  prejudiced.

1  (addressing product seal differences, the color of the packaging, the lettering on the

2  contrasting packages, and the differences in sharpness of the product

3  descriptions/lettering on the product packages (i.e. blurring) – part of the same

4  factors addressed in his original report). And, of course, the parties all had

5  packaging of both products to provide to their consultants and possible experts on

6  the issue of the differences in product packaging.

7        Mr. Read's supplemental report also contains reference to the fact that

8  counterfeit merchandise can lead to health and safety problems (in paragraph 12),

9  and then lists examples from the car industry, from electronics, prescription drugs

10  and cosmetics.  In this case he will not be opining on health and safety issues

11  regarding these industries, and to the extent that the motion in limine seeks to

12  preclude him from testifying about this (as opposed to describing his history and

13  experience generally about counterfeiting to show his background and experience

14  so as to provide his other opinions) he will not testify about health and safety issues

15  that have arisen in other industries.

16        **D.    Defendants Do Not Claim that They Were Prejudiced, and They**

17        **Have Not Been**

18        Defendants never previously claimed that any original disclosures were

19  deficient.

20        In their MIL No. 11 (regarding Read) they do not claim or contend that

21  Read's report is deficient, so they cannot preclude testimony on the characteristics

22  and factors one looks to do determine if goods are counterfeit versus genuine, or on

23  the characteristics and factors he used to assess the differences between the genuine

24  GRABBA LEAF and counterfeit products.

25        Defendants only claim (in MIL No. 10) that the Dr. Moore initial report was

26  inadequate.[3]  However, they never moved to compel a more complete statement.

27  _____
[3] Defendants claim that they are prejudiced because they could not attach reports, as
they are marked confidential, but they could have filed the material under seal
28  pursuant to the protective order in this action.  ECF No. 24.

1    In their moving papers in support of MIL Nos. 10 and 11, Defendants do not

2    claim any prejudice or surprise; nor do they state, or explain that they have been

3    prejudiced or how. As set forth below, they have not been.

4    On October 4, 2022, after the Defendants had in their possession original

5    reports, as well as supplements and rebuttal reports, Plaintiffs offered dates for Dr.

6    Moore's deposition on October 19, 20 and 21 over Zoom or in person in Athens,

7    Georgia and for Mr. Read on October 20 or 21 over Zoom or in person in Chicago

8    Illinois. (Speiss Decl., ¶6.)

9    Defendants have only subpoenaed Dr. Moore for deposition. (*Ibid*.)

10   **III.   LEGAL ARGUMENT**

11   **A.    Rule 26 as it Applies to Experts.**

12   Federal Rule of Civil Procedure 26 provides that parties are to disclose

13   experts they expect to call at trial.[4]  For retained experts, the expert is to provide a

14   report. Rule 26(a)(2)(A) and (B). For non-retained experts, a report is not required –

15   all that is required is a short statement of the subject matter of the expected

16   testimony. Rule 26(a)(2)(C).

17   Parties are to make the disclosures "at the times and in the sequence that the

18   court orders." Rule 26(a)(2)(D).

19   Here the Court's civil trial order states that expert disclosures are to be made

20   at the time of the Pretrial Conference. (Section C.1.) *Accord*, *Lazos v. City of*

21   *Oxnard*, 2009 WL 10699666 at *2 (C.D. Cal., July 30, 2009.)(discussing this

22   Court's civil trial order; the order has not been amended since).) Hence there can be

23   no basis to strike a report as untimely if made before the date it is due. *Higley v.*

24   *Cessna Aircraft Co*., 2011 WL 13124622, at *1 (C.D. Cal. Dec. 12, 2011)

25   In the absence of a court order (or stipulation), Rule 26 provides a schedule

26   for disclosure. Rule (a)(2)(D)(i)-(ii)(original reports 90 days before trial; rebuttal

27   reports within 30 days following an opposing party's expert disclosure).

28   _____
[4] All further citation to "Rules" is to the Federal Rules of Civil Procedure.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 73208896

1   Rule 26 further provides that expert reports are to be supplemented when (a)

2   an original disclosure is determined to be incomplete or incorrect, or (b) otherwise

3   has not been made known to the parties during discovery, or as ordered by the

4   court. *Id.* at subd. (a)(2)(E) and at subd. (e); *Harvey v. THI of New Mexico at*

5   *Albuquerque Care Ctr.*, LLC, No. 12-CV-727 MCA/LAM, 2015 WL 13667111, at

6   *3 (D.N.M. Mar. 31, 2015) (denying motion to strike expert testimony).

7   Additionally, a party who contends that an original report is too vague, or

8   inadequate should first move to compel a further disclosure before seeking

9   preclusion sanctions. *Higley*, 2011 WL 13124622, at *1, citing Rule 37(a)(3)(B)

10  and digesting cases, including *Harvey v. District of Columbia*, 949 F.Supp. 874,

11  877 (D.D.C. 1996) (denying defendant's motion to strike plaintiff's expert

12  testimony in the absence of a prior motion to compel adequate disclosure); *Wertz v.*

13  *Target Corp.*, 2009 WL 635655, at *3 (E.D. Cal. 2009) (denying motion to exclude

14  plaintiff's expert testimony where defendant did not first file a motion to compel

15  and emphasizing that "[e]xclusion is a harsh remedy, [the] [i]mposition of [which]

16  because of discovery violations is generally improper absent undue prejudice to the

17  opposing side") (internal quotation omitted); *Wolsey, Ltd. v. Foodmaker, Inc.*, 1998

18  WL 2001059, at *2 (S.D.Cal. Dec. 3, 1998)(denying motion to exclude defendant's

19  expert testimony based on inadequate Rule 26 disclosures where plaintiff had an

20  alternative remedy which did not "unfairly depriv[e] [defendant] of its expert's

21  complete opinion."); *Merancio v. Smith & Nephew, Inc.*, 2017 WL 2257124, at *5

22  (E.D. Cal. May 23, 2017).

23  **B.     Defendants May Not Now Seek To Strike Dr. Moore's Initial**

24  **Report On The Grounds That They Claim It Is Inadequate.**

25  Here, all of the original reports were made months before the Pretrial

26  Conference. If the defendants believed Dr. Moore's was inadequate, or incomplete,

27  then they should have moved to compel a more complete disclosure. (See

28  discussion at Section III.A.) They did not.

1    Separately, defendants have not been prejudiced by any alleged inadequacy,

2  and any alleged deficiencies are justified and/or harmless.

3    Dr. Moore supplemented his report, providing additional information

4  concerning his opinions on the nature and quality of the tobacco leaf products at

5  issue. That information does not constitute a different opinion; rather it is a more

6  complete opinion. His report discusses his analysis of the obvious and apparent

7  differences in the smell and tactile attributes of the genuine and counterfeit leaf.

8  This is not a new issue. As Defendants concede, this was raised in discovery (by

9  Plaintiff, Mr. Robinson); and defendants had samples of both genuine and

10  counterfeit leaf to examine for themselves and to provide to any potential

11  consultants and experts during fact discovery.  They certainly had the information

12  necessary to address the issue and cross-examine Dr. Moore at a deposition or at

13  trial.

14    In other words, there was discovery on this. Defendants own actions show

15  that they knew this would be an issue. Defendants had the ability and opportunity to

16  obtain an expert. They actually recently selected a non-retained expert – Mr.

17  Ahmed – to provide rebuttal opinions, including specifically to refute the opinions

18  of Mr. Robinson "regarding the quality of the Grabba Leaf tobacco products and

19  the alleged counterfeit Grabba Leaf products." (Ex. 5 ¶4 [Ahmed Rebuttal Report.)

20    It is unclear if the defendants claim that other parts of the Moore Report are

21  inadequate – because they do not identify any general or specific inadequacies. If

22  they claim that Dr. Moore's initial report did not provide sufficient detail

23  concerning applicable tobacco standards or guidelines, again:  (a) they did not move

24  to compel a more fulsome statement, (b) they were not prejudiced as evidenced by

25  the fact that their own proffered expert – Vanessa Fitsanakis – discussed the

26  applicable tobacco standards and guidelines – and specifically the CORESTA

27  guidelines for tobacco.

28    Defendants' attempt to exclude Dr. Moore's testimony on the grounds that

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

14

his initial report was inadequate should be denied. The cases on which Defendants rely do not acknowledge or discuss either the case law indicating that Defendants should first have sought a more complete statement (and perhaps the issue was not raised in those cases); moreover those cases are factually inapposite here. *See, e.g., Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d. 1101, 1105 (9th Cir. 2001) (party waited two years after the close of all discovery to provide expert report claiming that they were not sure they would use the expert, and then provided the expert report as a rebuttal report rebutting an opposing expert a year after the opposing expert's report was served)[5]

In addition to having initial, supplemental, and rebuttal reports providing specifics of the proffered opinions, Defendants also were given the opportunity to depose Dr. Moore about his opinions (including the supplemental and rebuttal opinions) and they apparently will do so.

In sum, Defendants have good information about the basis for Dr. Moore's opinions and, independently, were well aware of the issues for trial and already had experts selected and designated.[6] They were not prejudiced in their ability to depose any expert to prepare to do so, or to address the issues on which experts would opine.

---

[5] Other examples: *Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.,* 2018 WL 1569762 (N.D. Cal. Mar. 30, 2018) (expert provided only initial report and never supplemented, and party against whom exclusion was sought did not demonstrate that issue was not prejudicial or was harmless); *EmersonElec. Co. v. Suzhou ClevaElec. ApplianceCo.*, 2015 WL 2176964 at *1-3 (E.D. Mo. May 8, 2015) (disgesting authorities and explaining that only opinions that were entirely new and unexpected, or that contradicted prior report were excluded, opinions that simply gave greater detail concerning opinions are not the subject of exclusion); *InfoSpan, Inc. v. Emirates NBD Bank PJSC*, 2016 WL 8849699, at *2 (C.D. Cal. June 8, 2016) (party could not designate percipient witness as an expert after the percipient witness deposition was taken and after all deadlines for expert disclosure had already passed).
[6] Again, they DO NOT claim that Read's initial report was inadequate.

### C.  Dr. Moore's And Mr. Read's Supplemental Reports Provide Entirely Permissible Additional Detail And Thus Properly Supplement Their Initial Reports

The supplemental reports of both Dr. Moore and Mr. Read did nothing more than provide additional detail regarding prior reports/opinions, making them more complete. (See discussion at Section II.C.2-4.)

Even the case law cited by Defendants' concedes that supplements that flesh out details (as opposed to adding new opinions or contradicting prior opinions) are proper. *Compare EmersonElec. Co., supra,* 2015 WL 2176964 at *1-3 (discussed at fn. 6) with *Cheese Sys. v. Tetra Pak Cheese & Powder Sys*., 725 F.3d 1341, 1355 (Fed.Cir. 2013) (in patent case, new opinions offered by expert after expert discovery deadline had passed were excluded, but not opinions that "simply provided greater detail on prior opinions"); *nCube Corp. v. SeaChange Int'l, Inc*., 809 F.Supp.2d 337, 347 (D. Del. 2011) (denying motion to strike expert opinions because hearing testimony was a reasonable synthesis or elaboration of prior opinions). The reports do not, as did the supplement at issue in *Beller ex rel Beller v. United States*, 221 F.R.D. 689 (D.N.M. 2003), contradict prior reports. [7]

Even if they are not considered true supplements, there is no basis to preclude the testimony these experts offer.  As previously addressed, there is not prejudice or surprise, and Defendants have not established prejudice or harm or surprise.  This is especially so (a) when Defendants have elected not to depose all of Plaintiffs' experts, (b) when they had all the information that they needed to cross-examine these experts in any event, and (c) when they had the products and packaging to examine, test and address with their own experts.

---

[7] Defendants also rely on *Cohmia v. Ardent Health Services, LLC*, 254 F.R.D. 426 (N.D. Okla. 2008).  But in that case, the party that offered inadequate initial reports at the court ordered cut-off date for reports argued that they should be allowed an additional four months to supplement, that the court set a new expert cut-off date, and should continue trial in what was a three year old case that had already been rescheduled once before.  That is not the procedural posture of this case.

BN 73208896

**D.**     **<u>Defendants' Contention That the Subject Matter of Testimony In</u>**
**<u>The Initial Reports Lacks Relevance Is Ill Taken.</u>**

This case is about whether Defendants violated Plaintiffs' registered trademarks and copyrights.  A review and assessment of the packaging between the genuine and counterfeit packaging, how closely it was made to resemble the genuine packaging, and what the difference are, as well as the quality of the leaf contained in them is central to the case, and has always been an issue.  It is no different than a case about trademark or copyright infringement of Rolex watches, for example, or designer-brand luggage, Apple products, or Nike/Adidas sportswear.  Where the differences are small, making it hard for a consumer to discern, someone with more experience can explain differences (in construction, quality, etc).  And the closer the counterfeit is to the genuine, the more likely that the counterfeiter's conduct was willful (which is relevant to damages).

Of course the information is relevant; and it will be helpful to a jury. Defendants do not contend that an "average joe" can discern the difference, especially in product packaging.

**E.**     **<u>Defendants Do Not Make Out a *Daubert* Challenge</u>**

While Defendants generally cite to case law concerning the Court's gatekeeping function, their arguments are entirely abstract and provide no basis for challenging the reliability of any of the opinions.  Defendants do not appear to claim that Dr. Moore lacks the qualifications to give his opinions, and they have his CV, which they could have attached if they wanted to make such a challenge.

The specific argument that the Defendants make is that Mr. Read is not "qualified" to assess the counterfeit nature of the product packaging on the counterfeit products because he is not an expert in tobacco and is not a scientist. His opinions do not require him to be a scientist or a tobacconist.  He is opining about how to determine counterfeit packaging and products, which does not require scientific expertise.  He has wide experience in counterfeit investigations in a host

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 73208896

1  of fields, and Defendants do not claim or suggest otherwise.  His curriculum vitae

2  shows that he has supervised intellectual property cases conducting more than two

3  thousand investigations involving distribution of counterfeit and/or infringing

4  merchandise;  he has assistant state and federal law enforcement agencies with

5  investigations of counterfeit merchandise; has directed investigations that have led

6  to civil or criminal seizures of hundreds of thousands of items bearing counterfeit

7  trademarks, has testified in more than fifty state criminal proceedings and has been

8  qualified as an expert in identifying counterfeit product in such proceedings.

9        He is or has been a member of the following:  the Council of International

10  Investigators, the International Anti-Counterfeiting Coalition, the Cook County

11  Regional Organized Crime (CCROC), Pharma Anti-Counterfeiting, and a past

12  president of the Special Agents Association.  He has provided extensive training to

13  law enforcement and customs inspectors in identification of counterfeits, and has

14  provided counterfeit training to commercial companies, ranging from electronic

15  companies, apparel companies, professional sports, etc.

16        As the Supreme Court has noted, "no one denies that an expert might draw a

17  conclusion from a set of observations based on extensive and specialized

18  experience." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999).

19        The Defendants appear simply to suggest that the Court should hold *Daubert*

20  hearings automatically in advance.  This is and would be a waste of time absent

21  specification of actual problems with the proffered testimony.  The reason parties

22  have the right to take expert depositions is to prevent the Court from having to

23  oversee what amounts to a courtroom deposition.

24        **F.    The Testimony Is Not Cumulative.**

25        While claiming, on the one had that expert testimony is "new", Defendants

26  also claim the opposite, that the testimony (concerning the similarities and contrast

27  in quality of packaging and tobacco leaf) is cumulative of that of Mr. Robinson.

28

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 73208896

1      It is not.  There is a difference, between testimony by a business owner (even

2  one with percipient knowledge) and that of experts on the subject of the counterfeit

3  nature of the Defendants' product. And the testimony by Moore and by Read are

4  not cumulative of one another. Moore does not address product packaging. Read

5  does not address source of tobacco product. Defendants have not made any showing

6  that evidence will be "needlessly cumulative," as required.  *United States v.*

7  *Skillman*, 922 F.2d 1370, 1374 (9th Cir. 1990).  They ask the Court to exclude

8  evidence in advance and in the abstract.  The Court can make this determination in

9  connection with specific testimony as and when it is offered.

10   **IV.   CONCLUSION**

11      For all the reasons set forth above, the Court should deny these two motions

12   in limine.

13   DATED: October 14, 2022

BUCHALTER
A Professional Corporation

By: _____
THOMAS J. SPEISS III
C. DANA HOBART
MANCY PENDERGRASS
Attorneys for Plaintiffs,
MICHAEL ANDREW ROBINSON and
GRABBA LEAF, LLC

BUCHALTER
A Professional Corporation
Los Angeles

BN 73208896