BUCHALTER
A Professional Corporation
THOMAS J. SPEISS III (SBN: 200949)
tspeiss@buchalter.com
C. DANA HOBART (SBN: 125139)
dhobart@buchalter.com
MANCY PENDERGRASS (SBN: 252705)
mpendergrass@buchalter.com
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-1730
Telephone: 213.891.0700
Fax: 213.896.0400

Attorneys for Plaintiffs,
MICHAEL ANDREW ROBINSON
and GRABBA LEAF, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHAEL ANDREW ROBINSON, an individual, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>BEST PRICE DISTRIBUTORS, LLC, a California limited liability company, doing business as WESTERN WHOLESALE and as QUICK TOBACCO WHOLESALE, et al.,<br><br>Defendants. | Case No. 2:21-cv-06689-RGK-(JCx)<br><br>Action Commenced August 18, 2021<br><br>**OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 4: TO EXCLUDE EVIDENCE OF DEFENDANTS' ALLEGED ACTIVITIES IN FLORIDA**<br><br>The Hon. R. Gary Klausner<br>Courtroom 850<br><br>Trial Date: November 8, 2022 |

**TABLE OF CONTENTS**

**PAGE(S)**

I.  INTRODUCTION ................................................................................................4

II. FACTUAL STATEMENT...................................................................................4

   A. Defendants' Market Opportunity and Formation of Statewide Distribution in South Florida. ...............................................4

   B. Defendants' Sale Of Counterfeit GRABBA LEAF Products. ..............6

   C. Defendants' Profits From Its Florida Counterfeiting Activities. ..........8

III. LEGAL ARGUMENT..........................................................................................9

   A. Documents And Evidence Produced In Discovery Can Be Used At Trial. ..................................................................................9

   B. Defendants Cannot Exclude Documents That *Were* Produced During Discovery On The Basis That They Were *Not* Produced In Discovery, Nor Limit Evidence Of Florida Activities. .......................10

   C. Records Available Through Worldbase And D&B Duns Market Identifiers Plus Should Not Be Excluded On The Basis Of Hearsay. ..................................................................................................12

IV. CONCLUSION ..................................................................................................14

# TABLE OF AUTHORITIES

**PAGE(S)**
**Federal Cases**

*Continental Lab. Prods., Inc. v. Medax Int'l, Inc.*,
  195 F.R.D. 675 (S.D. Cal. 2000)..................................................................9, 10

*Harley v. Nesby*,
  No. 08 CIV. 5791 (KBF) (HBP), 2011 U.S. Dist. LEXIS 142359,
  2011 WL 6188718 (S.D.N.Y. 2011) ..................................................................10

*Keener v. United States*,
  181 F.R.D. 639 (D. Mont. 1998)..........................................................................9

*Miller v. Safeco Title Ins. Co.*,
  758 F.2d 364, 369 (9th Cir. 1985)........................................................................9

*Price v. Trans Union, L.L.C.*,
  839 F.Supp.2d 785 (E.D. Pa. 2012).....................................................................12

*Risinger v. SOC, LLC*,
  306 F.R.D. 655, 2015 U.S. Dist. LEXIS 38687 (D. Nev. 2016) .........................9

*U.S. v. Beecroft*,
  608 F.2d 753 (9th Cir. 1979)........................................................................13, 14

**Rules**

Fed. R. Evid. 801(c)...................................................................................................13

Fed. R. Evid. 802 ......................................................................................................13

Fed. R. Evid. 803 ......................................................................................................13

Fed. R. Evid. 803(6)............................................................................................13, 14

Federal Rule of Civ. P. 26...................................................................................9, 12

Federal Rule of Civ. P. 26(a)....................................................................................10

Federal Rule of Civ. P. 26(a)(1)(A)..........................................................................11

Federal Rule of Civ. P. 37(c)(1)...............................................................................10

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendants' Motion in Limine No. 4 ("Motion") should be denied because (1) Defendants' activities in Florida are relevant to establishing their counterfeiting activity and willfulness; (2) the documents that are the subject of the Motion were, contrary to Defendants' assertion, produced in discovery; and, (3) the documents are not hearsay and are admissible as impeachment evidence.

## II. FACTUAL STATEMENT

### A. Defendants' Market Opportunity and Formation of Statewide Distribution in South Florida.

On March 17, 2020, just after the COVID-19 national emergency was declared, Anthony McRae, the Sales and Marketing Manager for Grabba Leaf, sent correspondence to Grabba Leaf's distributors concerning the COVID-19 outbreak. Mr. McRae stated as follows,

> Good afternoon. Please note that we have sent you an invoice based on your last invoice. Kindly make a payment as we are in an uncertain period in our business operations with the CORONA Virus taking its toll. We may close at short notice due to necessity or as obligated by the authorities. Please help us to conclude what we started by making a payment by Thursday at the latest. Thank you for your business and support. Please be careful and stay healthy.

(See Declaration of Thomas J. Speiss, III in Support of Plaintiffs' Opposition to Defendants' Motion in Limine No. 4 ("Speiss Decl."), at ¶ 3, **Ex. 1**; this exhibit is Trial Ex. 516.)[1]

Plaintiffs' tobacco leaves are grown in Lancaster County, Pennsylvania by

---

[1] This document originally was attached to the Declaration of Khaled Ahmed filed in Support of Defendants' Opposition to Plaintiffs' Motion For Summary Judgment, [**ECF No. 106-1**], at Ex. 7, p. 60.)

Lancaster Leaf Tobacco Company, Inc. ("Lancaster Leaf"). Lancaster Leaf then ships the tobacco leaves to their warehouse facility in the Dominican Republic. Plaintiffs then take possession of the leaves in the Dominican Republic and transport them to their own warehouse facility, also located in the Dominican Republic, where they are inspected and packaged. Plaintiffs then import their finished products from the Dominican Republic to their warehouse facility located at 2987 Center Port Circle, Suite 3, Pompano Beach, Florida 33064.

On May 18, 2020, just weeks after receiving Mr. McCrae's email, Defendant Ahmed formed a competing tobacco leaf business, Statewide Distributors, Inc., in South Florida ─ ostensibly to take advantage of the perceived business opportunity created by Grabba Leaf's potential inability to fulfill orders due to COVID-19. (See Speiss Decl., ¶ 4, **Ex. 2**, for a Certified Copy of the Articles of Incorporation on file with the Florida Secretary of State's Office, previously produced uncertified as GRA0006589-6590; Defendant Ahmed was examined in his deposition concerning this exhibit and it is attached to his transcript as Ex. 25.) Statewide Distributors, Inc. has an address of 1411 Banks Road, Margate, Florida 33063, which is a warehouse facility located 6.4 miles from Plaintiff's Pompano Beach, Florida location.

Defendant Ahmed testified in his deposition that, "sometime in 2020," he had a business associate in Florida named Kais Chaabani.[2] (See Speiss Decl., at ¶ 5, **Ex. 3**, which is a copy of the relevant pages of the deposition transcript for Defendant Ahmed, at TR, 62:18-63:11, 64:4-9 and 103:15-16.) Mr. Chaabani's business, My Leaf, Inc., a tobacco leaf business, has a principal address of 1421 Banks Road, Margate, Florida 33063. (See *id.,* at ¶ 6, **Ex. 4**, for a copy of the Articles of

---

[2] In their Motion, Defendants state, "Plaintiffs claim that Defendants created Statewide Distributors, Inc. (Florida) with *one Kais Chaabani*," as if Defendants are unfamiliar with Mr. Chaabani. (See Motion in Limine To Exclude Evidence of Defendants' Alleged Activities in Florida, [**ECF No. 138**], p. 2:13-14 [emphasis added].) Mr. Chaabani has been listed as a trial witness by the *Defendants* on the Joint Witness List concerning "Testimony that Robinson purchases tobacco product from source inside the Dominican Republic. Claims by Robinson on counterfeiters." ([**ECF No. 148**], at 9:19-21.)

Incorporation and Annual Reports produced as GRA0006406-6412 on file with the Florida Secretary of State's Office; Defendant Ahmed was examined in his deposition concerning this exhibit and it is attached to his transcript as Ex. 23.) My Leaf, Inc. is located in a space that is contiguous to the space leased by Mr. Ahmed for his Statewide Distributors business.  (See *id*.; see, also, **Ex. 2**.)

On May 27, 2020, Mr. Ahmed and his son, Omar Ahmed Alzarik, are confirmed to have traveled together to South Florida.  (See Speiss Decl., at ¶ 7, **Ex. 5**, for a copy of the travel records for Mr. Ahmed and Mr. Alzarik, which were produced by Defendants after the close of discovery and only as a trial exhibit, as Trial Ex. 265.)  In his deposition, Mr. Ahmed testified, "I established Statewide Distributors in the state of Florida to try to open a wholesale business in Florida…," and that his son, Mr. Alzarik, was going to help him in this business.  (See *id*., at ¶ 5, **Ex. 3**, at TR, 64:4-9, 125:14-17, and 132:6-10.)  Mr. Ahmed further stated that, "I might have discussed with Mr. Chaabani that I rented 1411 Banks Road," adding that he had visited Mr. Chaabani's business at 1421 Banks Road in Margate.  (See *id.*, at TR, 128:11-12 and 131:15-25.)

During her deposition, Defendant Sandra Cervantes testified that Mr. Ahmed and Mr. Alzarik traveled to Florida and that she was tasked with handling an electricity issue, ostensibly with the property located at 1411 Banks Road, Margate, Florida, stating "something my son [Mr. Alzarik] and him [Mr. Ahmed] had a problem with the electricity."  (See Speiss Decl., at ¶ 8, **Ex. 6**, at TR, 105:16-25 and 107:5-23.)

**B.  Defendants' Sale Of Counterfeit GRABBA LEAF Products.**

Plaintiffs believe a jury can reasonably conclude that Defendant Ahmed's actions in forming his Florida business in May 2020, a mere weeks after receiving Mr. McCrae's "COVID" e-mail on March 17, 2020, then renting warehouse space that was contiguous to Kais Chaabani's My Leaf tobacco business, were undertaken to produce, market, and sell counterfeit GRABBA LEAF tobacco products.  This is

because, beginning in August 2020, Mr. Ahmed's other business in Los Angeles that is the subject of this litigation, Western Wholesale, began to market and sell counterfeit GRABBA LEAF products.

Specifically, on or about August 1, 2020, Grabba Leaf was contacted by Ms. Iva Shin, the owner of Will's Jr. Market. (See Declaration of Michael Robinson in Support of Plaintiffs' *Ex Parte* Application for a No Notice Seizure ["Robinson Decl."], [**ECF No. 12**], at 1:24-2:2.) Ms. Shin advised Grabba Leaf that she had purchased a substantial quantity of GRABBA LEAF branded products from Western Wholesale and had received numerous customer complaints concerning the GRABBA LEAF products ─ including that they were counterfeit GRABBA LEAF products. (See *id*. at 1:24-2:6; see, also, Speiss Decl., at ¶ 9, **Ex. 7** for a copy of the text messages received from Will's Jr. concerning this matter, which were produced by Plaintiffs during discovery as GRA0000049-0054 and are listed as Trial Ex. 34.) Mr. Robinson examined these products and determined that they were counterfeit. (See Robinson Decl., [**ECF No. 12**], at 2:7-15.)

On September 9, 2020, the Ahmed Defendants placed their last order of authentic GRABBA LEAF products from the Plaintiffs. (See Speiss Decl., at ¶ 10, **Ex. 8** for a copy of this order, which is Defendants' Bates No. BP000010.)

Thereafter, between February 11, 2021 and June 17, 2021, Defendants marketed and sold counterfeit GRABBA LEAF products through their Los Angeles businesses, which Plaintiffs' investigators obtained and Michael Robinson subsequently confirmed to be counterfeit GRABBA LEAF products. (See Declaration of John M. Hood, III in Support of Plaintiffs' *Ex Parte* Application for a No Notice Seizure [**ECF No. 10**], at ¶¶ 5-9, at pp. 2:18-3:28; see, also, Declaration of Mohammed Najar in Support of Plaintiffs' *Ex Parte* Application for a No Notice Seizure, [**ECF No. 8**], at ¶¶ 5-10, pp. 2:25-4:24; see, also, Declaration of Chris Ghandour in Support of Plaintiffs' *Ex Parte* Application for a No Notice Seizure [**ECF No. 9**], at ¶¶ 4-9, pp. 2:15-4:5; and, see, Robinson Decl., [**ECF No. 12**], at

1  ¶¶ 11-13, p. 7.)

2  From January 15, 2022 through March 2, 2022, the Defendants sold additional counterfeit GRABBA LEAF products through their agent, Maria Sotelo, who is the owner of a business named the "Smoke Shop." (See Declaration of John M. Hood, III in Support of Plaintiffs' Motion for Preliminary Injunction, [**ECF No. 52-3**], at ¶¶ 6-9, p. 3:1-23; see, also, Declaration of Mohammed Najar in Support of Plaintiffs' Motion for Preliminary Injunction, [**ECF No. 60-2**], at ¶¶ 3-4, p. 2:18-25; and, see, Declaration of Gabriel Sedillo in Support of Plaintiffs' Motion for Preliminary Injunction, [**ECF No. 60-3**], at ¶¶ 3-5, p. 2:11-25.)

**C.   Defendants' Profits From Its Florida Counterfeiting Activities.**

The jury may consider evidence of Defendants' profits from their Florida activities in determining whether they had an operational Florida tobacco business and if profits were derived from this business.

As of April 9, 2022 and June 12, 2022, according to records available through Worldbase and Dun & Bradstreet ("D&B") Duns Market Identifiers Plus, Defendant Ahmed's Florida business, Statewide Distributors, Inc., had annual sales of between $43,329 and $151,764. (See Speiss Decl., at ¶ 11, **Ex. 9** (Defendant Cervantes was examined in her deposition concerning this exhibit); and see, ¶ 12, **Ex. 10**, which is a compendium of document production numbers GRA0006557-6575 and GRA0006578-6586, which were produced in discovery pursuant to a stipulation reached by the parties and documented by counsel for Plaintiffs; a copy of this stipulation is attached as **Ex. 11** to the Speiss Decl.).

In their Motion, Defendants assert that the foregoing documents were not produced by Plaintiffs during discovery. However, on August 17, 2022, the parties reached a stipulation concerning document production matters. Plaintiffs documented this stipulation, stating, "As part of our meeting on Wednesday, Aug. 17, 2022, we reached the following agreement…. Fact Discovery: We agreed to mutually exchange documents through and including Aug. 24, 2022 that are in

further response to Judge Chooljian's Order dated Aug. 11, 2022…" (See Speiss Decl., at ¶ 13, **Ex. 11**.) Defendants ignore the existence of this stipulation in their Motion.

Defendants have admitted that their tobacco business is a "cash and carry" business.[3] In addition to Mr. Chaabani, the Defendants have disclosed several of their business associates as part of the Joint Trial Witness List, including their agent Ms. Sotelo, Mr. Alzarik, Zishan Ali (who is a representative of USA Sales, Inc. d/b/a Statewide Distributors and is based in Ontario, California) and Jason Garido (Mr. Garido is a percipient witness disclosed after the close of fact discovery whom Plaintiffs have moved to exclude). [**ECF No. 148**]. In addition to Defendants Ahmed and Cervantes, it is anticipated that each of these individuals can verify the information contained in these reports and provide further information concerning the business activities of Statewide Distributors, Inc., including its sales activities and profits therefrom.

## III. LEGAL ARGUMENT

### A. Documents And Evidence Produced In Discovery Can Be Used At Trial.

Federal Rule of Civil Procedure 26 provides that all parties in an action have an ongoing duty to produce documents in discovery that they plan to use at trial.

In the Ninth Circuit, "[t]he district court is given broad discretion in supervising the pretrial phase of litigation." *Continental Lab. Prods., Inc. v. Medax Int'l, Inc.*, 195 F.R.D. 675, 677 (S.D. Cal. 2000) (quoting *Miller v. Safeco Title Ins. Co.*, 758 F.2d 364, 369 (9th Cir. 1985)). If full compliance with Rule 26(a) is not made, Rule 37(c)(1) mandates a sanction, "the degree and severity of which are within the discretion of the trial judge." *Keener v. United States*, 181 F.R.D. 639, 641 (D. Mont. 1998); see, also, *Risinger v. SOC, LLC*, 306 F.R.D. 655, 662, 2015

---
[3] In a "cash and carry business," customers (retailers, professional users, caterers, institutional buyers, etc.) settle the invoice on the spot in cash and carry the goods away themselves. (See Speiss Decl., at ¶ 14.)

U.S. Dist. LEXIS 38687, *15-16 (D. Nev. 2016).

It is axiomatic that documents produced in discovery can be used at trial. "[A] failure to produce a document in discovery that is not protected by a privilege or the work-product doctrine ordinarily results in a prohibition against that document being used at trial or in connection with any motion. Fed.R.Civ.P. 37(c)(1)." *Harley v. Nesby*, No. 08 CIV. 5791 (KBF) (HBP), 2011 U.S. Dist. LEXIS 142359, 2011 WL 6188718, at *10-11 (S.D.N.Y. 2011) ("In other words, a party cannot hold its evidence in secret and then disclose it for the first time at trial.")

*First*, as indicated above, after receiving the March 13, 2020 "COVID e-mail" from Mr. McCrae, Defendants solicited Mr. Chaabani, formed Statewide Distribution in Florida, rented warehouse space in Florida, and then began to market and sell *counterfeit* GRABBA LEAF products through Defendants' Los Angeles-based Western Wholesale business a short time thereafter. (See Speiss Decl., at ¶¶ 3-6, **Exs. 1, 2, 3, 4**.)

*Second*, Plaintiffs further believe that Defendants, through Statewide Distributors, Inc., had annual sales of between $43,329 and $151,764, as indicated by the financial records discussed above. (See Speiss Decl., at ¶¶ 11, 12, **Exs. 9**, **10**.)

The Defendants are uncomfortable with this narrative. However, as discussed above: Defendants themselves produced **Exs. 1** and **5** during the discovery period; Plaintiffs produced **Exs. 2**, **4**, **7**, **8** and **9** during the discovery period; and, Plaintiffs further examined Defendants Ahmed and Cervantes concerning **Exs. 2**, **4**, **7** and **8** as part of their fact witness depositions. There can be no surprise in these exhibits.

### B. Defendants Cannot Exclude Documents That *Were* Produced During Discovery On The Basis That They Were *Not* Produced In Discovery, Nor Limit Evidence Of Florida Activities.

In their [Proposed] Order, Defendants request that the Court enter an order stating as follows,

> "Having read the foregoing motion and opposition, and good cause appearing Therefor …. IT IS ORDERED that Plaintiffs Michael Andrew Robinson and Grabba Leaf, LLC, their counsel, or any witness, are prohibited from attempting to present evidence, or referring in any manner to alleged sales by Defendants in Florida."

Defendants' [Proposed] Order is deliberately vague and seeks to exclude <u>all</u> evidence concerning Defendants' business activities in Florida. As such, the [Proposed] Order could act to prohibit Plaintiffs from, for instance: (1) questioning Mr. Ahmed and Mr. Alzarik at trial concerning their business activities in forming a directly competing Florida-based tobacco business within weeks after receiving Plaintiffs' "COVID e-mail"; (2) questioning Mr. Chaabani at trial concerning his business relationship with Messrs. Ahmed and Alzarik, and allowing Mr. Chaabani to testify concerning the factual basis concerning his claimed knowledge that Grabba Leaf "purchases tobacco product from source inside the Dominican Republic. Claims by Robinson on counterfeiters," without discussing his business partnership with Defendant Ahmed and their meeting(s) in Florida; and, (3) questioning Mr. Ali concerning the business and financial relationship between Statewide Distributors, Inc. (Ontario, California) and Statewide Distributors, Inc. (Margate, Florida), the latter of which was formed by Mr. Ahmed.

In support of their proposition that all evidence concerning evidence related to Defendants' activities in Florida, Defendants cite to Rule 26(a)(1)(A). (*See* Motion, [**ECF No. 138**], at pp. 4:20-6:14). But, other than making broad brush assertions, Defendants cannot show that Plaintiffs violated Rule 26 in producing the above described documents during discovery. As discussed above, Defendants themselves produced **Exs. 1** and **5**, and Plaintiffs produced **Exs. 2**, **4**, **7**, **8** and **9** during the discovery period, and further examined Defendants Ahmed and Cervantes concerning **Exs. 2**, **4**, **7**, and **8** as part of their fact witness depositions. As indicated

above, Defendants produced **Exs. 8** and **9** pursuant to a stipulation between the parties.

### C. Records Available Through Worldbase And D&B Duns Market Identifiers Plus Should Not Be Excluded On The Basis Of Hearsay.

The Court should not exclude the records available through Worldbase and D&B Duns Market Identifiers Plus, (see Speiss Decl., at ¶¶ 11, 12, **Exs. 9** and **10**), on the basis of hearsay.

Defendants own and operate a "cash and carry" business. (Speiss Decl., at ¶ 14.) The Plaintiffs obtained Worldbase and D&B Duns Market Identifiers Plus reports in order to demonstrate that Statewide Distributors, Inc. is or was an active Florida business owned by Defendant Ahmed. The information in the credit reports: (1) may be used to further verify Defendants' business activities in Florida; (2) may act to verify other financial information produced by the Defendants, including the evidence of their counterfeit GRABBA LEAF sales activity through Western Wholesale; (3) may be used at trial to further support the widespread misrepresentations by Defendants Ahmed and Cervantes; (4) may be used for impeachment purposes; and, in addition, (5) Defendants' business associates ─ such as Ms. Sotelo, and Messrs. Ali, Alzarik, Gardio and Chaabani ─ may be able to verify the information contained in these documents, based on their personal information. As such, the credit reports are relevant to this action and must be allowed as trial exhibits.

Initially, the credit reports are proper impeachment documents and can be used for impeachment purposes. See, *e.g.*, *Price v. Trans Union, L.L.C.*, 839 F.Supp.2d 785, 805, (E.D. Pa. 2012) (credit report may be used to impeach a witness). Moreover, credit reports qualify for admission under the business records exception. Hearsay is an out of court statement offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Federal Rules of Evidence 802 and 803 provide that a hearsay

statement is admissible if an evidentiary exception applies. Under Rule 803(6), business records are admissible hearsay if the following are shown:

> "(6) Records of a Regularly Conducted Activity. A record of an act, event, condition, opinion, or diagnosis if:
>
> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and,
>
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness."

In *U.S. v. Beecroft*, the Ninth Circuit stated a Dun & Bradstreet report would be admissible under Rule 803(6) because Dun & Bradstreet regularly prepares reports, its function is to prepare such reports, and because "Commercial business relies on them. Dun and Bradstreet has a *reputation for trustworthiness*. . . ." *U.S. v. Beecroft*, 608 F.2d 753, 761 (9th Cir. 1979) (emphasis added).

Here, the Worldbase and D&B Duns Market Identifiers Plus reports qualify as admissible hearsay under Rule 803(6). *First*, they are "records" created near the time someone with knowledge input the information into Worldbase and Dun & Bradstreet's database. *Second* and *third*, Dun & Bradstreet's function and regular practice is to gather and generate business information reports, so this report was created in Dun & Bradstreet's regular course of business. *Fourth*, given the content

of the Worldbase and D&B Duns Market Identifiers Plus reports is basic business information, Defendants Ahmed and Cervantes, as well as Ms. Sotelo, Mr. Ali, Mr. Alzarik, and Mr. Garido are qualified witnesses who can attest to the accuracy of this information contained in the reports. *Fifth*, Defendants have not and cannot show that the reports lack trustworthiness or that the method of compiling the information contained within is untrustworthy. "Dun and Bradstreet has a reputation for trustworthiness," and other business routinely rely on it and is reports. *Beecroft*, 608 F.2d at 761. As such, the Worldbase and D&B Duns Market Identifiers Plus reports satisfy the requirements of Rule 803(6), and is therefore admissible hearsay.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiffs respectfully requires that Defendants' Motion in Limine No. 4: To Exclude Evidence of Defendants' Alleged Activities in Florida, be denied.

DATED: October 14, 2022

BUCHALTER
A Professional Corporation

By: _____
THOMAS J. SPEISS III
C. DANA HOBART
MANCY PENDERGRASS
Attorneys for Plaintiffs,
MICHAEL ANDREW ROBINSON and
GRABBA LEAF, LLC

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES
BN 73125283