# EXHIBIT 3

```
                UNITED STATES DISTRICT COURT

       CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION


MICHAEL ANDREW ROBINSON, an         )        REPORTER CERTIFIED
individual; GRABBA LEAF, LLC, a     )            TRANSCRIPT
Florida limited liability company,  )
                                    ) CASE NO.
             Plaintiffs,            ) 2:21-CV-06689-RGK-JC
                                    )
       vs.                          )
                                    )
BEST PRICE DISTRIBUTORS, LLC, a     )
California limited liability        )
company doing business as           )
WESTERN WHOLESALE and as QUICK      )
TOBACCO WHOLESALE; KHALED M. AHMED, )
an individual; SANDRA S. CERVANTES, )
aka SANDRA AHMED, an individual,    )
and DOES 1-10,                      )
                                    )
             Defendants.            )
_____)
                                    )
AND RELATED COUNTERCLAIM.           )
_____)




             DEPOSITION OF KHALED M. AHMED

                VOLUME I - PAGES 1 - 154

               MARINA DEL REY, CALIFORNIA

                 MONDAY, AUGUST 8, 2022
```



```
REPORTED BY:
AMY L. HORN
CSR NO. 7919
FILE NO. 44465
```

Khaled M. Ahmed - Vol. I

1    DEPOSITION of KHALED M. AHMED via Zoom was taken

2 on behalf of the Plaintiffs at Marina del Rey,

3 California, commencing at 9:06 a.m. on Monday,

4 August 8, 2022, before Amy L. Horn, Certified Shorthand

5 Reporter No. 7919.

6

            A P P E A R A N C E S
7

8 FOR THE PLAINTIFFS:   (Via videoconference)

9 BUCHALTER

10 BY:  THOMAS J. SPEISS III, ESQ.

11 1000 Wilshire Boulevard

12 Suite 1500

13 Los Angeles, California  90017

14 (310) 490-3373

15 tspeiss@buchalter.com

16
   FOR DEFENDANTS: (Via videoconference)
17
   LAW OFFICES OF DIANA SPIELBERGER
18
   BY:  DIANA SPIELBERGER, ESQ.
19
   11400 West Olympic Boulevard
20
   Suite 1500
21
   Los Angeles, California  90064
22
   (310) 399-3259
23
   diana@janddlaw.com
24

25

```
 1  APPEARANCES:   (Continued)
 2  ALSO PRESENT:   JAMES LEVINE, Videographer
 3                  MIKAEL CROWTHER
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
10:38:53   1   close the warehouse, and he takes that delivery, you
10:38:58   2   know, sometimes I would, you know, offer him some gas
10:39:04   3   money.  But that's very rare circumstances.  I don't
10:39:08   4   recall -- I recall this happened probably one or two
10:39:12   5   times.
10:39:14   6         Q.    Okay.  And when you say he's retired, he's
10:39:17   7   retired from his profession of being an accountant, is
10:39:19   8   that what you meant?
10:39:20   9         A.    That's my understanding, yes.
10:39:22  10         Q.    Okay.  And do you know what he does now
10:39:25  11   daily?
10:39:26  12         A.    Nothing.  Yes.  He comes and sees me, you
10:39:30  13   know, after hours sometimes, drinks some tea and chats
10:39:36  14   together, and that's it.
10:39:41  15         Q.    And do you know an individual by the name of
10:39:44  16   Kias Chaabani?
10:39:46  17         A.    Yes.
10:39:46  18         Q.    And how do you know Mr. Chaabani?
10:39:50  19         A.    I don't recall the circumstances, but I got
10:39:51  20   his name as the owner of the company that makes
10:39:57  21   Gold Grabba, so I reached out to him, you know, to see
10:40:05  22   if -- if the company, if our company would be able to buy
10:40:09  23   Gold Grabba from him, from his company.
10:40:14  24         Q.    And what was the result?
10:40:17  25         A.    Yeah.  We -- the company ended up buying
```

```
10:40:21   1    Gold Grabba from his company.
10:40:24   2           Q.    And was that a one-time purchase or do you
10:40:27   3    still sell Gold Grabba?
10:40:31   4           A.    I still sell Gold Grabba, but haven't bought
10:40:35   5    Gold Grabba from Kias or his company in the last I would
10:40:40   6    say a year and a half or two years.  A year and a half,
10:40:46   7    maybe.
10:40:47   8           Q.    Do you know why you stopped?
10:40:51   9           A.    It's not, you know, moving the way we
10:40:58  10    expected.  The product is not as -- as -- you know, as
10:41:05  11    popular, let's put it this way.
10:41:13  12           Q.    Okay.  Do you still talk to him?
10:41:15  13           A.    No.
10:41:16  14           Q.    And when was the last time you spoke to him,
10:41:19  15    to your recollection?
10:41:20  16           A.    Probably a year and a half to two years ago.
10:41:34  17           Q.    Did he ever -- as a part of that arrangement,
10:41:37  18    did he ever provide business cards to you or did you
10:41:42  19    ever -- did he ever list your company on his website
10:41:45  20    address or anything like that?
10:41:48  21           A.    I did not.  I did not list my company.  He
10:41:51  22    probably have listed our company as one of the vendors of
10:41:55  23    the Gold Grabba.
10:42:07  24           Q.    Did you ever meet with him in person?
10:42:09  25           A.    I did.
```

| | | |
|---|---|---|
| 10:42:10 | 1 | Q. Okay. Were those meetings -- where were |
| 10:42:14 | 2 | those meetings? Where did they take place? |
| 10:42:16 | 3 | A. At his company in Florida. |
| 10:42:19 | 4 | Q. And did you travel to Florida for the |
| 10:42:23 | 5 | specific purpose of meeting with him? |
| 10:42:25 | 6 | A. Not for that specific purpose, but we -- my |
| 10:42:31 | 7 | son Omar and I were in -- in the city of Florida, so I |
| 10:42:42 | 8 | contacted Kias and we arranged that we meet at his |
| 10:42:46 | 9 | office, and we, my son and I, went and met at his office. |
| 10:42:55 | 10 | Q. And do you remember when that meeting took |
| 10:42:57 | 11 | place? |
| 10:43:00 | 12 | A. I don't remember exactly. Could be at the |
| 10:43:02 | 13 | end of 2019 or early 2020. |
| 10:43:11 | 14 | Q. Did you ever formalize the business |
| 10:43:13 | 15 | relationship? Was there any written documentation or |
| 10:43:18 | 16 | anything? |
| 10:43:19 | 17 | MS. SPIELBERGER: You mean a contract? |
| 10:43:21 | 18 | MR. SPEISS: Sure. Yeah. Contract. |
| 10:43:26 | 19 | THE WITNESS: As a wholesaler, we don't |
| 10:43:27 | 20 | usually have a contract with vendors or manufacturers. |
| 10:43:31 | 21 | We never had no contract with Kias Chaabani or with his |
| 10:43:36 | 22 | company. |
| 10:43:37 | 23 | BY MR. SPEISS: |
| 10:43:37 | 24 | Q. Did you ever have any other businesses with |
| 10:43:39 | 25 | him? |

```
13:06:17   1         Q.    And then it says Sandra Cervantes and Dalia,
13:06:19   2    we've talked about her, E-l-g-o-h-a-r-i [sic], marketing
13:06:26   3    team?
13:06:26   4         A.    Correct.
13:06:27   5         Q.    Was this a business card that was created by
13:06:30   6    you and Ms. Cervantes -- oh, first.  Have you ever seen
13:06:33   7    the business card before?
13:06:35   8         A.    I don't recall seeing it before, but we had a
13:06:40   9    conversation, Kias and myself, that they needed to do
13:06:46  10    some marketing in the area of Los Angeles for the
13:06:49  11    Gold Grabba, and that might have been something that was
13:06:56  12    created during that time.
13:06:58  13         Q.    And when you say during that time, can you
13:07:00  14    specify and give me a time range, a date range?
13:07:03  15         A.    I don't recall.  Could be sometime in '20 --
13:07:07  16    2020.  Like sometime in 2020.
13:07:13  17         Q.    It would have been do you think maybe the
13:07:14  18    fall of 2020 or earlier than that?
13:07:16  19         A.    I can't tell.  I can't remember exactly what
13:07:20  20    part of 2020 was it.
13:07:21  21         Q.    Okay.  And then the next page of this exhibit
13:07:25  22    has Kal, the word "Kal," and then (323)793-2736.  Do you
13:07:33  23    see that?
13:07:34  24         A.    Yes.
13:07:34  25         Q.    And is that your telephone number?
```

```
13:47:03   1   Distributors or a portion of Statewide Distributors?
13:47:10   2          A.    I'm sorry.  Maybe I mixed you.
13:47:10   3   Statewide Distributors I meant in my other answer was
13:47:13   4   Statewide Distributors based in Ontario, California.  But
13:47:18   5   this Statewide Distributors was a company that we wanted
13:47:21   6   to establish in Florida at one time, but we never done
13:47:27   7   any business with that company.  This company --
13:47:32   8          Q.    And when you say Statewide Distributors was a
13:47:35   9   business we wanted to establish in Florida, who's "we"?
13:47:38  10          A.    Myself.
13:47:38  11          Q.    Okay.  And who else?
13:47:39  12          A.    No.  Only myself.
13:47:40  13          Q.    Okay.  But you said "we."
13:47:42  14          A.    I'm so sorry.  I established
13:47:44  15   Statewide Distributors in the state of Florida to try to
13:47:52  16   open a wholesale business in Florida, but that never
13:47:56  17   happened.
13:47:58  18          Q.    Okay.  And the address of this is
13:47:59  19   1411 Banks Road.  Do you see that?
13:48:02  20          A.    Yes.
13:48:03  21          Q.    And you saw earlier that Mr. Chaabani's
13:48:06  22   address is 1421 Banks Road.  Do you remember that?
13:48:10  23          A.    That's correct.
13:48:10  24          Q.    And did you and Mr. Chaabani have discussions
13:48:12  25   about opening a business together in Florida?
```

```
13:50:35   1   vacant, and, you know, no businesses was ever established
13:50:39   2   at that location.
13:50:41   3           Q.   Was a business established at 1421 Banks
13:50:44   4   Road?
13:50:46   5           A.   Never.  No business was established there.
13:50:49   6           Q.   So is it your testimony then that
13:50:51   7   independently of Mr. Chaabani, he happened to rent
13:50:54   8   1421 Banks Road and you happened to independently of him
13:50:58   9   rent 1411 Banks Road, and you never had a discussion
13:51:02  10   about that?
13:51:03  11           A.   I said I might have discussed with
13:51:04  12   Mr. Chaabani that I rented 1411 Banks Road.
13:51:10  13           Q.   Did he say I rented 1421 Banks Road, what a
13:51:14  14   coincidence?
13:51:15  15           A.   I don't understand your question.
13:51:17  16           Q.   Well, was he surprised that you rented the
13:51:20  17   property right next door to him in the same building in
13:51:22  18   the same city, in the same town in Florida?
13:51:25  19                MS. SPIELBERGER:  Is it the same building?
13:51:27  20                MR. SPEISS:  It is.
13:51:30  21                THE WITNESS:  It's a large property.  And it
13:51:31  22   did have a -- a for lease -- for lease sign, and we
13:51:38  23   rented that space.
13:51:39  24   BY MR. SPEISS:
13:51:39  25           Q.   How did you know -- how did you know it had a
```

```
13:58:42   1   there is no identical name in that state.  I searched
13:58:47   2   that name, Statewide Distributors, and I didn't find that
13:58:51   3   name existing in the state of Florida, so I picked up
13:58:53   4   that name, not because of any association with the
13:58:57   5   Statewide Distributors in California.
13:59:03   6          Q.    And do you know what Mr. Chaabani stored at
13:59:06   7   1411, the 1411 Margate address?
13:59:10   8                MS. SPIELBERGER:  I object to your
13:59:11   9   characterization of what he stored there.  There's no --
13:59:17  10   I don't know.  Do you know that he stored anything
13:59:18  11   there?  I don't know.
13:59:23  12   BY MR. SPEISS:
13:59:24  13          Q.    You can answer that question.  Do you know
13:59:25  14   that he stored anything there?
13:59:27  15          A.    My understanding is that was his office,
13:59:32  16   corporate office.  When I visited him there, that was his
13:59:36  17   office.
13:59:42  18          Q.    Okay.  So your testimony today is that he has
13:59:45  19   an office in his warehouse?
13:59:46  20          A.    Correct.
13:59:47  21          Q.    And that you visited that warehouse?
13:59:49  22          A.    That's correct.
13:59:49  23          Q.    And that you rented the facility right next
13:59:51  24   door because there was a sign?
13:59:53  25          A.    Yes.
```

| | | |
|---|---|---|
| 13:59:54 | 1 | Q.     And did he know that you rented the facility |
| 13:59:56 | 2 | right next door? |
| 13:59:57 | 3 | A.     Yes. |
| 13:59:58 | 4 | Q.     And did you ever have any discussions with |
| 14:00:00 | 5 | him about forming a business? |
| 14:00:02 | 6 | A.     I did actually have told him that I intend to |
| 14:00:07 | 7 | open a wholesale business in that address, but later on, |
| 14:00:13 | 8 | I was not able to do that, you know.  So I had my son was |
| 14:00:20 | 9 | supposed to be helping me, but he didn't -- it didn't |
| 14:00:24 | 10 | work out. |
| 14:00:24 | 11 | Q.     In Florida? |
| 14:00:25 | 12 | A.     In Florida. |
| 14:00:27 | 13 | Q.     Your son was going to help you in Florida? |
| 14:00:29 | 14 | A.     Correct.  And it didn't work out.  And we |
| 14:00:31 | 15 | have signed -- I have signed -- Statewide, Inc. have |
| 14:00:36 | 16 | signed a three-year lease. |
| 14:00:37 | 17 | After one year, I have been contacted by |
| 14:00:39 | 18 | Mr. Chaabani's manager, saying since you don't do |
| 14:00:43 | 19 | business there anymore, are you still in need of that |
| 14:00:46 | 20 | location.  I told him no.  He said would you mind, |
| 14:00:49 | 21 | contact the landlord and assign that lease to us.  I said |
| 14:00:56 | 22 | of course.  Contacted the property owner and assigned |
| 14:00:59 | 23 | that vacant property that never done any business to |
| 14:01:04 | 24 | Mr. Chaabani's company.  And that's -- that's all about |
| 14:01:08 | 25 | it. |

```
 1         I, AMY L. HORN, C.S.R. #7919, a Certified
 2   Shorthand Reporter in and for said County and State, do
 3   hereby certify:
 4          That the foregoing proceedings were taken before
 5   me at the time and place herein set forth; at which time
 6   the witness was duly sworn; and that the transcript is a
 7   true record of the testimony so given.
 8        Witness review, correction and signature was
 9     ( ) by code.                          ( ) requested
10     ( ) waived.                           (X) not requested.
11     ( ) not handled by the deposition officer due to party
12         stipulation.
13
14        The dismantling, unsealing or unbinding of the
15   original transcript will render the reporter's
16   certificate null and void.
17        I further certify that I am not financially
18   interested in the action, and I am not a relative or
19   employee of any attorney of the parties, nor of any of
20   the parties.
21        Dated this 15th day of August, 2022.
22
23   _____
24   AMY L. HORN, CSR
     Certified Shorthand Reporter, No. 7919
25
```