BUCHALTER
A Professional Corporation
THOMAS J. SPEISS III (SBN: 200949)
tspeiss@buchalter.com
C. DANA HOBART (SBN: 125139)
dhobart@buchalter.com
MANCY PENDERGRASS (SBN: 252705)
mpendergrass@buchalter.com
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-1730
Telephone: 213.891.0700
Fax: 213.896.0400

Attorneys for Plaintiffs,
MICHAEL ANDREW ROBINSON
and GRABBA LEAF, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ANDREW ROBINSON, an individual, et al.,<br><br>        Plaintiffs,<br><br>    vs.<br><br>BEST PRICE DISTRIBUTORS, LLC, a California limited liability company, doing business as WESTERN WHOLESALE and as QUICK TOBACCO WHOLESALE, et al.,<br><br>        Defendants. | Case No. 2:21-cv-06689-RGK-(JCx)<br><br>Action Commenced August 18, 2021<br><br>**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION *IN LIMINE* NO. 6 TO PRECLUDE WITNESSES AND INFORMATION NOT DISCLOSED IN DISCOVERY; DECLARATION OF MANCY PENDERGRASS**<br><br>The Hon. R. Gary Klausner<br>Courtroom 850<br><br>Trial Date: November 8, 2022 |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................1

II. DEFENDANTS' FAILURE TO TIMELY DISCLOSE WITNESSES IS NOT SUBSTANTIALLY JUSTIFIED AND THEY SHOULD BE EXCLUDED..........................................................................................................1

    A. Defendants Knew (Before The Discovery Cut-Off) About Robinson's Claim That He Coined The Term "Grabba Leaf". ............1

    B. Robinson's Testimony That Genuine Grabba Leaf Has A Different Smell Than The Counterfeit Product Was Known To Defendants In August, 2021. ..................................................................................2

    C. All Five Factors Weigh In Favor Of Exclusion Of These Witnesses...............................................................................................3

III. DEFENDANTS' PROPOSED TRIAL EXHIBITS THAT WERE NOT TIMELY PRODUCED SHOULD BE EXCLUDED. ...................................6

IV. CONCLUSION ...................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bookhamer v. Sunbeam Prods.*,
   2012 U.S. Dist. LEXIS 152373 (N.D. Cal. Oct. 23, 2012) ............................ 3, 4

*Dey. L.P. v. Ivax Pharms., Inc.*,
   233 F.R.D. 567 (C.D. Cal. 2005) ........................................................................ 4

*Factory Mut. Ins. Co. v. Alon USA L.P.*,
   705 F.3d 518 (5th Cir. 2013) .............................................................................. 5

*Ollier v. Sweetwater Union High Sch. Dist.*,
   768 F.3d 843 (9th Cir. 2014) .............................................................................. 3

*San Francisco Baykeeper v. W. Bay Sanitary Dist.*,
   791 F. Supp. 2d 719 (N.D. Cal. 2011) ........................................................ 3, 4, 5

*Trustees of Bos. Univ. v. Everlight Elecs. Co.*,
   141 F. Supp. 3d 147, 149 (D. Mass. 2015) ........................................................ 5

**Court Rules**

FRCP 37 ................................................................................................................ 4, 11

Rule 26 ....................................................................................................................... 3

Rule 26(a) ................................................................................................................... 3

Rule 26(a)(1) ............................................................................................................ 11

Rule 26(e)(1) ............................................................................................................ 11

Rule 703 ..................................................................................................................... 5

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The eleven witnesses and numerous exhibits that Defendants did not previously disclose during discovery should be excluded. Defendants claim that their failure to timely disclose this information is justified because these witnesses and exhibits concern issues that they only just discovered. Not so. Defendants knew about Plaintiff Michael Robinson's testimony regarding the origin of the Grabba Leaf name and his smell comparison of the genuine and counterfeit Grabba Leaf products prior to the discovery cut-off. Yet, Defendants did not identify any witnesses to rebut this testimony until the month before trial. Their witnesses' testimony should also be excluded as speculative, inadmissible expert opinion, and hearsay without any exception. Likewise, Defendants' explanation of why they did not produce documents before October, 2022 is also unavailing.

Defendants' reasons for not disclosing this evidence until October, 2022 are not supported by the facts in this case. Nor have they demonstrated that their failure to disclose witnesses and documents during discovery – as opposed to on the eve of trial and after discovery is closed – was substantially justified or harmless. As such, all five factors weigh in favor of exclusion here.

## II. DEFENDANTS' FAILURE TO TIMELY DISCLOSE WITNESSES IS NOT SUBSTANTIALLY JUSTIFIED AND THEY SHOULD BE EXCLUDED

### A. Defendants Knew (Before The Discovery Cut-Off) About Robinson's Claim That He Coined The Term "Grabba Leaf".

Defendants argue that they did know until *after* the discovery cut-off that they would need "witnesses to testify on the generic nature of Grabba and how that term is used and understood in the culture of marijuana smokers living in South Central Los Angeles." [ECF No. 160, p. 4:3-6.] Yet, before the discovery cut-off, Defendants made this same argument in their opposition to Plaintiffs' Motion for

Partial Summary Judgment – that "Grabba Leaf" is merely descriptive. [ECF No. 106, p. 11: 4-9.] In doing so, Defendants relied on the now overruled April 25, 2019 decision by the U.S. Patent and Trademark Office, Trademark Trial and Appeal Board ("TTAB"), which stated as follows: "[t]he term 'grabba' is commonly used in the tobacco industry as a synonym for fronto leaf tobacco and fanta leaf tobacco." [ECF No. 160-4, p. 9-10.]

Also contained in the TTAB decision are references to Mr. Robinson's testimony that he was the first person to use the term "Grabba" with respect to tobacco. For example, Mr. Robinson stated that "[o]nly after Robinson, have second comers and junior users adopted the GRABBA term as part of a trademark, or worse, to describe a tobacco cigar wrap product." [ECF No. 160-4, p. 25.] He also testified that "[t]he entry of the term GRABBA into pop culture vernacular postdates my use of the GRABBA LEAF trademarks." [ECF No. 160-4, p. 25.]

Mr. Robinson's testimony regarding the origination of Grabba Leaf was also attached as an exhibit to Defendants' opposition papers and known to Defendants well before Mr. Robinson's deposition. Despite having this information, they did not disclose the names of their witnesses who would allegedly rebut this for weeks after the discovery deadline.

**B. Robinson's Testimony That Genuine Grabba Leaf Has A Different Smell Than The Counterfeit Product Was Also Known To Defendants In August, 2021.**

As for odor issue, in his declaration filed in support of the temporary restraining order on August 18, 2021, Mr. Robinson testified as follows regarding the difference in smell between the genuine and counterfeit Grabba Leaf products:

> The genuine GRABBA LEAF product is fresh and supple, much
> lighter and arid, and has a traditional cigar leaf smell. The counterfeit
> GRABBA LEAF products are of a harder more condensed leaf, are
> thinner in appearance - allowing for the ability to be more tightly

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 73319832v1

2

1     packed - and have a rancid product smell (rather than a fresh smell).

2 [ECF No. 12, ¶9, p. 2:22-26.]

3     Mr. Robinson offered similar testimony in support of Plaintiffs' Motion for
4 Summary Judgment on July 25, 2022:

5     I also examined the tobacco contained in those packages. I observed
6     that, compared to genuine Grabba Leaf tobacco, which is fresh, supple
7     and with a traditional aromatic cigar leaf smell, the tobacco in these
8     packages was harder, more condensed, thinner in appearance and with
9     a rancid smell.

10 [ECF No. 99-2, ¶9, p. 4:4-8.]

11     Given the testimony in Mr. Robinson's sworn declarations dated August 18,
12 2021 and July 25, 2022, Defendants cannot honestly claim that they were ignorant
13 of this same testimony (i.e., that Robinson "can tell his product is genuine because
14 his product would not have a rancid smell") until August 10, 2022, the day before
15 the discovery cut-off. Even if believable (which it is not), Defendants' offer no
16 explanation why these witnesses were not disclosed until weeks later. The failure
17 to disclose these witnesses and their attempt to supplement the Rule 26(a)
18 disclosures *after this motion in limine was filed* was not substantially justified.

19     **C.**     <u>**All Five Factors Weigh In Favor Of Exclusion Of These Witnesses.**</u>

20     Defendants do not discuss any of the cases cited by Plaintiffs in support of
21 Motion in Limine No. 6, thereby conceding their applicability here. This includes
22 *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 862 (9th Cir. 2014), in
23 which the Court of Appeals upheld the exclusion of 38 witnesses who were not
24 disclosed before discovery cut-off pursuant to Rule 26.

25     Instead, Defendants cite to two cases (*San Francisco Baykeeper v. W. Bay*
26 *Sanitary Dist.*, 791 F. Supp. 2d 719, 733 (N.D. Cal. 2011) and *Bookhamer v.*
27 *Sunbeam Prods.*, 2012 U.S. Dist. LEXIS 152373 (N.D. Cal. Oct. 23, 2012), which
28 utilize the same five factor test cited by Plaintiffs in determining whether to

preclude introduction of evidence pursuant to FRCP 37.[1] It should be noted that *San Francisco Baykeeper v. W. Bay Sanitary District* did not involve the exclusion of witnesses at trial, but declarations filed in support of a summary judgment motions. The second case, *Bookhamer v. Sunbeam Products,* actually **supports** Plaintiffs' position. There, the district court denied relief from magistrate's order excluding from trial the testimony of two witnesses who were disclosed after the close of non-expert discovery, but still four months before trial. Here, the witnesses were disclosed only one month before trial.

Furthermore, Defendants' arguments regarding the five factors are not persuasive. While Defendants claim it should come as no surprise that they would offer witnesses to rebut Mr. Robinson's testimony [ECF No. 160, p. 4:11], this misses the point. Plaintiffs had no indication that ***these 11 witnesses*** might have discoverable information prior to the close of fact discovery. It is the identity of these witnesses that are a surprise.

Second, there is no ability to cure the surprise. While Plaintiffs now have the witness' contact information, a conversation with each witnesses (assuming even possible) is not the same as conducting a deposition under oath, or having the ability to conduct follow on discovery.

The third factor also weighs in favor of exclusion. The trial would be disrupted as Plaintiffs be forced to scramble to make up for Defendants' failure, which would disrupt trial preparation and threaten the viability of the trial date itself. Defendants' suggestion that the trial will not be disrupted because the examination of 11 witnesses will only take two hours is beside the point (and unbelievable). It constitutes trial by ambush as Plaintiffs could not know what

---

[1] In determining whether the failure to timely disclose a witness was substantially justified, the court weighs five factors: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for [its] failure to disclose the evidence." *Dey. L.P. v. Ivax Pharms., Inc.*, 233 F.R.D. 567, 571 (C.D. Cal. 2005).

these witnesses will say or what they will testify to at trial – and Plaintiffs are forced to prepare for the examination of a large number of witnesses, none of which were deposed. Plaintiffs do not know the relative importance of the witnesses, or the probative value of their testimony.

As for the fourth factor, this also weighs in favor of Plaintiffs. The proffered subject matter of testimony is not only unimportant, but speculative (e.g., customers would accept any other leaf for Grabba Leaf)), inadmissible expert opinion (i.e., that the term "Grabba" is synonymous with "tobacco" and is generic), and hearsay (complaints on genuine Grabba Leaf). For example, testimony regarding "customer returns" calls for speculation – there is no assurance that the returned "moldy or foul" products were actually genuine Grabba Leaf products as opposed to counterfeit. Plaintiffs do not have the products that were allegedly returned, and have not had the ability to inspect them. This would create trial within a trial on a side issue as to the authenticity of those products. Moreover, the testimony concerning the meaning of the term "Grabba" is improper expert opinion offered by non-retained experts that also impermissibly relies on hearsay. These witnesses would be nothing more than a conduit for hearsay testimony offered for its truth and should be excluded. *Alejandre v. Brazelton*, 2013 WL 1729775, at *10 (N.D. Cal. Apr. 22, 2013).[2]

Finally, already set forth in the Sections above, Defendants do not offer a

---

[2] "Allowing a witness simply to parrot 'out-of-court testimonial statements of cooperating witnesses and confidential informants directly to the jury in the guise of expert opinion' would provide an end run around *Crawford*. [Citation.] For this reason, an expert's use of testimonial hearsay is a matter of degree. [Citations.] The question is whether the expert is, in essence, giving an independent judgment or merely acting as a transmitter for testimonial hearsay." While the case arises in the criminal context, the principal applies equally in the civil context. *Trustees of Bos. Univ. v. Everlight Elecs. Co.*, 141 F. Supp. 3d 147, 149 (D. Mass. 2015)(expert may not simply be a "ventriloquist's dummy" parroting out of court statements; to the contrary, Rule 703 "was never intended to allow oblique evasions of the hearsay rule" or to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion." Accord, *Factory Mut. Ins. Co. v. Alon USA L.P.*, 705 F.3d 518, 524 (5th Cir. 2013).

legally cognizable justification for the late disclosure. Nor do they attempt to meet their burden of showing that late disclosure is harmless. They knew about these issues well before the discovery cut-off and most certainly before their pre-trial disclosures filed on October 12, 2022. As for the testimony of witness Jason Garido, the subject matter has nothing to do with either the usage of the term "Grabba Leaf" or the smell of Grabba Leaf products. Instead, Mr. Garido is expected to testify "about the business of Khaled Ahmed with Kais Chaabani and that Statewide Distributors never did any business in Florida." [ECF No. 160, p. 6:8-12]. Defendants offer no explanation why this witness was not disclosed earlier. Mr. Garido should be excluded for this reason as well. As such, these witness should be prohibited from testifying at trial.

### III. DEFENDANTS' PROPOSED TRIAL EXHIBITS THAT WERE NOT TIMELY PRODUCED SHOULD BE EXCLUDED.

Defendants provide no legal argument in support their position that the referenced exhibits should not be excluded. They also do not examine whether any of the five factors weigh in favor of exclusion. Instead, Defendants include a short response in chart form in opposition to Plaintiffs' motion in limine, but they offer no credible explanation why they failed to produce documents earlier. Plaintiffs reply to those responses are set forth below:

| Exhibit No. | Defendants' Description of Exhibit | Plaintiffs' Reply |
|---|---|---|
| 226 | Picture of thin leaf | While Defendants claim to have "shown" this photo to Mr. Robinson during his deposition, it was never introduced as an exhibit and not part of the record. The photo was also not produced during discovery. Plaintiffs |

| Exhibit No. | Defendants' Description of Exhibit | Plaintiffs' Reply |
|---|---|---|
| | | only first received a copy in October, 2022, and it should therefore be excluded. |
| 227 | Picture of Grabba Leaf Package with thin leaf | Defendants admit that they only first produced this document to Plaintiffs in October, 2022 *after* discovery cut-off. It should therefore be excluded. |
| 232 | Spreadsheet of sale and inventory | Plaintiffs no longer seek to exclude this exhibit by this *Motion in Limine* No. 6. However, Plaintiffs do not concede or agree that the document is otherwise admissible. It is a litigation prepared summary and therefore has no indicia of reliability. |
| 249 | CCTL Cigar wraps heavy metals 9/12/2022 by West. Wholesale | Defendant are incorrect. Plaintiffs produced the counterfeit products to well before the discovery cut-off. The physical cigar wraps (GRA0006389-6391) were hand delivered to Defendants' counsel on July 29, 2022.[3] |
| 250 | CCTL Cigar wraps pesticides 9/12/2022 by West. Wholesale | Same reply as Exhibit 249, above. Plaintiffs produced the cigar wraps on July 29, 2022. |

---

[3] See the Declaration of Mancy Pendergrass filed with this brief. ¶3, Exhibit 1.

7

| Exhibit No. | Defendants' Description of Exhibit | Plaintiffs' Reply |
|---|---|---|
| 251 | CCTL from cigar wrap test from Will's Market heavy metals | Same reply as Exhibit 249, above. Plaintiffs produced the cigar wraps on July 29, 2022. |
| 252 | CCTL from cigar wrap test from Will's Market pesticides | Same reply as Exhibit 249, above. Plaintiffs produced the cigar wraps on July 29, 2022. |
| 253 | GLS Laboratory Services | Same reply as Exhibit 249, above. Plaintiffs produced the cigar wraps on July 29, 2022. |
| 260 | Purchase invoices for Zig Zag and other alleged counterfeit goods | Defendants admit that they only first produced this document to Plaintiffs in October, 2022 *after* discovery cut-off. It should therefore be excluded. |
| 263 | Robinson's farming entities | The Exhibit is appears to be information generated and copied from the website "Bizapedia." It is unclear how this document relates to any impeachment of Robinson regarding Lancaster Leaf. It was also not produced during discovery, lacks foundation, and constitutes inadmissible hearsay. |
| 280 | Net profits Grabba Leaf 12-2021 | Defendants admit that the document is a litigation prepared summary and therefore has no indicia of reliability. |

| Exhibit No. | Defendants' Description of Exhibit | Plaintiffs' Reply |
|---|---|---|
| | | It is hearsay because offered for the truth of the information contained within it. Because they produced it when they did, Plaintiffs cannot (1) ask for underlying source material; (2) depose the person who prepared it, (3) or impeach it contents. All of which demonstrates why it would be excluded. |
| 282 | Coresta guidance Residue levels | Plaintiffs no longer seek to exclude this exhibit by this *Motion in Limine* No. 6. However, Plaintiffs do not concede or agree that this exhibit is otherwise admissible. |
| 303 | Establishment of toxic metal reference report | Defendants admit that they did not timely produce this document. Moreover, the document on its face states that it is not a final version. |
| 304 | Confirmation of CC Testing lab reports received | Same reply as Exhibit 249, above. Plaintiffs produced the cigar wraps on July 29, 2022. |
| 305 | Photo of warehouse in Florida | Even assuming that Defendants did not know about the counterfeit business in Florida until August 8, 2022, they provide no explanation as |

| Exhibit No. | Defendants' Description of Exhibit | Plaintiffs' Reply |
|---|---|---|
| | | to why the photo was not produced until nearly two months after Mr. Ahmed's deposition, during which he was questioned on this very subject. Moreover, a photo taken in 2022 (long after the instant case was filed) is not relevant or probative as to whether Defendants were operating a counterfeit business at that location in 2020. |
| 306 | Pricing for Meleic Hydrazide | Defendants admit that they did not timely produce this document. Moreover, it constitutes hearsay. It has no provenance; no authentication and an unauthenticated price list is not the sort of information on which experts can rely. |
| 309 | Photos of Grabba in crowded field | Defendants do not explain why they never provided these photos before October, 2022. Moreover, the photos are inadmissible hearsay and lack foundation/authentication. The crowded field analysis is also not applicable to counterfeit goods. |

| Exhibit No. | Defendants' Description of Exhibit | Plaintiffs' Reply |
|---|---|---|
| 310 | Malieic hydrazide safety summary | Defendants admit that they did not timely produce this document. Moreover, it constitutes hearsay. The prejudicial effect of its use or introduction would outweigh its probative value. The document has no provenance; no authentication and an unauthenticated price list is not the sort of information that experts can rely. |
| 312 | Sale price information for Maleic H | Defendants admit that they did not timely produce this document. Moreover, it constitutes hearsay. It has no provenance; no authentication and an unauthenticated price list is not the sort of information on which experts can rely. |

    Rule 26(a)(1) required Defendants to produce or disclose documents relevant to their claims and defenses, and Rule 26(e)(1) required Defendants to supplement their production in a timely manner if it later learned that it was incomplete. Defendants failed to do so and cannot demonstrate that their failure to disclose the documents was substantially justified or harmless. Therefore, Rule 37 operates to prevent Defendants from using these exhibits at trial.

## IV. CONCLUSION

Based on the foregoing, the Court should issue the limine order as requested and exclude all witnesses and information not previously disclosed in discovery.

DATED: October 27, 2022

BUCHALTER
A Professional Corporation

By: _____
THOMAS J. SPEISS III
C. DANA HOBART
MANCY PENDERGRASS
Attorneys for Plaintiffs,
MICHAEL ANDREW ROBINSON and
GRABBA LEAF, LLC

# DECLARATION OF MANCY PENDERGRASS

I, Mancy Pendergrass, hereby declare as follows:

1. I am an attorney duly licensed to practice law in the State of California. I am Senior Counsel at the law firm of Buchalter, A Professional Corporation ("Buchalter"), counsel of record for Plaintiffs, Michael A. Robinson, an individual resident of Florida, and Grabba Leaf, LLC, a Florida limited liability company (collectively, "Plaintiffs")

2. I am one of the attorneys responsible for representing Plaintiffs in this matter. As such, I have access to, and possession, custody and control of Buchalter's files, documents and records related to this action. The records and documents referred to or attached to this Declaration constitute writings taken or made in the regular or ordinary course of Buchalter's business at or near the time of the act, condition, or event to which they relate by persons employed by Buchalter who had a business duty to Buchalter to accurately and completely take, make and maintain such records and documents.

3. On July 29, 2022, Plaintiffs produced cigar wrap physical items to Defendants, which are identified by production numbers GRA0006389 – GRA0006391. These items were hand delivered to the office of Defendants' counsel, Diana Spielberger, by a First Legal courier. A correct copy of the delivery confirmation sent to Buchalter by First Legal via email is attached hereto as **Exhibit 1**.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

This Declaration is executed on this 27th day of October, 2022 in Los Angeles, California.

By: _____
Mancy Pendergrass

# EXHIBIT 1

# Arias, Loretta

| | |
|---|---|
| **From:** | alexsm@dtrac.firstlegal.com on behalf of Alex Santa Maria <alexsm@dtrac.firstlegal.com> |
| **Sent:** | Friday, July 29, 2022 5:26 PM |
| **To:** | Belogortseva, Inna |
| **Subject:** | First Legal Update for Ctrl# [5051103] - G3758-0003 |

This message has originated from an External Email. Alex Santa Maria <alexsm@dtrac.firstlegal.com>:

Your order has been updated
NOTE:This is an automated email. Please do not reply.

UPDATE INFO:
Delivery Date:  7/29/22 Time: 17:21 Signed: diana s


Control#:  5051103
Job Date:  7/29/22
Submitted By: Inna B.
Service Type: SPECIAL
Reference: G3758-0003

DELIVERY INFO:
See: DIANA SP
Deliver To: DIANA SPIELBERGER
Delivery Addr:11400 W OLYMPIC BLVD # 1500     Room/Suite: STE. 1500
City: LOS ANGELES
State/Zip: CA 90064


Brief Inst: P/U PACKAGE FROM

1